1  Tina Wolfson, CA Bar No. 174806
   *twolfson@ahdootwolfson.com*
2  **AHDOOT & WOLFSON, PC**
3  1016 Palm Avenue
   West Hollywood, CA 90069
4  Telephone: (310) 474-9111
   Fax: (310) 474-8585
5
6  Daniel S. Robinson, CA Bar No. 244245
   *drobinson@rcrsd.com*
7  **ROBINSON CALCAGNIE ROBINSON**
   **SHAPIRO DAVIS, INC.**
8  19 Corporate Plaza Dr.
9  Newport Beach, CA 92660
   Telephone: (949) 720-1288
10 Fax: (949) 720-1292
11
   *Co-Lead Counsel for Plaintiffs and the Proposed Class*
12 *Additional Counsel Listed on Signature Block*
13
14             **UNITED STATES DISTRICT COURT**
15             **CENTRAL DISTRICT OF CALIFORNIA**
16                **SOUTHERN DIVISION**

17 | IN RE EXPERIAN DATA BREACH | No. SACV 15-1592 AG (DFMx) |
18 | LITIGATION |  |
   |  | **CONSOLIDATED CLASS ACTION** |
19 |  | **COMPLAINT** |
20 |  |  |
21 |  | **JURY TRIAL DEMANDED** |
22
23
24
25
26
27
28

# TABLE OF CONTENTS

NATURE OF THE CASE ........................................................................................ 1

PARTIES ............................................................................................................... 3

   A.  Plaintiffs ..................................................................................................... 3

   B.  Defendants ................................................................................................ 27

JURISDICTION AND VENUE .......................................................................... 27

FACTS ................................................................................................................. 28

   A.  The Data Breach Compromised the PII of 15 Million Consumers ....... 28

   B.  Experian Promised to Protect Its Customers' PII, but Maintained Inadequate Data Security ........................................................................ 32

   C.  Experian Experienced Prior Data Breaches, but Nevertheless Failed to Implement Appropriate Security ..................................................... 35

   D.  The Data Breach Has Exposed Plaintiffs and Other Consumers to Fraud, Identity Theft, Financial Harm, and a Heightened, Imminent Risk of Such Harm in the Future .......................................................... 38

   E.  Experian Was Required to Insure the Security of Plaintiffs' PII, and to Investigate and Provide Timely and Adequate Notification of the Data Breach under Federal Regulations, But Failed To Do So ........... 42

CLASS ACTION ALLEGATIONS ................................................................... 46

   A.  Nationwide Class ................................................................................... 46

   B.  Statewide Subclasses ............................................................................. 46

CAUSES OF ACTION ....................................................................................... 51

       COUNT 1:  WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT ....................................................... 51

       COUNT 2:  NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT ....................................................... 54

       COUNT 3:  NEGLIGENCE ................................................................ 54

       COUNT 4:  NEGLIGENCE PER SE ................................................. 56

i

i.     Alabama ........................................................................................ 59

      COUNT 5:   VIOLATION OF THE ALABAMA DECEPTIVE TRADE
                      PRACTICES ACT, Ala. Code § 8-19-1, *et seq.* ....................... 59

ii.    Arizona ......................................................................................... 62

      COUNT 6:   VIOLATION OF THE ARIZONA CONSUMER FRAUD
                      ACT, Ariz. Rev. Stat. § 44-1521, *et seq.* .................................. 62

iii.   California ...................................................................................... 64

      COUNT 7:   VIOLATION OF THE CALIFORNIA UNFAIR
                      COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et*
                      *seq.* ................................................................................... 64

      COUNT 8:   VIOLATION OF THE CALIFORNIA CUSTOMER
                      RECORDS ACT, Cal. Civ. Code § 1798.80, *et seq.* ............... 66

      COUNT 9:   VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
                      REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.* .................... 68

iv.   Colorado ....................................................................................... 70

      COUNT 10:  VIOLATION OF THE COLORADO CONSUMER
                      PROTECTION ACT, Colo. Rev. Stat. § 6-1-1010, *et seq.* ...... 70

      COUNT 11:  VIOLATION OF THE COLORADO SECURITY BREACH
                      NOTIFICATION ACT, Colo. Rev. Stat. § 6-1-716, *et seq.* ..... 73

v.    Delaware ...................................................................................... 74

      COUNT 12:  VIOLATION OF THE DELAWARE CONSUMER FRAUD
                      ACT, 6 Del. Code § 2513, *et seq.* .............................................. 74

      COUNT 13:  VIOLATION OF THE DELAWARE COMPUTER
                      SECURITY BREACH ACT, 6 Del. Code § 12B-102, *et*
                      *seq.* ................................................................................... 76

vi.   District of Columbia ..................................................................... 78

1          COUNT 14:  VIOLATION OF THE DISTRICT OF COLUMBIA
2                        CONSUMER PROTECTION PROCEDURES ACT, D.C. Code
3                        § 28-3904, *et seq.* ....................................................... 78

COUNT 15:  VIOLATION OF THE DISTRICT OF COLUMBIA

CONSUMER SECURITY BREACH NOTIFICATION ACT,

D.C. Code § 28-3851, *et seq.* ................................... 80

vii.   Florida ................................................................................. 81

COUNT 16:  VIOLATION OF THE FLORIDA UNFAIR AND

DECEPTIVE TRADE PRACTICES ACT, Fla. Stat. § 501.201,

*et seq.* ...................................................................... 81

viii.  Georgia ................................................................................ 83

COUNT 17:  VIOLATION OF THE GEORGIA FAIR BUSINESS

PRACTICES ACT, Ga. Code Ann. § 10-1-390, *et seq.* ........... 83

COUNT 18:  VIOLATION OF THE GEORGIA SECURITY BREACH

NOTIFICATION ACT, Ga. Code Ann. § 10-1-912, *et seq.* .... 85

ix.   Hawaii ................................................................................. 86

COUNT 19:  VIOLATION OF THE HAWAII UNFAIR PRACTICES AND

UNFAIR COMPETITION STATUTE, Haw. Rev. Stat. § 480-1,

*et seq.* ...................................................................... 86

COUNT 20:  VIOLATION OF THE HAWAII SECURITY BREACH

NOTIFICATION ACT, Haw. Rev. Stat. § 487N-1, *et seq.*....... 88

x.   Illinois ................................................................................. 90

COUNT 21:  VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT,

815 Ill. Comp. Stat. 505/1, *et seq.*............................... 90

COUNT 22:  VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE

TRADE PRACTICES ACT, 815 Ill. Comp. Stat. 510/2, *et*

*seq.* ......................................................................... 92

xi.   Indiana ................................................................................ 93

iii

CONSOLIDATED CLASS ACTION COMPLAINT

COUNT 23:  VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT, Ind. Code § 24-5-0.5-3, *et seq.* .......................... 93

xii.  Kentucky .................................................................................. 96

COUNT 24:  VIOLATION OF THE KENTUCKY COMPUTER SECURITY BREACH NOTIFICATION ACT, Ky. Rev. Stat. Ann. § 365.732, *et seq.* ....................................................... 96

xiii.  Massachusetts ........................................................................... 97

COUNT 25:  VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT, Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.* ........................................................................... 97

xiv.  Michigan .................................................................................. 99

COUNT 26:  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT, Mich. Comp. Laws § 445.903, *et seq.* .... 99

COUNT 27:  VIOLATION OF THE MICHIGAN IDENTITY THEFT PROTECTION ACT, Mich. Comp. Laws § 445.72, *et seq.* .... 101

xv.  Minnesota ................................................................................ 103

COUNT 28:  VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT, Minn. Stat. §§ 325F.68 & 8.31, *et seq.* ......................................................................... 103

COUNT 29:  VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT, Minn. Stat. § 325D.43, *et seq.* ................................................. 105

xvi.  Missouri .................................................................................. 107

COUNT 30:  VIOLATION OF THE MISSOURI MERCHANDISE PRACTICING ACT, Mo. Stat. § 407.010, *et seq.* ................. 107

xvii.  Nevada .................................................................................. 109

CONSOLIDATED CLASS ACTION COMPLAINT

COUNT 31:   VIOLATION OF THE NEVADA DECEPTIVE TRADE
PRACTICES ACT, Nev. Rev. Stat. Ann. § 598.0915, *et
seq.* .......................................................................................... 109

xviii.   New Jersey ......................................................................................... 111

COUNT 32:   VIOLATION OF THE NEW JERSEY CONSUMER FRAUD
ACT, N.J. Stat. Ann. § 56:8-1, *et seq.* ..................................... 111

COUNT 33:   VIOLATION OF THE NEW JERSEY CUSTOMER
SECURITY BREACH DISCLOSURE ACT, N.J. Stat. Ann. §
56:8-163, *et seq.* ...................................................................... 113

xix.   New Mexico ....................................................................................... 114

COUNT 34:   VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES
ACT, N.M. Stat. Ann. § 57-12-2, *et seq.* ................................. 114

xx.   New York .......................................................................................... 116

COUNT 35:   VIOLATION OF THE NEW YORK GENERAL BUSINESS
LAW, N.Y. Gen. Bus. Law § 349, *et seq.* ............................... 116

xxi.   North Carolina ................................................................................... 118

COUNT 36:   VIOLATION OF THE NORTH CAROLINA UNFAIR
TRADE PRACTICES ACT, N.C. Gen. Stat. Ann. § 75-1.1, *et
seq.* .......................................................................................... 118

xxii.   Ohio .................................................................................................. 120

COUNT 37:   VIOLATION OF THE OHIO CONSUMER SALES
PRACTICES ACT, Ohio Rev. Code § 1345.01, *et seq.* .......... 120

COUNT 38:   VIOLATION OF THE OHIO DECEPTIVE TRADE
PRACTICES ACT, Ohio Rev. Code § 4165.01, *et seq.* .......... 122

xxiii.   Oregon ............................................................................................... 124

COUNT 39:   VIOLATION OF THE OREGON UNLAWFUL TRADE
PRACTICES ACT, Or. Rev. Stat. § 646.608, *et seq.* ............. 124

CONSOLIDATED CLASS ACTION COMPLAINT

COUNT 40:    VIOLATION OF THE OREGON CONSUMER IDENTITY THEFT PROTECTION ACT, Or. Rev. Stat. § 646A.600, *et seq.* ...................................................................... 126

xxiv.    Pennsylvania ......................................................................... 128

COUNT 41:    VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, 73 Pa. Stat. §§ 201-2 & 201-3, *et seq.* ............................................ 128

xxv.    South Carolina......................................................................... 130

COUNT 42:    VIOLATION OF THE SOUTH CAROLINA DATA BREACH SECURITY ACT, S.C. Code Ann. § 39-1-90, *et seq.* ............ 130

xxvi.    Tennessee ................................................................................ 131

COUNT 43:    VIOLATION OF THE TENNESSEE PERSONAL CONSUMER INFORMATION RELEASE ACT, Tenn. Code Ann. § 47-18-2107, *et seq.* ...................................................... 131

xxvii.    Texas ..................................................................................... 132

COUNT 44:    VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, Tex. Bus. & Com. Code § 17.46, *et seq.* ..................................................... 132

xxviii.    Virginia ................................................................................. 135

COUNT 45:    VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT, Va. Code Ann. § 59.1-196, *et seq.* ....... 135

COUNT 46:    VIOLATION OF THE VIRGINIA PERSONAL INFORMATION BREACH NOTIFICATION ACT, Va. Code Ann. § 18.2-186.6, *et seq.* ...................................................... 137

xxix.    Washington ............................................................................ 138

COUNT 47:    VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code Ann. § 19.86.020, *et seq.* ...................................................................... 138

COUNT 48:   VIOLATION OF THE WASHINGTON DATA BREACH

NOTICE ACT, Wash. Rev. Code Ann. § 19.255.010, *et*

*seq.* ........................................................................................... 140

RELIEF REQUESTED ........................................................................... 142

DEMAND FOR JURY TRIAL ................................................................. 143

CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs,[1] individually and on behalf of the classes defined below, bring this Consolidated Class Action Complaint ("Complaint") against Experian Information Solutions, Inc. and Experian Holdings, Inc. (collectively, "Experian" or "Defendants"), and allege as follows:

## NATURE OF THE CASE

1.     On October 1, 2015, Experian announced a nationwide data breach affecting an estimated 15 million consumers (the "Data Breach").  According to Experian's press release, unauthorized parties accessed consumers' sensitive, personal information maintained on Experian's servers, including the information of T-Mobile users. The information included names, addresses, Social Security numbers, dates of birth, driver's license numbers, military ID numbers, passport numbers, and other personally identifiable information (collectively, "PII") used in T-Mobile's credit assessment.[2]  On October 8, 2015, Experian announced that the information accessed in the Data Breach included the personal information of unidentified organizations and individuals in addition to T-Mobile customers.[3]

2.     The Data Breach occurred because Experian failed to implement adequate security measures to safeguarded consumers' PII and willfully ignored *known* weaknesses in its data security, including prior hacks into its information systems. Unauthorized parties routinely attempt to gain access to and steal personal information from networks and information systems—especially from entities such as Experian,

---

[1] "Plaintiffs" refers collectively to Plaintiffs Stephen Allen, Richard Parks, Ryan Hamre, Joshua Gonzales, Gwendolyn Crump, Elleen Brazzle, Melissa Merry, Francisco Ojeda, Nora Bohannon, Gregary Johnson, Kashia Johnson, David Ciano, Bradford Daghita, Alison Cochran, Alice Dunscomb, Jessica Holt, Samantha Manganaris, Veronica Gillotte, David Brown, Stuart Zimmelman, Chris Shearer, Christiaan Mealey, Gregory Hertik, Allan Sommercorn, Kamil Kuklinski, Charles Yoo, Sergey Barbashov, Kathleen Alcorn, Mary Roberts, Tony George, Ryan Heitz, Gerardus Jansen, Lorenzo Jackson, Eban Liebig, Angelia Fennern, Charles Sallade, Cregan Smith, Giovanni Williams, Dipak Bhuta, Joseph Zubrzycki, Lucio Hernandez, Shivan Bassaw, Jennifer Looney, Darius Clark, Hunter Graham, Philip Popiel, John Reiser, Jennifer Brandabur, Perry Heath, David Lumb, Martha Cebrian-Vega, Mark Hodson, Daisy Hodson, Amjed Ababseh, Martha Schroeder, Jason Shafer, Nathanial Apan, and Jeffrey Gutschmidt.
[2] *See Overview: Unauthorized Acquisition of Personal Information*, EXPERIAN, http://www.experian.com/data-breach/t-mobilefacts.html (last visited Oct. 15, 2015).
[3] *See id.*

CONSOLIDATED CLASS ACTION COMPLAINT

which are known to possess a large number of individuals' valuable personal and financial information.

3.     Armed with the personal information obtained in the Data Breach, identity thieves can commit a variety of crimes that harm victims of the Data Breach.  For instance, they can take out loans, mortgage property, and open financial accounts and open credit cards in a victim's name; use a victim's information to obtain government benefits or file fraudulent returns to obtain a tax refund; obtain a driver's license or identification card in a victim's name; gain employment in a victim's name; obtain medical services in a victim's name; or give false information to police during an arrest. Hackers also routinely sell individuals' PII to other criminals who intend to misuse the information. According to third party security experts, the PII obtained from the Data Breach was available for sale on the dark web, precisely for such nefarious purposes.

4.     As a result of Experian's willful failure to prevent the breach, Plaintiffs and Class members have been exposed to fraud, identity theft, and financial harm, as detailed below, and to a heightened, imminent risk of such harm in the future.  Plaintiffs and Class members have to monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Class members also have incurred, and will continue to incur, additional out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures in order to detect, protect, and repair the Data Breach's impact on their PII for the remainder of their lives.  Plaintiffs anticipate spending considerable time and money for the rest of their lives in order to detect and respond to the impact of the Data Breach.

5.     Many class members have already suffered fraud as a result of the Data Breach.  Others may have been but don't know it yet.  There is a strong likelihood that these and other Class members will become victims of identity fraud in the future given the breadth of their PII that is now publicly available. Javelin Strategy & Research reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud." In fact, "[i]n 2013, one in three consumers who received

CONSOLIDATED CLASS ACTION COMPLAINT

notification of a data breach became a victim of fraud." Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts (e.g., eBay, Amazon) and email payment accounts such as PayPal."

6.      Plaintiffs bring this action to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiffs seek the following remedies, among others: statutory damages under the Fair Credit Reporting Act ("FCRA") and state consumer protection statutes, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance beyond Experian's current two-year offer, and injunctive relief including an order requiring Experian to implement improved data security measures.

## PARTIES

### A.      Plaintiffs

#### Alabama

7.      Plaintiff Stephen Allen is a resident of Midland City, Alabama and was an Alabama resident during the period of the Data Breach.  Plaintiff Allen applied for a T-Mobile account in Alabama between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  On or about October 10, 2015, Plaintiff Allen received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Allen has spent over 18 hours addressing issues arising from the Data Breach, including monitoring his bank accounts and credit report for fraudulent activity.

#### Arizona

8.      Plaintiff Richard Parks is a resident of Arizona City, Arizona and was an Arizona resident during the period of the Data Breach.  Plaintiff Parks applied for an upgraded T-Mobile account in Arizona between September 1, 2013 and September 16, 2015 by providing his PII, and has been a T-Mobile customer since 2004.  On or about October 13, 2015, Plaintiff Parks received a notification letter from Experian regarding

CONSOLIDATED CLASS ACTION COMPLAINT

the Data Breach.  On or about October 15, 2015, Plaintiff Parks received a suspicious account statement from the Social Security Administration ("SSA") that bore his mailing address but another person's name.  Mr. Parks returned the letter to the SSA, along with a cover letter explaining that he was not the person on the addressee line. His letter asked the SSA to investigate for possible fraud.  As a result of the Data Breach, Plaintiff Parks paid for credit freezes to be applied to his credit report, which have cost him approximately $48 to date (including certified mail fees and money order fees) and have not been reimbursed.  Plaintiff Parks also filed a police report, and sent numerous letters and/or identity theft forms to his banks, the Federal Trade Commission, the Internal Revenue Service, and several other entities informing them of the breach and his resulting risk of identity theft.  He incurred out-of-pocket costs for postage for mailing these letters.  Plaintiff Parks has spent approximately 40 hours addressing issues arising from the Data Breach, including addressing the suspicious activity and monitoring his bank accounts and credit report for fraudulent activity.

9. Plaintiff Ryan Hamre is a resident of Phoenix, Arizona and was an Arizona resident during the period of the Data Breach.  Plaintiff Hamre applied for a T-Mobile account in Arizona between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since February 21, 2014.  In or around October 2015, Plaintiff Hamre received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Hamre has spent over 10 hours addressing issues arising from the Data Breach, including monitoring his bank accounts and credit report for fraudulent activity.

**California**

10. Plaintiff Joshua Gonzales is a resident of San Diego, California and was a California resident during the period of the Data Breach.  Plaintiff Gonzales applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and was a T-Mobile customer from 2014 to 2015.  In or around October 2015, Plaintiff Gonzales received a notification

letter from Experian regarding the Data Breach.  In or around December 2015, Plaintiff Gonzales attempted to purchase a vehicle and discovered several hard inquiries on his credit report, which had caused his credit score to drop approximately 30 points. Plaintiff Gonzales is still attempting to resolve these fraudulent credit inquiries and anticipates having to spend thousands of dollars to hire someone to repair his credit.  As a result of the Data Breach, Plaintiff Gonzales paid to obtain credit reports from all three bureaus, which have cost him approximately $30 to date and have not been reimbursed. Plaintiff Gonzales incurred unreimbursed expenses and has spent over 40 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and monitoring his financial accounts and credit report.

11.    Plaintiff Gwendolyn Crump is a resident of Los Angeles, California and was a California resident during the period of the Data Breach.  Plaintiff Crump applied for T-Mobile services in California between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and was a T-Mobile customer from 2008 to 2014.  In or around April 2015, Plaintiff Crump was notified that someone attempted to impersonate her to obtain a fraudulent T-Mobile account.  Plaintiff Crump is still attempting to resolve this identity theft, which resulted in a hard inquiry on her credit report.  As a result of the Data Breach, Plaintiff Crump has spent over 10 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and monitoring her financial accounts and credit report.  Plaintiff Crump never received a notification letter from Experian regarding the Data Breach.

12.    Plaintiff Elleen Brazzle is a resident of Santa Clarita, California and was a California resident during the period of the Data Breach.  Plaintiff Brazzle applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since February 25, 2014.  In or around October 2015, Plaintiff Brazzle received a notification letter from Experian regarding the Data Breach.  In or around November 2015, Plaintiff Brazzle's bank notified her of over $100 in fraudulent charges on her

CONSOLIDATED CLASS ACTION COMPLAINT

debit card associated with her primary checking account.  Although she accepted Experian's free credit monitoring offer, Experian's credit monitoring service did not notify Plaintiff Brazzle of the fraudulent activity.  Plaintiff Brazzle took time off work to resolve these fraudulent charges and obtain reimbursement, losing over $1,000 in wages.  As a result of the Data Breach, Plaintiff Brazzle has spent over 40 hours addressing issues arising from the Data Breach, including resolving the fraudulent charges and checking her accounts for additional fraud.

13.    Plaintiff Melissa Merry is a resident of Long Beach, California and was a California resident during the period of the Data Breach.  Plaintiff Merry applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since April 2015.  On or about October 13, 2015, Plaintiff Merry received a notification letter from Experian regarding the Data Breach.  On or about January 8, 2016, Plaintiff Merry attempted to withdraw cash from her primary checking account and was unable to make the withdrawal.  After contacting her bank, Plaintiff Merry discovered that a fraudulent withdrawal was attempted on her account and it had been frozen.  During the three weeks it took for her replacement debit card to arrive, Plaintiff Merry had to make additional trips to the bank to withdraw cash.  As a result of the Data Breach, Plaintiff Merry has spent over 20 hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking her accounts for additional fraud.

14.    Plaintiff Francisco Ojeda is a resident of San Jose, California and was a California resident during the period of the Data Breach.  Plaintiff Ojeda applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since January 2015.  In or around November 2015, Plaintiff Ojeda discovered unauthorized charges on his bank statement and he is attempting to resolve these charges.  As a result of the Data Breach, Plaintiff Ojeda has spent over five hours

CONSOLIDATED CLASS ACTION COMPLAINT

addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking his accounts for additional fraud.  Plaintiff Ojeda never received a notification letter from Experian regarding the Data Breach.

15.     Plaintiff Nora Bohannon is a resident of Fairfield, California and was a California resident during the period of the Data Breach.  Plaintiff Bohannon applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since 2013.  In or around October 2015, Plaintiff Bohannon received a notification letter from Experian regarding the Data Breach.  In or around November 2015, Plaintiff Bohannon began receiving calls that someone was attempting to use his PII to open lines of credit at banks and retail stores.  These fraudulent account attempts, at about 10 banks and 15 stores, have shown up as inquiries on his credit report and affected his credit score.  In or around December 2015, Plaintiff Bohannon suffered a fraudulent charge of approximately $800 for bitcoins on his checking account.  In or around February 2016, police notified Plaintiff Bohannon that they had arrested an individual carrying three fraudulent credit cards opened in his name.  As a result of the Data Breach, Plaintiff Bohannon has spent over 80 hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking his accounts and credit report for fraud.

16.     Plaintiffs Gregary and Kashia Johnson are residents of Lompoc, California and were California residents during the period of the Data Breach.  The Johnson Plaintiffs applied for T-Mobile accounts in California between September 1, 2013 and September 16, 2015 by providing their PII and payment card information, and have been T-Mobile customers since 2013.  In or around October 2015, the Johnson Plaintiffs received a notification letter from Experian regarding the Data Breach.  Also in or around October 2015, Mr. Johnson received a call from their bank indicating that someone had run his credit outside of California and advising him to place a 90-day fraud alert on his credit report.  Mr. Johnson followed this advice and placed an alert on

CONSOLIDATED CLASS ACTION COMPLAINT

his credit report.  As a result of the Data Breach, the Johnson Plaintiffs have spent over five hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking their accounts and credit reports for fraud.

17.    Plaintiff David Ciano is a resident of San Luis Obispo, California and was a California resident during the period of the Data Breach.  Plaintiff Ciano applied for a T-Mobile account in California between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since December 2013.  On or about October 13, 2015, Plaintiff Ciano received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Ciano has spent over three hours addressing issues arising from the Data Breach, including checking his accounts for fraud.

### Colorado

18.    Plaintiff Bradford Daghita is a resident of Wheat Ridge, Colorado and was a Colorado resident during the period of the Data Breach.  Plaintiff Daghita applied for a T-Mobile account in Colorado between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since September 2, 2014.  On or about October 27, 2015, Plaintiff Daghita received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Daghita has spent about $300 on an annual credit monitoring service and spent over five hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

### Delaware

19.    Plaintiff Alison Cochran is a resident of Newark, Delaware and was a Delaware resident during the period of the Data Breach.  Plaintiff Cochran applied for T-Mobile services in Delaware between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer for over a decade.  On or about September 9, 2015, Plaintiff Cochran's mobile device stopped working.  She contacted T-Mobile, who informed her that her phone was

reported stolen and had been deactivated.  Whoever fraudulently reported the stolen phone had her name, address, Social Security number, and account information. Plaintiff Cochran had to file four different fraud claims with T-Mobile to get this issue resolved.  In or around October 2015, Plaintiff Cochran received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Cochran has spent over 20 hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking her accounts for additional fraud.

### District of Columbia

20.    Plaintiff Alice Dunscomb is a resident of Washington, DC and was a District of Columbia resident during the period of the Data Breach.  Plaintiff Dunscomb applied for a T-Mobile account in the District of Columbia between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since 2013.  In or around October 2015, Plaintiff Dunscomb received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Dunscomb has spent $20 to freeze her credit report and spent over six hours addressing issues arising from the Data Breach, including checking her accounts and credit report for fraud.

### Florida

21.    Plaintiff Jessica Holt is a resident of Lehigh Acres, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Holt applied for a T-Mobile account in Florida between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since July 2015.  In the summer of 2015, Plaintiff Holt's debit card was fraudulently used to purchase approximately $150 worth of merchandise online.  In or around October 2015, Plaintiff Holt received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Holt has spent over 20 hours addressing issues arising from the Data Breach, including resolving the fraudulent

CONSOLIDATED CLASS ACTION COMPLAINT

activity and checking her accounts for additional fraud.

22.     Plaintiff Samantha Manganaris is a resident of Jacksonville Beach, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Manganaris applied for a T-Mobile account in Florida between September 1, 2013 and September 16, 2015 by providing her PII and payment card information.  In or around December 2014, Plaintiff Manganaris experienced fraudulent activity on her bank account, which was ultimately reimbursed.  Around the same time, she began receiving threatening phishing calls every week from an individual that knew her date of birth and bank account information, and said there was a warrant out for her arrest.  In or around October 2015, Plaintiff Manganaris received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Manganaris has spent over 20 hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking her accounts for additional fraud.

23.     Plaintiff Veronica Gillotte is a resident of Boca Raton, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Gillotte applied for a T-Mobile account in Florida between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since 2013.  In or around September 2015, Plaintiff Gillotte received a notification letter from Experian regarding the Data Breach.  In or around December 2015, Plaintiff Gillotte received a phishing call from someone claiming to be a local clerk of court and that she owed the court $2,700.  The caller already had Plaintiff Gillotte's name and Social Security Number.  After contacting the actual clerk of court and determining the call was a scam, Plaintiff Gillotte had to cancel her bank account and open a new account.  Also within the last six months, someone cancelled her debit card twice and Plaintiff Gillotte received replacement debit cards without having requested them.  The same scammer called back in January and February 2016 demanding the $2,700 payment.  As a result of the Data Breach, Plaintiff Gillotte has spent over 8 hours addressing issues arising from the Data Breach, including resolving the fraudulent

CONSOLIDATED CLASS ACTION COMPLAINT

activity and checking her accounts for fraud.

24.     Plaintiff David Brown is a resident of Jupiter, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Brown applied for a T-Mobile account in Florida between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since 2014.  On or about October 8, 2015, Plaintiff Brown received a notification letter from Experian regarding the Data Breach.  On October 10, 2015, an identity thief purchased two Apple iPhones in his name from a Verizon store, totaling $1,698.  The thief purchased the phones in-person using Mr. Brown's personal information.  Verizon eventually reversed the fraudulent charges.  Mr. Brown had never experienced identity theft prior to the Experian breach.  As a result of the Data Breach, Plaintiff Brown has spent over eight hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts for fraud and placing a credit freeze on his credit report.

25.     Plaintiff Stuart Zimmelman is a resident of Wellington, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Zimmelman applied for T-Mobile services in Florida between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since 2010.  As a result of the Data Breach, Plaintiff Zimmelman has spent three hours addressing issues arising from the Data Breach, including checking his accounts for fraud.  Plaintiff Zimmelman never received a notification letter from Experian regarding the Data Breach.

26.     Plaintiff Chris Shearer is a resident of St. Augustine, Florida and was a Florida resident during the period of the Data Breach.  Plaintiff Shearer applied for a T-Mobile account in Florida between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  In or around October 2015, Plaintiff Shearer received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Shearer has spent about ten hours addressing issues

CONSOLIDATED CLASS ACTION COMPLAINT

1    arising from the Data Breach, including checking his accounts for fraud.

2              **Georgia**

3          27.    Plaintiff Christiaan Mealey is a resident of Atlanta, Georgia and was a

4    Georgia resident during the period of the Data Breach.  Plaintiff Mealey applied for a T-

5    Mobile account in Georgia between September 1, 2013 and September 16, 2015 by

6    providing his PII and payment card information, and has been a T-Mobile customer

7    since 2014.  In or around October 2015, Plaintiff Mealey received a notification letter

8    from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff

9    Mealey has spent about $75 on credit monitoring and spent over 20 hours addressing

10   issues arising from the Data Breach, including checking his accounts and credit report

11   for fraud.

12         28.    Plaintiff Gregory Hertik is a resident of Cumming, Georgia and was a

13   Georgia resident during the period of the Data Breach.  Plaintiff Hertik applied for a T-

14   Mobile account in Georgia between September 1, 2013 and September 16, 2015 by

15   providing his PII and payment card information.  On or about October 29, 2015,

16   Plaintiff Hertik received a notification letter from Experian regarding the Data Breach.

17   As a result of the Data Breach, Plaintiff Hertik has spent about $50 on monthly credit

18   monitoring and spent over three hours addressing issues arising from the Data Breach,

19   including checking his accounts and credit report for fraud.

20              **Hawaii**

21         29.    Plaintiff Allan Sommercorn is a resident of Kaaawa, Hawaii and was a

22   Hawaii resident during the period of the Data Breach.  Plaintiff Sommercorn applied for

23   T-Mobile services in Hawaii between September 1, 2013 and September 16, 2015 by

24   providing his PII and payment card information, and has been a T-Mobile customer for

25   over a decade.  On or about October 18, 2015, Plaintiff Sommercorn received a

26   notification letter from Experian regarding the Data Breach.  In or around November

27   2015, Plaintiff Sommercorn suffered two unauthorized charges on his credit card and

28   began receiving fraudulent debt collection calls.  As a result of the Data Breach,

CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiff Sommercorn has spent over 20 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

### Illinois

30.     Plaintiff Kamil Kuklinski is a resident of Bartlett, Illinois and was an Illinois resident during the period of the Data Breach.  Plaintiff Kuklinski applied for a T-Mobile account in Illinois between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since April 2014.  On or about September 13, 2015, Plaintiff Kuklinski received disturbing text messages from an apparent hacker stating that payment of over $3,000 was due for an account that was not his own.  When Plaintiff Kuklinski challenged the charges, the hacker threatened him with 500 more text messages and mentioned his girlfriend by name, who was the primary account holder on his T-Mobile service.  On or about October 5, 2015, Plaintiff Kuklinski received a notification letter from Experian regarding the Data Breach.  In or about March 2016, Plaintiff Kuklinski received a letter from the IRS informing him that their electronic security filters had detected a suspicious, but ultimately unsuccessful, attempt to us his Social Security number to file a fraudulent tax return.  As a result of the Data Breach, Plaintiff Kuklinski has spent over eight hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

31.     Plaintiff Charles Yoo is a resident of Kildeer, Illinois and was an Illinois resident during the period of the Data Breach.  Plaintiff Yoo applied for a T-Mobile account in Illinois between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since October 1, 2014.  On or about October 7, 2015, Plaintiff Yoo received a notification letter from Experian regarding the Data Breach.  In or around November 2015, Plaintiff Yoo's bank informed him of attempted fraudulent charges on his credit card.  As a result of the Data Breach, Plaintiff Yoo has spent over three hours addressing issues arising from the Data

CONSOLIDATED CLASS ACTION COMPLAINT

Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

32.     Plaintiff Sergey Barbashov is a resident of Plainfield, Illinois and was an Illinois resident during the period of the Data Breach.  Plaintiff Barbashov applied for a T-Mobile account in Illinois between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  In or around October 2015, Plaintiff Barbashov received a notification email from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Barbashov has spent approximately two hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

33.     Plaintiff Kathleen Alcorn is a resident of Springfield, Illinois and was an Illinois resident during the period of the Data Breach.  Plaintiff Alcorn applied for a T-Mobile account in Illinois between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since August 2015.  On or about October 12, 2015, Plaintiff Alcorn received a notification letter from Experian regarding the Data Breach.  After receiving this notification, Plaintiff Alcorn started a credit monitoring and identity theft protection subscription that costs her about $27 per month.  As a result of the Data Breach, Plaintiff Alcorn has spent about $108 to date on credit monitoring and spent over 30 hours addressing issues arising from the Data Breach, including checking her accounts and credit report for fraud.

### Indiana

34.     Plaintiff Mary Roberts is a resident of Clinton, Indiana and was an Indiana resident during the period of the Data Breach.  Plaintiff Roberts applied for a T-Mobile account in Indiana between September 1, 2013 and September 16, 2015 by providing her PII and payment card information.  In or around October 2015, Plaintiff Roberts received a notification letter from Experian regarding the Data Breach.  In or around April 2016, Plaintiff Roberts discovered an unauthorized credit inquiry on her credit

report, which has not yet been resolved.  She also discovered that someone else had obtained her free credit report from one of the credit bureaus without her authorization, so that she was unable to obtain a free copy.  As a result of the Data Breach, Plaintiff Roberts has spent about 100 hours addressing issues arising from the Data Breach, including checking her credit report for fraud and researching preventative measures.

### **Kentucky**

35.    Plaintiff Tony George is a resident of Columbia, Kentucky and was a Kentucky resident during the period of the Data Breach.  Plaintiff George applied for a T-Mobile account in Kentucky between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  On or about October 10, 2015, Plaintiff George received a notification letter from Experian regarding the Data Breach. In or around November 2015, Plaintiff George began receiving suspicious phishing calls and emails, and there was an unauthorized inquiry on his credit report.  As a result of the Data Breach, Plaintiff George has spent about 100 hours to date addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his credit reports for fraud.

### **Massachusetts**

36.    Plaintiff Ryan Heitz is a resident of Attleboro, Massachusetts and was a Massachusetts resident during the period of the Data Breach.  Plaintiff Heitz applied for a T-Mobile account in Massachusetts between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since April 2015.  On or about October 26, 2015, Plaintiff Heitz received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Heitz has spent about $25 to place freezes on his credit report and over 20 hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

37.    Plaintiff Gerardus Jansen is a Dutch citizen and a resident of Arlington, Massachusetts and was a Massachusetts resident during the period of the Data Breach.

CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiff Jansen applied for a T-Mobile account in Massachusetts between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since April 29, 2015.  In or around October 2015, Plaintiff Jansen received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Jansen spends up to one hour per month checking his credit report for fraud.

### Michigan

38.    Plaintiff Lorenzo Jackson is a resident of Flint, Michigan and was a Michigan resident during the period of the Data Breach.  Plaintiff Jackson applied for a T-Mobile account in Michigan between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since March 2014.  In or around October 2015, Plaintiff Jackson received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Jackson has spent over two hours addressing issues arising from the Data Breach, including checking his accounts for fraud.

### Minnesota

39.    Plaintiff Eban Liebig is a resident of Columbia Heights, Minnesota and was a Minnesota resident during the period of the Data Breach.  Plaintiff Liebig applied for a T-Mobile account in Minnesota between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since April 8, 2014.  In or around October 2015, Plaintiff Liebig received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Liebig has spent $15 to freeze his credit report and spent over 20 hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

40.    Plaintiff Angelia Fennern is a resident of St. Paul, Minnesota and was a Minnesota resident during the period of the Data Breach.  Plaintiff Fennern applied for a T-Mobile account in Minnesota between September 1, 2013 and September 16, 2015 by

providing her PII and payment card information, and has been a T-Mobile customer since May 2015.  On or about October 5, 2015, Plaintiff Fennern received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Fennern has spent over five hours addressing issues arising from the Data Breach, including checking her accounts for fraud.

### Missouri

41.    Plaintiff Charles Sallade is a resident of St. Louis, Missouri and was a Missouri resident during the period of the Data Breach.  Plaintiff Sallade applied for a T-Mobile account in Missouri between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since March 2015.  On or about October 15, 2015, Plaintiff Sallade received a notification letter from Experian regarding the Data Breach.  He signed up for credit monitoring and identity theft protection, for which he pays $10 per month.  In or around October 2015, his credit monitoring service notified him that someone attempted to open a fraudulent line of credit with his name and Social Security number.  As a result of the Data Breach, Plaintiff Sallade has spent $40 to date on credit monitoring and spent over 20 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

### Nevada

42.    Plaintiff Cregan Smith is a resident of Las Vegas, Nevada and was a Nevada resident during the period of the Data Breach.  Plaintiff Smith applied for T-Mobile services in Nevada between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since 2008.  In or around September 2015, someone attempted to open a line of credit in Plaintiff Smith's name.  When trying to file his 2015 income tax return, Plaintiff Smith's accountant informed him the return was flagged and could not be filed because he listed his mother as a dependent and a fraudulent return had already been filed with her Social Security number.  Plaintiff Smith's anticipated refund was almost $1,000 less

CONSOLIDATED CLASS ACTION COMPLAINT

because he was unable to claim his mother as a dependent, an issue that has not yet been resolved with the IRS.  In or around February 2016, Plaintiff Smith finally received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Smith has spent over 20 hours addressing issues arising from the Data Breach, including mitigating his tax fraud issues and checking his accounts and credit report for fraud.

43.    Plaintiff Giovanni Williams is a resident of Las Vegas, Nevada and was a Nevada resident during the period of the Data Breach.  Plaintiff Williams applied for a T-Mobile account in Nevada between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since June 3, 2014.  In or around October 2015, Plaintiff Williams received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Williams has spent approximately 20 hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.  In addition, Plaintiff Williams has spent approximately $140 on credit freezes and credit monitoring protection.

**New Jersey**

44.    Plaintiff Dipak Bhuta is a resident of Voorhees, New Jersey and was a New Jersey resident during the period of the Data Breach.  Plaintiff Bhuta applied for a T-Mobile account in New Jersey between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since November 2014.  On or about October 5, 2015, Plaintiff Bhuta received a notification letter from Experian regarding the Data Breach.  After learning of the Data Breach, Plaintiff Bhuta purchased annual credit monitoring for approximately $120.  As a result of the Data Breach, Plaintiff Bhuta has spent over two hours addressing issues arising from the Data Breach, including checking his accounts for fraud.

45.    Plaintiff Joseph Zubrzycki is a resident of Blackwood, New Jersey and was a New Jersey resident during the period of the Data Breach.  Plaintiff Zubrzycki applied

CONSOLIDATED CLASS ACTION COMPLAINT

for T-Mobile services in New Jersey between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since approximately 2010.  In or around October 2015, Plaintiff Zubrzycki received a notification letter from Experian regarding the Data Breach.  Earlier in 2015, Plaintiff Zubrzycki received a letter from the IRS indicating that someone tried to fraudulently access his IRS account information but the IRS blocked the attempt.  In early 2016, Plaintiff Zubrzycki received a letter from an online vendor requesting his credit card information for an account that he did not open.  In addition, he recently learned that someone fraudulently obtained his annual free credit reports from all three credit bureaus.  As a result of the Data Breach, Plaintiff Zubrzycki has spent approximately $7 to obtain his credit score and over two hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

### New Mexico

46.     Plaintiff Lucio Hernandez is a resident of Los Lunas, New Mexico and was a New Mexico resident during the period of the Data Breach.  Plaintiff Hernandez applied for a T-Mobile account in New Mexico between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  On or about October 8, 2015, Plaintiff Hernandez received a notification letter from Experian regarding the Data Breach.  A few months later, Plaintiff Hernandez discovered an individual using his identity on the Internet, including information about his family members.  On or about March 28, 2016, Plaintiff Hernandez received a letter from a telephone provider about a past due invoice of about $400 despite not having any account with that provider.  As a result of the Data Breach, Plaintiff Hernandez has spent about $17 to investigate the online identity theft and over 10 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

### New York

47.     Plaintiff Shivan Bassaw is a resident of Bronx, New York and was a New

CONSOLIDATED CLASS ACTION COMPLAINT

York resident during the period of the Data Breach.  Plaintiff Bassaw applied for a T-Mobile account in New York between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since September 15, 2013.  On or about November 15, 2015, Plaintiff Bassaw's credit card had an unauthorized charge that was ultimately reimbursed.  As a result of the Data Breach, Plaintiff Bassaw has spent approximately 3 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts and credit report for fraud.

**North Carolina**

48.     Plaintiff Jennifer Looney is a resident of Charlotte, North Carolina and was a North Carolina resident during the period of the Data Breach.  Plaintiff Looney applied for a T-Mobile account in North Carolina between September 1, 2013 and September 16, 2015 by providing her PII and payment card information.  Beginning in or around September 2015, Plaintiff Looney began receiving email notifications of attempts to connect her email address with another email without her authorization.  She reported this unauthorized activity to her email provider.  In or around October 2015, Plaintiff Looney received a notification letter from Experian regarding the Data Breach. As a result of the Data Breach, Plaintiff Looney has spent approximately $20 per month on credit monitoring and spent over 80 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity, placing freezes on her credit report with all three credit bureaus, and checking her accounts and credit report for fraud.

**Ohio**

49.     Plaintiff Darius Clark is a resident of Cincinnati, Ohio and was an Ohio resident during the period of the Data Breach.  Plaintiff Clark applied for a T-Mobile account in Ohio between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  In or around September 2015, Plaintiff Clark received several phishing calls in which the caller knew his mailing address and the last four digits of his Social Security number and claimed Plaintiff Clark owed taxes to the

CONSOLIDATED CLASS ACTION COMPLAINT

IRS.  Plaintiff Clark later confirmed with the IRS that he did not owe any taxes and these were fraudulent phishing calls.  Ultimately, Plaintiff Clark changed his telephone number to avoid these calls.  On or about October 26, 2015, Plaintiff Clark received a notification letter from Experian regarding the Data Breach.  After the Data Breach, Plaintiff Clark has spent approximately $20 placing credit freezes on his credit report, and approximately $20 per month on credit monitoring.  Also a result of the Data Breach, Plaintiff Clark has spent over 100 hours addressing issues arising from the Data Breach, including contacting the IRS, and checking his accounts and credit report for fraud.

### Oregon

50.     Plaintiff Hunter Graham is a resident of Portland, Oregon and was an Oregon resident during the period of the Data Breach.  Plaintiff Graham applied for a T-Mobile account in Oregon between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since September 2014.  On or about October 5, 2015, Plaintiff Graham received a notification letter from Experian regarding the Data Breach.  In or around April 2015, Plaintiff Graham learned that someone filed a fraudulent income tax return using his name and Social Security number.  The criminal had also opened a fraudulent Turbo Tax account in Plaintiff Graham's name to file the fraudulent return in January 2015.  Plaintiff Graham's tax refund of over $6,000 was delayed for nine months.  As a result of the Data Breach, Plaintiff Graham has spent over 40 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity, and checking his accounts and credit report for fraud.

51.     Plaintiff Philip Popiel is a resident of Beaverton, Oregon and was an Oregon resident during the period of the Data Breach.  Plaintiff Popiel applied for a T-Mobile account in Oregon between September 1, 2013 and September 16, 2015 by providing his PII and payment card information.  On or about October 15, 2015, Plaintiff Popiel received a notification letter from Experian regarding the Data Breach.

CONSOLIDATED CLASS ACTION COMPLAINT

As a result of the Data Breach, Plaintiff Popiel has spent about $30 placing credit freezes on his credit report and over four hours addressing issues arising from the Data Breach, including checking his accounts and credit report for fraud.

### Pennsylvania

52.     Plaintiff John Reiser is a resident of Pittsburgh, Pennsylvania and was a Pennsylvania resident during the period of the Data Breach.  Plaintiff Reiser applied for a T-Mobile account in Pennsylvania between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since February 16, 2014.  On or about October 5, 2015, Plaintiff Reiser received a notification letter from Experian regarding the Data Breach.  On or about February 19, 2016, Plaintiff Reiser's bank notified him of an attempted fraudulent charge on his credit card, shutting down that line of credit and issuing a replacement card.  As a result of the Data Breach, Plaintiff Reiser has spent approximately two hours addressing issues arising from the Data Breach, including checking his accounts for additional fraud.

53.     Plaintiff Jennifer Brandabur is a resident of Elkins Park, Pennsylvania and was a Pennsylvania resident during the period of the Data Breach.  Plaintiff Brandabur applied for a T-Mobile account in Pennsylvania between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer since June 19, 2015.  On or about October 26, 2015, Plaintiff Brandabur received a notification letter from Experian regarding the Data Breach.  In or around November 2015, Plaintiff Brandabur's bank notified her of fraudulent charges on her credit card totaling about $1,000.  Approximately $500 of these fraudulent charges has not been resolved or reimbursed to date.  As a result of the Data Breach, Plaintiff Brandabur has spent over four hours addressing issues arising from the Data Breach, including checking her accounts for additional fraud.

### South Carolina

54.     Plaintiff Perry Heath is a resident of Rockhill, South Carolina and was a

CONSOLIDATED CLASS ACTION COMPLAINT

South Carolina resident during the period of the Data Breach.  Plaintiff Heath applied for a T-Mobile account in South Carolina between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since 2014.  In or around October 2015, Plaintiff Heath received a notification letter from Experian regarding the Data Breach.  Plaintiff Heath's bank later notified him that someone used his account information to make fraudulent purchases of almost $300, which caused about four overdraft fees on his account for $35 each.  Ultimately, Plaintiff Heath closed that bank account and opened a new one, but was not reimbursed for the fraudulent charges or overdraft fees.  In or around April 2016, Plaintiff Heath attempted to sign up for an internet service but was informed that his PII had already been used to set up an account.  As a result of the Data Breach, Plaintiff Heath has lost over $400 and spent about 40 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking his accounts for fraud.

### Tennessee

55.  Plaintiff David Lumb is a resident of Memphis, Tennessee and was a Tennessee resident during the period of the Data Breach.  Plaintiff Lumb applied for a T-Mobile account in Tennessee between September 1, 2013 and September 16, 2015 by providing his PII and payment card information, and has been a T-Mobile customer since December 2013.  On or about November 25, 2015, Plaintiff Lumb received a notification letter from Experian regarding the Data Breach.  As a result of the Data Breach, Plaintiff Lumb has spent approximately $15 placing credit freezes on his credit report and spent over three hours addressing issues arising from the Data Breach, including checking his credit report for fraud.

### Texas

56.  Plaintiff Martha Cebrian-Vega is a resident of Fort Worth, Texas and was a Texas resident during the period of the Data Breach.  Plaintiff Cebrian-Vega applied for a T-Mobile account in Texas between September 1, 2013 and September 16, 2015 by providing her PII and payment card information, and has been a T-Mobile customer

since 2014.  On or about September 18, 2015, Plantiff Cebrian-Vega received a letter from a bank that someone had applied for a line of credit in her name.  She had to go to the bank to cancel the fraudulent account and file a police report.  In or around October 2015, Plaintiff Cebrian-Vega received a notification letter from Experian regarding the Data Breach.  Plaintiff Cebrian-Vega has started a credit monitoring and identity theft protection subscription that costs her about $32 per month.  As a result of the Data Breach, Plaintiff Cebrian-Vega has spent about 30 hours addressing issues arising from the Data Breach, including addressing the fraudulent activity and checking her accounts and credit report for fraud.

### Utah

57.    Plaintiffs Mark and Daisy Hodson are residents of Holladay, Utah and were Utah residents during the period of the Data Breach.  The Hodson Plaintiffs applied for T-Mobile accounts in Utah between September 1, 2013 and September 16, 2015 by providing their PII and payment card information, and have been T-Mobile customers since March 11, 2015.  In or around October 2015, the Hodson Plaintiffs received a notification letter from Experian regarding the Data Breach.  Around the same time, the Hodson Plaintiffs had two unauthorized charges on their bank account, which were ultimately reimbursed and replacement debit cards were issued.  Also around the same time in October 2015, the Hodson Plaintiffs began receiving frequent phishing calls and emails, which they had not received prior to that time.  Mr. Hodson actually had to change his email address to avoid the constant phishing emails.  While Mr. Hodson stopped receiving phishing calls in or around February 2016, Mrs. Hodson continues to receive about three per day.  As a result of the Data Breach, the Hodson Plaintiffs have spent over 30 hours addressing issues arising from the Data Breach, including resolving the fraudulent activity and checking their accounts and credit reports for fraud.

### Virginia

58.    Plaintiff Amjed Ababseh is a resident of Christianburg, Virginia and was a Virginia resident during the period of the Data Breach.  Plaintiff Ababseh applied for a

T-Mobile account in Washington between September 1, 2013 and September 16, 2015
by providing his PII and payment card information.  In or around October 2015,
Plaintiff Ababseh received a notification letter from Experian regarding the Data
Breach.  In or around November 2015, Plaintiff Ababseh received a notification from
his email provider that there was a fraudulent attempt to access his email account in
New Orleans, Louisiana.  As a result of the Data Breach, Plaintiff Ababseh has spent
about $120 in monthly credit monitoring and over 60 hours addressing issues arising
from the Data Breach, including addressing the fraudulent activity and checking his
accounts and credit report for fraud.

### Washington

59.     Plaintiff Martha Schroeder is a resident of Seattle, Washington and was a
Washington resident during the period of the Data Breach.  Plaintiff Schroeder applied
for a T-Mobile account in Washington between September 1, 2013 and September 16,
2015 by providing her PII and payment card information, and has been a T-Mobile
customer since September 12, 2015.  In or around October 2015, Plaintiff Schroeder
received a notification letter from Experian regarding the Data Breach. As a result of the
Data Breach, Plaintiff Schroeder has spent over 19 hours addressing issues arising from
the Data Breach, including checking her accounts and credit report for fraud and placing
credit freezes, and has continued to pay $13 per month for a credit monitoring
subscription.

60.     Plaintiff Jason Shafer is a resident of Vancouver, Washington and was a
Washington resident during the period of the Data Breach.  Plaintiff Shafer applied for
T-Mobile services in Washington between September 1, 2013 and September 16, 2015
by providing his PII and payment card information, and has been a T-Mobile customer
since April 2013.  On or about October 5, 2015, Plaintiff Shafer received a notification
letter from Experian regarding the Data Breach.  In or around November 2015, Plaintiff
Shafer's credit card was declined when he attempted to make a purchase.  Plaintiff
Shafer's bank informed him that a fraudulent charge was made online and the card was

1   then cancelled and a replacement card was issued.  In or around December 2015,

2   Plaintiff Shafer received a letter from his bank indicating he had changed his address

3   when he had not moved or requested any change.  Consequently, he cancelled his debit

4   card and another replacement card was issued.  As a result of the Data Breach, Plaintiff

5   Shafer has spent over three hours addressing issues arising from the Data Breach,

6   including addressing the fraudulent activity and checking his accounts for fraud.

7       61.    Plaintiff Nathanial Apan is a resident of Florissant, Washington and was a

8   Washington resident during the period of the Data Breach.  Plaintiff Apan applied for a

9   T-Mobile account in Washington between September 1, 2013 and September 16, 2015

10  by providing his PII and payment card information. In or around March 2015, Plaintiff

11  Apan discovered a delinquent cellular account on his credit report with about $400 past

12  due, which he ultimately paid to the provider and was not reimbursed.  In or around

13  September 2015, Plaintiff Apan received a bill from another cellular provider for about

14  $2,000, which he later learned was sent to collections.  After reviewing his credit report,

15  he discovered five unauthorized charges from that same provider for about $4,000 total.

16  Two fraudulent credit card accounts also appeared on his credit report.  Plaintiff Apan

17  filed a police report and was able to remove most of the fraudulent activity from his

18  credit report, although at least one unauthorized charge remains outstanding.  In or

19  around October 2015, Plaintiff Apan received a notification letter from Experian

20  regarding the Data Breach.  In or around November 2015, T-Mobile contacted Plaintiff

21  Apan to inform him that two fraudulent cellular accounts were opened in his name.  As

22  a result of the Data Breach, Plaintiff Apan has spent over 50 hours addressing issues

23  arising from the Data Breach, including addressing the fraudulent activity and checking

24  his accounts and credit report for additional fraud.

25      62.    Plaintiff Jeffrey Gutschmidt is a resident of Kirkland, Washington and was

26  a Washington resident during the period of the Data Breach.  Plaintiff Gutschmidt

27  applied for a T-Mobile account in Washington between September 1, 2013 and

28  September 16, 2015 by providing his PII and payment card information, and has been a

T-Mobile customer since January 2014. On or about October 5, 2015, Plaintiff Gutschmidt received a notification letter from Experian regarding the Data Breach. As a result of the Data Breach, Plaintiff Gutschmidt has spent about $20 to place a credit freeze on his credit report and over 20 hours addressing issues arising from the Data Breach, including checking his accounts for fraud.

## B. Defendants

63.     Defendant Experian Information Solutions, Inc. is incorporated in Ohio, with its headquarters and principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626. It is a citizen of California.

64.     Defendant Experian Holdings, Inc. is incorporated in Delaware, with its headquarters and principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626. It is a citizen of California. Based upon information and belief, Experian Holdings, Inc. is the parent company of Experian Information Solutions, Inc. Experian Holdings, Inc. and Experian Information Solutions, Inc. are referred to collectively as "Experian," or "Defendants."

65.     Experian is one of the major credit reporting bureaus in the United States. As a credit bureau service, Experian is engaged in a number of credit-related services, including "[a]ssisting organizations with evaluating the risks and rewards associated with providing credit to consumers and businesses," and providing people with "online access to their credit history and score."[4] As a credit bureau service, Experian maintains information related to the credit history of consumers and provides the information to credit grantors who are considering a borrower's application for credit or who have extended credit to the borrower.

## JURISDICTION AND VENUE

66.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs are bringing claims under the Fair Credit Reporting Act ("FCRA"),

---

[4] *See Experian's Principal Business Groups*, EXPERIAN, http://www.experian.com/corporate/principal-businesses.html (last visited April 14, 2016).

15 U.S.C. §§ 1681e, *et seq.*

67.     This Court also has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 Class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and many members of the Class are citizens of states different from Defendants.

68.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Experian is headquartered in this District, it regularly transacts business here, and some of the Class members reside in this District.  In addition, the events giving rise to Plaintiffs' causes of action arose, in part, in this District.

## FACTS

### A.     The Data Breach Compromised the PII of 15 Million Consumers.

69.     On October 1, 2015, Experian announced that its systems had been breached and that the Data Breach affected approximately 15 million consumers. According to Experian's press release, unauthorized users acquired the PII of consumers, including T-Mobile customers, from one of Experian's servers. The PII included names, dates of birth, addresses, Social Security numbers, alternative identification numbers, and other personal information:

> Experian North America today announced that one of its business units . . . experienced an unauthorized acquisition of information from a server that contained data on behalf of one of its clients, T-Mobile, USA, Inc.  ***The data included some personally identifiable information for approximately 15 million consumers in the US***, including those who applied for T-Mobile USA postpaid services or device financing from September 1, 2013 through September 16, 2015 . . . .
>
> . . .
>
> ***The data acquired included names, dates of birth, addresses, and Social Security numbers and/or an alternative form of***

***ID like a drivers' license number***, as well as additional information used in T-Mobile's own credit assessment . . . .[5]

70.    On its website, Experian admits the unauthorized disclosure of consumer data and warned consumers of the consequences of the Data Breach:

- Based on our investigation to date, some organizations had unauthorized disclosure of identifying information and individuals, including some current customers, and also consumers who applied for service or device financing from Sept. 1, 2013 through Sept. 16, 2015, had unauthorized disclosure of their personal information.

- ***The information that was exposed could lead to an increased risk of identity theft***.

- Be alert to "phishing" by someone who acts like a colleague or friend and requests sensitive information over email, such as passwords, social security numbers, or bank account numbers.

- Consider placing a fraud alert or security freeze on your credit file.

- Experian is handling notification about this unauthorized access given that the information was stored on a server in one of our business units.

- In order to evaluate the risk level of a credit applicant, T-Mobile uses a variety of information to determine the likelihood that a borrower will be able to pay.  Information used to do this can include a consumer's payment history, as well as information from Experian or other sources.  That

---

[5] *See* Press Release, *Experian Notifies Consumers in the U.S. Who May Have Been Affected by Unauthorized Acquisition of a Client's Data*, Oct. 1, 2015, *available at* https://www.experian.com/assets/securityupdate/securityupdate-press-release.pdf (last visited April 14, 2016).

information is then compiled and used in their credit criteria when evaluating the risk level of an applicant.[6]

71.    In addition, on October 1, 2015, T-Mobile posted a letter from its CEO John J. Legere on its website regarding its reaction to the Data Breach:

> We have been notified by Experian, a vendor that processes our credit applications, that they have experienced a data breach.  The investigation is ongoing, but what we know right now is that the hacker acquired the records of approximately 15 million people, including new applicants requiring a credit check for service or device financing from September 1, 2013 through September 16, 2015.   These records include information such as name, address and birthdate as well as encrypted fields with Social Security number and ID number (such as driver's license or passport number), and additional information used in T-Mobile's own credit assessment. Experian has determined that this encryption may have been compromised.   We are working with Experian to take protective steps for all of these consumers as quickly as possible.
>
> Obviously I am incredibly angry about this data breach and we will institute a thorough review of our relationship with Experian …. I take our customer and prospective customer privacy VERY seriously. This is no small issue for us...
> …
> At T-Mobile, privacy and security is of utmost importance, so I will stay very close to this issue and I will do everything possible to continue to earn your trust every day.[7]

72.    T-Mobile also posted the following information on its website:

• ***Experian has taken full responsibility for the theft of data*** from its server.

---

[6]  http://www.experian.com/data-breach/t-mobilefacts.html (last visited April 14, 2016) (emphasis added).
[7]  http://www.t-mobile.com/landing/experian-data-breach.html (last visited April 14, 2016) (emphasis added).

CONSOLIDATED CLASS ACTION COMPLAINT

- ***Experian maintains a historical record of the applicant data used by T-Mobile to make credit decisions.*** The data provides the record of the applicant's credit application with T-Mobile and is used to assist with credit decisions and respond to questions from applicants about the decision on their credit application. ***The data is required to be maintained for a minimum period of 25 months under credit laws.***

- All of our vendors are contractually obligated to abide by stringent privacy and security practices, and we regularly conduct reviews of vendor security practices as necessary. That was no different with Experian.

- Experian determined that, although Social Security and identification numbers were encrypted, the ***encryption may have been compromised***.

- Our vendors are contractually obligated to abide by stringent privacy and security practices, and ***we are extremely disappointed that hackers could access the Experian network***.[8]

73.     On October 8, 2015 and thereafter, Experian updated its website.  Most notably, Experian clarified that, *in addition to T-Mobile applicants*, other customers' and organizations' identifying and personal information was accessed during the breach. It also admitted that it had "disclosed" the information, and that the information had been "downloaded":

- Based on Experian's investigation to date, the unauthorized access … included access to a server that contained identifying information for some organizations and, primarily, personal information for individuals, including some current customers, and also consumers who applied for T-Mobile

---

[8] See *Frequently Asked Questions About the Experian Incident*, T-MOBILE, Oct. 8, 2015, *available at* http://www.t-mobile.com/landing/experian-data-breach-faq.html (last visited April 14, 2016).

CONSOLIDATED CLASS ACTION COMPLAINT

USA postpaid service or device financing, which require a credit check, from Sept. 1, 2013 through Sept. 16, 2015.

- Based on our investigation to date, **some organizations had unauthorized disclosure of identifying information** and individuals, including some current customers, and also consumers who applied for service or device financing from Sept. 1, 2013 through Sept. 16, 2015, **had unauthorized disclosure of their personal information.** Records containing a name, address, Social Security number, date of birth, identification number (typically a driver's license, military ID, or passport number) and additional information used in T-Mobile's own credit assessment **were downloaded.**[9]

74.     According to the California Attorney General's February 2016 *California Data Breach Report*, the Data Breach affected approximately 2.1 million individuals *in California alone.*[10]  The extent of the impact on consumers has prompted Attorneys General from several states, including at least Massachusetts, Illinois, and Connecticut, to initiate a multi-state investigation into Experian's role in the Data Breach.[11]

**B.     Experian Promised to Protect Its Customers' PII, but Maintained Inadequate Data Security.**

75.     Experian is one of the major credit reporting bureaus in the United States. As a credit bureau service, Experian is engaged in a number of credit-related services, including "[a]ssisting organizations with evaluating the risks and rewards associated with providing credit to consumers and businesses," and providing people with "online access to their credit history and score."  Experian also maintains information related to the credit history of consumers and provides the information to credit grantors who are considering a borrower's application for credit or who have extended credit to the

---

[9]  http://www.experian.com/data-breach/t-mobilefacts.html (last visited April 14, 2016).
[10]  *See* CALIFORNIA DEPARTMENT OF JUSTICE, *California Data Breach Report*, Feb. 16, 2016, *available at* https://oag.ca.gov/breachreport2016 (last visited April 14, 2016).
[11]  http://www.reuters.com/article/2015/10/02/us-experian-cyberattack-investigation-idUSKCN0RW2BC20151002 (last visited April 14, 2016).

CONSOLIDATED CLASS ACTION COMPLAINT

borrower.[12]

76.    Prior to the Data Breach, Experian promised its customers and everyone else whose PII it collects that it would reasonably protect their PII.  Experian's privacy policy stated, in relevant part:

> Experian is held accountable for its information use by consumer privacy expectations and by laws and industry codes established by government entities and industry organizations around the world.

> Among the laws and industry self-regulatory codes with which Experian complies in the United States are:
> - The Fair Credit Reporting Act.
> - The Gramm-Leach-Bliley Act . . . .[13]

77.    Experian's policy further stated: "We use a variety of security systems to safeguard the information we maintain and provide . . . .  We comply with all laws and applicable self-regulatory guidelines . . . .  We comply with all contractual restrictions placed on information provided to Experian."[14]

78.    Plaintiffs and Class members were required to disclose their PII to Experian in connection with their use of Experian's services (including credit assessments for T-Mobile), and Experian compiled, maintained, and furnished Class members' PII, in connection with Class members' acquisition of services, such as mobile phone service.  Experian was allowed to perform such services, involving such sensitive information only if it adhered to the requirements of laws meant to protect the privacy of such information, such as the FCRA and the Gramm-Leach-Bliley Act ("GLBA").  Experian's maintenance, use, and furnishing of such PII is and was

---

[12] *See Experian's Principal Business Groups*, EXPERIAN, http://www.experian.com/corporate/principal-businesses.html (last visited April 14, 2016).

[13] http://www.experian.com/privacy/accountability.html (last visited April 14, 2016).

[14] http://www.experian.com/privacy/information_values.html (last visited April 14, 2016).

intended to affect Plaintiffs and other Class members, and the harm caused by disclosure of that PII in the Data Breach was entirely foreseeable to Experian.

79.    Experian has also touted itself as an industry leader in data breach security and often promotes the importance of data breach prevention.  Experian annually publishes both a Data Breach Response Guide[15] and a Data Breach Industry Forecast.[16] Both publications state that Experian is "a leader in helping businesses plan for and mitigate consumer risk following data breach incidents," and that Experian "offers incident management, notification, call center support and reporting services while serving millions of affected consumers with proven credit and identity protection products."[17]  The Data Breach Response Guide also emphasizes the importance of taking a number of proactive measures to prevent data breaches, which Experian failed to adopt to prevent the Data Breach.[18]

80.    Similarly, Experian touts its expertise in its annual report.  For instance, in its 2015 Annual Report, Experian stated:

> We may experience cyber attacks on us, our partners or third-party contractors . . . .  How do we manage the risk?
>
> • We have a number of defensive and proactive practices across the Group, based on our global security policies.
>
> • A programme of continuous measurement and alerting helps ensure that we quickly highlight areas of risk in our business practices and manage them accordingly.
>
> • Our enterprise risk management framework works to create transparency across layers of management and seeks to ensure we have appropriate oversight of data security, privacy and

---

[15]  *See* Experian Data Breach Resolution, *Data Breach Response Guide* (2014-15 ed.), *available at* http://www.experian.com/assets/data-breach/brochures/2014-2015-data-breach-response-guide.pdf (last visited April 14, 2016).
[16]  *See* Experian Data Breach Resolution, *Experian Data Breach Industry Forecast*, 2015, *available at* https://www.experian.com/assets/data-breach/white-papers/2015-industry-forecast-experian.pdf (last visited April 14, 2016).
[17]  *See id.*
[18]  *See Data Breach Response Guide*, *supra* n.15.

CONSOLIDATED CLASS ACTION COMPLAINT

protection.[19]

## C. Experian Experienced Prior Data Breaches, but Nevertheless Failed to Implement Appropriate Security.

81.   Although Experian claims to be a leader in data security and in managing data breaches once they occur, and its privacy policy promises to reasonably safeguard consumer data, Experian's own data security practices were inadequate.  Experian was well aware of this fact because it had experienced multiple data breaches in recent years.

82.   For example, the Privacy Rights Clearinghouse data breach compilation website (www.privacyrights.org/data-breach) reveals at least two separate breaches in 2012 in which an "*unauthorized user or users was able to access credit monitoring information after managing to pass Experian's authentication process.*"[20]

83.   In October 2012, Bloomberg News reported that Experian experienced 86 data breaches through the accounts of client organizations such as banks and auto dealers.[21]

84.   In 2013, Court Ventures, a court record collection service Experian acquired 10 months earlier, sold the personal information—including Social Security numbers and banking information—of millions of consumers to an unauthorized individual posing as a private investigator.  This individual then resold the information to cybercriminals for nearly $2 million.  Experian failed to notice the illegal activity for nine months and only became aware of the problem when the United States Secret Service alerted the company.[22]  According to the United States Department of Justice, over 13,000 individuals whose information was sold were victimized by the filing of

---

[19] Experian 2015 Annual Report (as of June 12, 2015), pp. 16-17, *available at* http://annualreport.experianplc.com/2015/_resources/pdf/Experian%20Annual%20Report%202015.pdf (last visited April 14, 2016).

[20] *See* https://www.privacyrights.org/node/54448 (last visited April 14, 2016); https://www.privacyrights.org/node/54516 (last visited April 14, 2016).

[21] *Top Credit Agencies Say Hackers Stole Celebrity Reports,* Bloomberg, Mar. 12, 2013, http://www.bloomberg.com/news/articles/2013-03-12/equifax-transunion-say-hackers-stole-celebrity-reports (last visited April 14, 2016).

[22] http://krebsonsecurity.com/2014/03/experian-lapse-allowed-id-theft-service-to-access-200-million-consumer-records/ (last visited April 14, 2016).

1   $65 million in fraudulent income tax returns.[23]

2   85.   In December 2013, eight months after acquiring Decisioning Solutions, an

3   identity-proofing and authentication company, Experian suffered a data breach that also

4   involved T-Mobile customer data.  This time, unauthorized individuals gained access to

5   a Decisioning Solutions file stored on servers owned by Experian. The file contained

6   names, Social Security numbers and driver's license numbers of T-Mobile customers.[24]

7   86.   In an interview with Bloomberg News, privacy advocate Dissent Doe

8   stated that, under the Freedom of Information Act, he had requested and received

9   information regarding more than 100 data breaches involving Experian's database.[25]

10   87.   As a result of these and additional incidents, Experian knew its information

11   security systems and practices were inadequate to prevent unauthorized users from

12   accessing information housed in its servers and networks.  Despite these prior breaches

13   and known vulnerabilities, Experian's data security practices had already deteriorated

14   prior to the Data Breach.

15   88.   According to Brian Krebs, a well-known cybersecurity reporter who has

16   uncovered many high-profile data breaches, several former members of Experian's

17   information security team complained about the inadequacy of Experian's data security

18   practices, including failures to fund important security projects or replace departing

19   staff:

20   Over the past week, KrebsOnSecurity has interviewed a half-
21   dozen security experts who said they recently left Experian to
     find more rewarding and less frustrating work at other
22   corporations. Nearly all described Experian as a company
     fixated on acquiring companies in the data broker and
23   analytics technology space, even as it has stymied efforts to
24   improve security and accountability at the Costa Mesa, Calif.

25   _____

26   [23] http://krebsonsecurity.com/2015/07/experian-hit-with-class-action-over-id-theft-service/ (last visited April 14, 2016).

27   [24] http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/ (last visited April 14, 2016).

28   [25] *The Changes Coming to Credit Agencies Won't Stop Hackers*, Bloomberg, Mar. 9, 2015, http://www.bloomberg.com/news/articles/2015-03-09/the-changes-coming-to-credit-agencies-won-t-stop-hackers (last visited April 14, 2016).

CONSOLIDATED CLASS ACTION COMPLAINT

based firm.

Jasun Tate worked for a year until April 2014 as a chief information security officer delegate and risk consultant at Experian's government services and e-marketing business units.  Tate said he and several of his colleagues left last year after repeatedly running into problems getting buy-in or follow-up support for major projects to beef up security around Experian's growing stable of companies handling sensitive consumer and government data.

"What the board of directors at Experian wanted security-wise and the security capabilities on the ground were two completely different things," Tate said . . . .

. . .

After [the former Chief Information Officer] was lured away to take the CIO job at the Bank of England, many of the major in-progress projects designed to bake security into all aspects of Experian's business ground to a halt, the former employees said on condition of anonymity.  Core members of the Experian security team soon began seeking employment elsewhere.  A year after [the CIO's] departure, morale suffered and the staff of the company's [security operations center] had dwindled from nearly 30 to about a dozen.

…

"We had a period of time there where security was viewed in a positive light, and things weren't being swept under the rug for the sake of uptime" the employee said.  "[The CIO] left and it kind of went the opposite direction.  Once the leadership changed, the focus changed to controlling costs and not taking systems down for maintenance, and investments started disappearing from a lot of areas.  We were in the middle of putting into operation certain tools to do next-generation detection of [cyber] threats, but we weren't able to get many of them out into production. And that's how Experian wound up where they are now."[26]

89.   It appears that even since the Data Breach, Experian continues to fail to

[26] *Id*.

implement the necessary measures to prevent further data breaches.  In October 2015, Experian was exposed for allowing public access to an internal portal.  Mr. Krebs published the following:

> The [portal] also apparently allowed anyone to file support tickets, potentially making it easy for clever attackers who'd studied the exposed support tickets to fabricate a request for access to Experian resources or accounts on the system.

> In addition, experts I spoke with who examined the portal said the support site allowed anyone to upload arbitrary file attachments of virtually any file type.  Those experts said such file upload capabilities are notoriously easy for attackers to use to inject malicious files into databases and other computing environments, and that having such capability out in the open without at least first requiring users to supply valid username and password credentials is asking for trouble.[27]

**D.    The Data Breach Has Exposed Plaintiffs and Other Consumers to Fraud, Identity Theft, Financial Harm, and a Heightened, Imminent Risk of Such Harm in the Future.**

90.    Since identity thieves use the PII of other people to commit fraud or other crimes, Plaintiffs and other consumers whose information was exposed in the Data Breach are subject to an increased, concrete risk of identity theft.  Javelin Strategy & Research, a research-based consulting firm that specializes in fraud and security in advising its clients, reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud."  In fact, "[i]n 2013, one in three consumers who received notification of a data breach became a victim of fraud."  Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts (*e.g.*, eBay, Amazon) and email payment accounts such as PayPal."[28]

---

[27] *Id.*
[28] *See* https://www.javelinstrategy.com/press-release/new-identity-fraud-victim-every-two-seconds-2013-according-latest-javelin-strategy (last visited April 14, 2016).

CONSOLIDATED CLASS ACTION COMPLAINT

91.    The California Attorney General issued a statement reiterating that the disclosed information in the Data Breach "could be used for identity theft, particularly 'new account fraud,' or opening up new accounts in the victim's name" and urged affected consumers to place fraud alerts or security freezes on their credit records.[29]

92.    The exposure of Plaintiffs' and Class members' Social Security numbers in particular poses serious problems.  Criminals frequently use Social Security numbers to create false bank accounts, file fraudulent tax returns, and incur credit in the victim's name.  Neal O'Farrell, a security and identity theft expert for Credit Sesame calls a Social Security number "your secret sauce," that is "as good as your DNA to hackers."[30] Even where data breach victims obtain a new Social Security number, the Social Security Administration warns "that a new number probably will not solve all [] problems . . . and will not guarantee [] a fresh start."[31]  In fact, "[f]or some victims of identity theft, a new number actually creates new problems."  One of those new problems is that a new Social Security number will have a completely blank credit history, making it difficult to get credit for a few years unless it is linked to the old compromised number.

93.    As a result of the compromising of their PII, Plaintiffs and Class members have suffered one or a combination of the following injuries:

- incidences of identity fraud and theft, including unauthorized bank activity, fraudulent credit card purchases, and damage to their credit;

- money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of PII;

---

[29]  https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-urges-t-mobile-customers-place-fraud-alerts (last visited April 14, 2016).
[30]  Tips, How to Protect Your Kids From the Anthem Data Breach," Kiplinger (Feb. 10, 2015), *available at* http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html (last visited April 14, 2016).
[31]  Social Security Administration, Identity Theft and Your Social Security Number, pp. 7-8, *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Mar. 10, 2016)

CONSOLIDATED CLASS ACTION COMPLAINT

- lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Data Breach, including but not limited to efforts to research how to prevent, detect, contest, and recover from misuse of their PII; and

- loss of the opportunity to control how their PII is used.

94. Furthermore, Plaintiffs and Class members have suffered, and/or will face an increased risk of suffering in the future, the following injuries:

- money and time lost as a result of fraudulent access to and use of their financial accounts;

- loss of use of and access to their financial accounts and/or credit;

- impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

- lowered credit scores resulting from credit inquiries following fraudulent activities;

- costs and lost time obtaining credit reports in order to monitor their credit records;

- money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records;

- money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

- costs of credit monitoring that is more robust than the services being offered by Experian;

- anticipated future costs from the purchase of credit monitoring and/or identity theft protection services once the temporary services being offered by Experian expire;

- costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial

accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

- money and time expended to ameliorate the consequences of the filing of fraudulent tax returns; and

- continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Experian fails to undertake appropriate, legally required steps to protect the personal information in its possession.

95.     The risks that Plaintiffs and Class members bear as a result of the Data Breach cannot be mitigated by the credit monitoring Experian has offered to affected consumers because it can only help detect, but will not prevent, the fraudulent use of Plaintiffs' and Class members' PII.  Instead, Plaintiffs and Class members will need to spend time and money to protect themselves.  For instance, credit reporting agencies impose fees for credit freezes in certain states.  In addition, while credit reporting agencies offer consumers one free credit report per year, consumers who request more than one credit report per year from the same credit reporting agency (such as Experian) must pay a fee for the additional report.  Such fees constitute out-of-pocket costs to Plaintiffs and Class members.

96.     The risks borne by affected consumers are not hypothetical: Experian has admitted that Class members' personal information was disclosed and downloaded in the Data Breach, has admitted the risks of identity theft, and has encouraged consumers to vigilantly monitor their accounts.  ***After the Data Breach, Class members' personal data reportedly quickly appeared for sale on the dark web.***  On October 3, 2015, an article entitled "Data Likely Stolen from Experian/T-Mobile Spotted for Sale on Dark Web" noted that Trustev, an Irish fraud-prevention company that monitors online sales of stolen data, released screen shots of listings for personal information that was likely compromised during the Data Breach.  A Trustev spokesperson stated that Trustev "saw listings go up for FULLZ data that matches the same types of information that just came

41

out of the Experian hack." FULLZ is a slang term for a package of PII, including Social Security number and date of birth, among other things. The spokesperson stated that once data thieves acquire stolen data, they typically unload it very quickly, and therefore, it was "extremely likely" that the listings were from the Data Breach due to the "type of data and timing."[7]

**E.    Experian Was Required to Insure the Security of Plaintiffs' PII, and to Investigate and Provide Timely and Adequate Notification of the Data Breach under Federal Regulations, But Failed To Do So.**

97.    In addition to the requirements of the Fair Credit Reporting Act, and several state statutes, which are discussed below, the Gramm-Leach-Bliley Act ("GLBA") imposes upon "financial institutions" "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801. To satisfy this obligation, financial institutions must satisfy certain standards relating to administrative, technical, and physical safeguards:

> (1) to *insure the security and confidentiality of customer records and information*;
>
> (2) to *protect against any anticipated threats or hazards to the security or integrity of such records*; and
>
> (3) to *protect against unauthorized access to or use of such records* or information which could result in substantial harm or inconvenience to any customer. 15 U.S.C. § 6801(b) (emphasis added).

98.    In order to satisfy their obligations under the GLBA, financial institutions must "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative,

---

[7] http://venturebeat.com/2015/10/03/data-likely-stolen-from-experiant-mobile-spotted-for-sale-on-dark-web-says-security-firm/ (last visited April 14, 2016).

CONSOLIDATED CLASS ACTION COMPLAINT

technical, and physical safeguards that are appropriate to [their] size and complexity, the nature and scope of [their] activities, and the sensitivity of any customer information at issue." *See* 16 C.F.R. § 314.4. "In order to develop, implement, and maintain [their] information security program, [financial institutions] shall:

> (a)   Designate an employee or employees to coordinate [their] information security program.
>
> (b)   ***Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information*** that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks. At a minimum, such a risk assessment should include consideration of risks in each relevant area of [their] operations, including:
>
> > (1)  Employee training and management;
> >
> > (2)   Information systems, including network and software design, as well as information processing, storage, transmission and disposal; and
> >
> > (3)   Detecting, preventing and responding to attacks, intrusions, or other systems failures.
>
> (c)   ***Design and implement information safeguards to control the risks [they] identify through risk assessment***, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.
>
> (d)   Oversee service providers, by:
>
> > (1)   Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; and
> >
> > (2)   Requiring [their] service providers by contract to implement and maintain such safeguards.

43

CONSOLIDATED CLASS ACTION COMPLAINT

(e) ***Evaluate and adjust [their] information security program in light of the results*** of the testing and monitoring required by paragraph (c) of this section; any material changes to [their] operations or business arrangements; or any other circumstances that [they] know or have reason to know may have a material impact on [their] information security program."

*Id.*

99.    In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F, financial institutions have an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.* "At a *minimum*, an institution's response program should contain procedures for the following:

a.   the nature and scope of an incident, and identifying what customer information systems and types of customer information have been accessed or misused;

b.   Notifying its primary Federal regulator as soon as possible when the institution becomes aware of an incident involving unauthorized access to or use of sensitive customer information, as defined below;

c.   Consistent with the Agencies' Suspicious Activity Report ("SAR") regulations, notifying appropriate law enforcement authorities, in addition to filing a timely SAR in situations involving Federal criminal violations requiring immediate attention, such as when a reportable violation is ongoing;

d.   Taking appropriate steps to contain and control the incident to prevent further unauthorized access to or use of customer information, for example, by monitoring, freezing, or closing affected accounts, while preserving records and other evidence; and

e.  Notifying customers when warranted.

*Id.* (emphasis added).

100.   Further, "[w]hen a financial institution becomes aware of an incident of unauthorized access to sensitive customer information, the institution should conduct a reasonable investigation to promptly determine the likelihood that the information has been or will be misused.  If the institution determines that misuse of its information about a customer has occurred or is reasonably possible, it should notify the affected customer as soon as possible." *See id.*

101.   Credit bureaus are "financial institutions" for purposes of the GLBA, and are therefore subject to its provisions.  *See TranUnion LLC v. F.T.C.*, 295 F.3d 42, 48 (D.C. Cir. 2002).  Under Regulation Y promulgated by the Federal Reserve Board, *Bank Holding Companies and Change in Bank Control*, "credit bureau services"[32] are "so closely related to banking or managing or controlling banks as to be a proper incident thereto."  Since Experian is a credit bureau and performs credit bureau services, it qualifies as a financial institution for purposes of the GLBA.

102.   "Nonpublic personal information," includes PII (such as the PII compromised during the Data Breach) for purposes of the GLBA.  Likewise, "sensitive customer information" includes PII for purposes of the Interagency Guidelines Establishing Information Security Standards.

103.   Upon information and belief, Experian failed to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to, Experian's failure to (a) implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data

---

[32]  Credit bureau services include "[m]aintaining information related to the credit history of consumers and providing the information to a credit grantor who is considering a borrower's application for credit or who has extended credit to the borrower."  *See* 12 C.F.R. § 225.28.

security practices were inadequate to safeguard Class members' PII.

104.   Upon information and belief, Experian also failed to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems" as mandated by the GLBA. This includes, but is not limited to, Experian's failure to notify appropriate regulatory agencies, law enforcement, and the affected individuals themselves of the Data Breach in a timely and adequate manner.

105.   Upon information and belief, Experian also failed to notify affected customers as soon as possible after it became aware of unauthorized access to sensitive customer information.

## CLASS ACTION ALLEGATIONS

106.   Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

### A.   Nationwide Class

107.   Plaintiffs bring their FCRA, negligence, and negligence per se claims (Counts I-IV) on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> *All natural persons and entities in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Experian in October 2015.*

### B.   Statewide Subclasses

108.   Plaintiffs bring their state consumer protection statute and/or data breach notification claims (Counts 5 through 48) on behalf of separate statewide subclasses for each of the following states:

a.   Alabama

b.   Arizona

c.   California

d.   Colorado

46

CONSOLIDATED CLASS ACTION COMPLAINT

e.  Delaware

f.  Florida

g.  Georgia

h.  Hawaii

i.  Illinois

j.  Indiana

k.  Kentucky

l.  Massachusetts

m. Michigan

n.  Minnesota

o.  Missouri

p.  Nevada

q.  New Jersey

r.  New Mexico

s.  New York

t.  North Carolina

u.  Ohio

v.  Oregon

w. Pennsylvania

x.  South Carolina

y.  Tennessee

z.  Texas

aa. Virginia

bb.Washington

Each proposed statewide subclass ("Statewide Subclass") is defined as follows:

CONSOLIDATED CLASS ACTION COMPLAINT

> *All natural persons and entities in [STATE] whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Experian in October 2015.*

109.   Plaintiffs also bring their negligence and negligence per se claims (counts III and IV) separately on behalf of each of the Statewide Subclasses, in the alternative to bringing those claims on behalf of the Nationwide Class.

110.   Except where otherwise noted, "Class members" shall refer to members of the Nationwide Class and each of the Statewide Subclasses, collectively.

111.   Excluded from the Nationwide Class and the Statewide Subclasses are Defendants and their current employees, as well as the Court and its personnel presiding over this action.

112.   The Nationwide and Statewide Subclasses meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the reasons set forth in Paragraphs 39-47:

113.   **Numerosity:** The Nationwide and Statewide Subclasses are so numerous that joinder of all members is impracticable. According to Experian, the Nationwide Class includes approximately 15 million individuals whose PII was acquired during the Data Breach. On information and belief, Plaintiffs allege that there are also thousands to millions of individuals in each Statewide Subclass. The parties will be able to identify each member of the Nationwide Class and Statewide Subclasses after Defendants' document production and/or related discovery.

114.   **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Nationwide Class and Statewide Subclasses, including but not limited to the following:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants owed a duty to Plaintiffs and Class members to adequately protect their PII;

CONSOLIDATED CLASS ACTION COMPLAINT

- whether Defendants breached their duties to protect the personal information of Plaintiffs and Class member;
- whether Defendants knew or should have known that their data security systems and processes were vulnerable to attack;
- whether Plaintiffs and Class member suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of PII;
- whether Defendants violated the FCRA; and
- whether Plaintiffs and Class members are entitled to equitable relief including injunctive relief.

115.   **Typicality:** All Plaintiffs' claims are typical of the claims of the Nationwide Class, and each Plaintiff's claims are typical of the claims of the Statewide Subclass in which state the respective Plaintiff resides.  Each of the Plaintiffs, like all proposed Class members, had their PII compromised in the Data Breach.

116.   **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Nationwide Class and Statewide Subclasses.  Plaintiffs have no interests that are adverse to, or in conflict with, the Class members.  There are no claims or defenses that are unique to Plaintiffs.  Likewise, Plaintiffs have retained counsel experienced in class action and complex litigation, including data breach litigation, that have sufficient resources to prosecute this action vigorously.

117.   **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Nationwide Class and Statewide Subclasses predominate over any questions which may affect only individual Class members in any of the proposed classes, including those listed in paragraph 114, *supra*.

118.   **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of

CONSOLIDATED CLASS ACTION COMPLAINT

common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

119.    Absent a class action, the majority of Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

120.    **Risks of Prosecuting Separate Actions:** Plaintiffs' claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Experian. Experian continues to maintain the PII of the Class members and other individuals, and varying adjudications could establish incompatible standards with respect to: Defendants' duty to protect individuals' PII; whether Defendants' ongoing conduct violates the FCRA and other claims alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

121.    **Injunctive Relief:** In addition, Defendants have acted and/or refused to act on grounds that apply generally to the Nationwide Class and Statewide Subclasses, making injunctive and/or declaratory relief appropriate with respect to the classes under Federal Rule of Civil Procedure 23(b)(2).  Defendants continue to (1) maintain the PII of Class members, (2) fail to adequately protect their PII, and (3) violate their rights under the FCRA and other claims alleged herein.

122.    **Certification of Particular Issues:**  In the alternative, the Nationwide Class and Statewide Subclasses may be maintained as class actions with respect to particular issues, in accordance with Fed. R. Civ. P. 23(c)(4).

# CAUSES OF ACTION

## COUNT 1

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (On Behalf of the Nationwide Class)

123.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

124.   As individuals, Plaintiffs and Class member are consumers entitled to the protections of the FCRA.  15 U.S.C. § 1681a(c).

125.   Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ."  15 U.S.C. § 1681a(f).

126.   Experian is a consumer reporting agency under the FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

127.   As a consumer reporting agency, the FCRA requires Experian to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).

128.   Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d)(1).

129.   The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

130.   As a consumer reporting agency, Experian may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members' PII.  Experian violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

131.   Experian furnished the Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

132.   The Federal Trade Commission ("FTC") has pursued enforcement actions against consumer reporting agencies under the FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.[33]

133.   Experian willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the

---

[33] Statement of Commissioner Brill (Federal Trade Commission 2011), *available at* <https://www.ftc.gov/sites/default/files/documents/cases/2011/08/110819settlementonestatement.pdf> (last visited April 14, 2016).

purposes outlined under section 1681b of the FCRA.  The willful and reckless nature of Experian's violations is supported by, among other things, former employees' admissions that Experian's data security practices have deteriorated in recent years, and Experian's numerous other data breaches in the past.  Further, Experian touts itself as an industry leader in breach prevention; thus, Experian was well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

134.   Experian also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.  *See, e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E.  Experian obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA.  Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Experian acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and other members of the classes of their rights under the FCRA.

135.   Experian's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under the FCRA.

136.   Plaintiffs and the Nationwide Class members have been damaged by Experian's willful or reckless failure to comply with the FCRA.  Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

137.   Plaintiffs and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees.  15 U.S.C. § 1681n(a)(2),

(3).

## COUNT 2

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (On Behalf of the Nationwide Class)

138.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

139.   Experian was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA.  Experian's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Experian's data security practices have deteriorated in recent years, and Experian's numerous other data breaches in the past.  Further, as an enterprise claiming to be an industry leader in data breach prevention, Experian was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

140.   Experian's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Nationwide Class members' PII and consumer reports for no permissible purposes under the FCRA.

141.   Plaintiffs and the Nationwide Class member have been damaged by Experian's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class member are entitled to recover "any actual damages sustained by the consumer."  15 U.S.C. § 1681o(a)(1).

142.   Plaintiffs and the Nationwide Class member are also entitled to recover their costs of the action, as well as reasonable attorneys' fees.  15 U.S.C. § 1681o(a)(2).

## COUNT 3

### NEGLIGENCE

### (On Behalf of the Nationwide Class and Each of the Statewide Subclasses)

143.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

CONSOLIDATED CLASS ACTION COMPLAINT

144.   Experian owed a duty to Plaintiffs and Class members, arising from the sensitivity of the information and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information.  This duty included, among other things, designing, maintaining, monitoring, and testing Experian's security systems, protocols, and practices to ensure that Class members' information was adequately secured from unauthorized access.

145.   Experian's privacy policy acknowledged Experian's duty to adequately protect Class members' PII.

146.   Experian owed a duty to Class members to implement intrusion detection processes that would detect a data breach in a timely manner.

147.   Experian also had a duty to delete any PII that was no longer needed to serve client needs.

148.   Experian owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Class members' PII.

149.   Experian also had independent duties under Plaintiffs' and Class members' state laws that required Experian to reasonably safeguard Plaintiffs' and Class members' PII and promptly notify them about the Data Breach.

150.   Experian had a special relationship with Plaintiffs and Class members from being entrusted with their PII, which provided an independent duty of care.  Plaintiffs' and other Class members' willingness to entrust Experian with their PII was predicated on the understanding that Experian would take adequate security precautions. Moreover, Experian had the ability to protect its systems and the PII it stored on them from attack.

151.   Experian's role to utilize and purportedly safeguard Plaintiffs' and Class members' PII presents unique circumstances requiring a reallocation of risk.

152.   Experian breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; (c) failing to disclose that

Defendants' data security practices were inadequate to safeguard Class members' PII; and (d) failing to provided adequate and timely notice of the Data Breach.

153.   But for Experian's breach of its duties, Class members' PII would not have been accessed by unauthorized individuals.

154.   Plaintiffs and Class members were foreseeable victims of Experian's inadequate data security practices.  Experian knew or should have known that a breach of its data security systems would cause damages to Class members.

155.   Experian's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Nationwide Class members' PII and consumer reports for no permissible purposes under the FCRA.

156.   As a result of Experian's willful failure to prevent the Data Breach, Plaintiffs and Class members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft.  Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII.

157.   The damages to Plaintiffs and the Class members were a proximate, reasonably foreseeable result of Experian's breaches of its duties.

158.   Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT 4
## NEGLIGENCE PER SE

**(On behalf of the Nationwide Class and Each of the Statewide Subclasses)**

159.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

160.   Under the FCRA, 15 U.S.C. §§ 1681e, Experian is required to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).

161.   Defendants failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA.

162.   Plaintiffs and Class members were foreseeable victims of Experian's violation of the FCRA.  Experian knew or should have known that a breach of its data security systems would cause damages to Class members.

163.   As alleged above, Experian was required under the Gramm-Leach-Bliley Act ("GLBA") to satisfy certain standards relating to administrative, technical, and physical safeguards:

> **(1)** to *insure the security and confidentiality of customer records and information*;
>
> **(2)** to *protect against any anticipated threats or hazards to the security or integrity of such records*; and
>
> **(3)** to *protect against unauthorized access to or use of such records* or information which could result in substantial harm or inconvenience to any customer.

15 U.S.C. § 6801(b) (emphasis added).

164.   In order to satisfy their obligations under the GLBA, Experian was also required to "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." *See* 16 C.F.R. § 314.4.

165.   In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F., Experian had an affirmative duty to

1    "develop and implement a risk-based response program to address incidents of

2    unauthorized access to customer information in customer information systems." *See id.*

3         166.   Further, when Experian became aware of " unauthorized access to sensitive

4    customer information," it should have "conduct[ed] a reasonable investigation to

5    promptly determine the likelihood that the information has been or will be misused" and

6    "notif[ied] the affected customer[s] as soon as possible." *See id.*

7         167.   Experian violated by GLBA by failing to "develop, implement, and

8    maintain a comprehensive information security program" with "administrative,

9    technical, and physical safeguards" that were "appropriate to [its] size and complexity,

10   the nature and scope of [its] activities, and the sensitivity of any customer information at

11   issue." This includes, but is not limited to, Experian's failure to implement and maintain

12   adequate data security practices to safeguard Class members' PII; (b) failing to detect

13   the Data Breach in a timely manner; and (c) failing to disclose that Defendants' data

14   security practices were inadequate to safeguard Class members' PII.

15        168.   Experian also violated the GLBA by failing to "develop and implement a

16   risk-based response program to address incidents of unauthorized access to customer

17   information in customer information systems." This includes, but is not limited to,

18   Experian's failure to notify appropriate regulatory agencies, law enforcement, and the

19   affected individuals themselves of the Data Breach in a timely and adequate manner.

20        169.   Experian also violated by the GLBA by failing to notify affected customers

21   as soon as possible after it became aware of unauthorized access to sensitive customer

22   information.

23        170.   Plaintiffs and Class members were foreseeable victims of Experian's

24   violation of the GLBA.  Experian knew or should have known that its failure to take

25   reasonable measures to prevent a breach of its data security systems, and failure to

26   timely and adequately notify the appropriate regulatory authorities, law enforcement,

27   and Class members themselves would cause damages to Class members.

28        171.   Defendants' failure to comply with the applicable laws and regulations,

CONSOLIDATED CLASS ACTION COMPLAINT

1  including the FCRA and the GLBA, constitutes negligence *per se.*

2  172.  But for Experian's violation of the applicable laws and regulations, Class

3  members' PII would not have been accessed by unauthorized individuals.

4  173.  As a result of Experian's failure to comply with applicable laws and

5  regulations, Plaintiffs and Class members suffered injury, which includes but is not

6  limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial

7  harm.  Plaintiffs and Class members must monitor their financial accounts and credit

8  histories more closely and frequently to guard against identity theft.  Class members

9  also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs

10  for obtaining credit reports, credit freezes, credit monitoring services, and other

11  protective measures to deter or detect identity theft.  The unauthorized acquisition of

12  Plaintiffs and Class members' PII has also diminished the value of the PII.

13  174.  The damages to Plaintiffs and the Class members were a proximate,

14  reasonably foreseeable result of Experian's breaches of it's the applicable laws and

15  regulations.

16  175.  Therefore, Plaintiffs and Class members are entitled to damages in an

17  amount to be proven at trial.

18  **i.  Alabama**

19  **COUNT 5**

20  **VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**

21  **Ala. Code § 8-19-1, *et seq.***

22  **(On Behalf of the Alabama Subclass)**

23  176.  Plaintiffs incorporate by reference all paragraphs above as if fully set forth

24  herein.

25  177.  The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares

26  several deceptive acts or practices in the conduct of any trade or commerce to be

27  unlawful, including: "(5) [r]epresenting that goods or services have sponsorship,

28  approval, characteristics, ingredients, uses, benefits, or qualities that they do not have,"

"(7) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) [e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

178.   Experian, while operating in Alabama, engaged in deceptive acts and practices in the conduct of trade and commerce, in violation of Ala. Code § 8-19-5(5), (7), and (27).  This includes but is not limited to the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Alabama Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Alabama Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.   Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Alabama Subclass members' PII;

e.   Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Alabama Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.   Experian failed to maintain the privacy and security of the Alabama Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach.

179.   As a direct and proximate result of Defendants' unlawful practices, Alabama Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

180.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Alabama Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

181.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Alabama Subclass members' PII and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of members of the Alabama Subclass members.

182.   A written pre-suit demand under Ala. Code § 8-19-10(e) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015. Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

183.   Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama Subclass seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Subclass member.

184.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq*.

**ii.** **Arizona**

**COUNT 6**

**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**

**Ariz. Rev. Stat. § 44-1521, *et seq*.**

**(On Behalf of the Arizona Subclass)**

185.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

186.   Experian, while operating in Arizona, used and employed deception, deceptive and unfair acts and practices, fraud, misrepresentation, and the concealment, suppression, and omission of material facts with the intent that others rely on such concealment, suppression and omission, in connection with the sale and advertisement of services, in violation of Ariz. Rev. Stat.. § 44- 1522(A). This includes but is not limited the following:

a.    Experian failed to enact adequate privacy and security measures to protect the Arizona Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.    Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard Arizona Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.    Experian knowingly omitted, suppressed, and concealed the inadequacy of  its privacy and security protections for the Arizona Subclass members' PII;

e.    Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy

62

CONSOLIDATED CLASS ACTION COMPLAINT

and security of Arizona Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

      f.    Experian failed to maintain the privacy and security of Arizona Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

      g.    Experian failed to disclose the Data Breach to the Arizona Subclass members in a timely and accurate manner, in violation of Ariz. Rev. Stat. § 44-7501, *et seq.*

187.   As a direct and proximate result of Experian's practices, the Arizona Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

188.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Arizona Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

189.   Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard the Arizona Subclass members' PII and that the risk of a data breach or theft was highly likely. Experian's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Arizona Subclass members.

190.   Plaintiffs and the Arizona Subclass seek monetary relief against Experian in an amount to be determined at trial.

191.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona Consumer Fraud Act, Arizona Rev. Stat. § 44- 1522, *et seq.*

iii.      California

## COUNT 7

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code § 17200, *et seq.*

**(On Behalf of the Nationwide Class or, in the Alternative, the California Subclass)**

192.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

193.   California Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Experian violated (and continues to violate) California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*, by engaging in the above-described unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices.

194.   Experian's unfair and fraudulent acts and practices include but are not limited to the following:

a.      Experian failed to enact adequate privacy and security measures, in California, to protect the Class members' PII from unauthorized disclosure, release, data breaches, and theft, in violation of industry standards and best practices, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action, in California, following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented, in California, that they would maintain adequate data privacy and security practices and procedures to safeguard Class members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian knowingly and fraudulently misrepresented that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class members' PII;

e.      Experian knowingly omitted, suppressed, and concealed the inadequacy of its privacy and security protections for Class members' PII;

f.      Experian failed to maintain reasonable security, in violation of Cal. Civ. Code § 1798.81.5; and

g.      Experian failed to disclose the Data Breach to Class members in a timely and accurate manner, in violation of the duties imposed by Cal. Civ. Code § 1798.82 *et seq.*

195.   Experian's acts and practices also constitute "unfair" business acts and practices, in that the harm caused by Experian's wrongful conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused and will continue to cause substantial injury to consumers such as Plaintiffs and the Class.

196.   Experian's acts and practices also constitute "unlawful" business acts and practices by virtue of their violation of the FCRA, 15 U.S.C. §§ 1681e (as described fully above), the GLBA, 15 U.S.C. § 6801 *et seq.* (as described fully above), California's fraud and deceit statutes, Cal. Civ. Code §§ 1572, 1573, 1709, 1711; Cal. Bus. & Prof. Code §§ 17200, *et seq.*, 17500, *et seq.*, the California Customer Records' Act, Cal. Civ. Code §§ 1798.80, *et seq.* (as described fully below), and California common law.

197.   There were reasonably available alternatives to further Experian's legitimate business interests, including using best practices to protect Class members' PII, other than Experian's wrongful conduct described herein.

198.   As a direct and/or proximate result of Experian's unfair practices, Plaintiffs, the Nationwide Class, and the California Subclass have suffered injury in fact in connection with the Data Breach, including but not limited to time and expenses

65

CONSOLIDATED CLASS ACTION COMPLAINT

related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII. As a result, Plaintiffs and other Class members are entitled to compensation, restitution, disgorgement, and/or other equitable relief.  Cal. Bus. & Prof. Code § 17203.

199.   Experian knew or should have known that its data security practices and infrastructure were inadequate to safeguard Class members' PII, and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to Class members' rights.

200.   On information and belief, Experian's unlawful and unfair business practices, except as otherwise indicated herein, continue to this day and are ongoing.

201.   Plaintiffs and other Class members also are entitled to injunctive relief, under California Business and Professions Code §§ 17203, 17204, to stop Experian's wrongful acts and to require Experian to maintain adequate security measures to protect the personal and financial information in its possession.

202.   Under Business and Professions Code § 17200 *et seq.*, Plaintiffs seek restitution of money or property that the Defendants may have acquired by means of Defendants' deceptive, unlawful, and unfair business practices (to be proven at trial), restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and unfair business practices (to be proven at trial), declaratory relief, and attorney's fees and costs (allowed by Cal. Code Civil Pro. §1021.5).

## COUNT 8

## VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT

### Cal. Civ. Code § 1798.80, *et seq.*

### (On Behalf of the California Subclass)

203.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

204.   "[T]o ensure that personal information about California residents is protected," Civil Code § 1798.81.5 requires any "business that owns, licenses, or maintains personal information about a California resident [to] implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

205.   Experian owns, maintains, and licenses personal information, within the meaning of § 1798.81.5, about Plaintiffs and the California Subclass.

206.   Experian violated Civil Code § 1798.81.5 by failing to implement reasonable measures to protect Class members' PII.

207.   As a direct and proximate result of Defendants' violations of section 1798.81.5 of the California Civil Code, the Data Breach described above occurred.

208.   In addition, California Civil Code § 1798.82(a) provides that "[a] person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay . . . ."

209.   Section 1798.2(b) provides that "[a] person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

210.   The Experian Defendants are businesses that own or license computerized data that include personal information as defined by Cal. Civ. Code § 1798.80 *et seq.*

211.   In the alternative, the Experian Defendants maintain computerized data that includes personal information that the Experian Defendants do not own as defined by Cal. Civ. Code § 1798.80 *et seq.*

212.   Plaintiffs and the California Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information covered by Cal. Civ. Code § 1798.81.5(d)(1).

213.   Because Experian reasonably believed that Plaintiffs and the California Subclass members' personal information was acquired by unauthorized persons during the Data Breach, it had an obligation to disclose the Data Breach in a timely and accurate fashion under Cal. Civ. Code § 1798.82(a), or in the alternative, under Cal. Civ. Code § 1798.82(b).

214.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Cal. Civ. Code § 1798.82.

215.   As a direct and proximate result of Defendants' violations of sections 1798.81.5 and 1798.82 of the California Civil Code, Plaintiffs and the California Subclass Members suffered the damages described above, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

216.   Plaintiffs the California Subclass seek relief under § 1798.84 of the California Civil Code, including, but not limited to, actual damages in an amount to be proven at trial, and injunctive relief.

**COUNT 9**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

**Cal. Civ. Code § 1750, et seq.**

**(On Behalf of the California Subclass)**

217.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

218. The Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes. The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

219. Experian is a "person" as defined by Civil Code Section 1761(c), because Experian is a corporation as set forth above.

220. Plaintiff and Class Members are "consumers" within the meaning of Civil Code Section 1761(d).

221. Experian performed "services," as defined by California Civil Code Section 1761(a), with respect to its compilation, maintenance, use, and furnishing of Plaintiffs' and California Subclass members' PII that was compromised in the Data Breach.

222. Experian's sale of their services to T-Mobile in California constitutes "transaction[s]" which were "intended to result or which result[ed] in the sale" of services to consumers within the meaning of Civil Code Sections 1761(e) and 1770(a).

223. Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money as a result of Experian's actions as set forth herein. Specifically, Plaintiffs' PII has been compromised and they are imminently threatened with financial and identity theft, and, in fact, many have already suffered actual fraud.

224. Section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." Experian represented that its credit background check services would adequately secure Plaintiffs' and California Subclass members' PII when in fact its computer systems were inadequately protected and susceptible to breach.

225.   Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Experian represented that its credit background check services would adequately secure Plaintiffs' and California Subclass members' PII when in fact its computer systems were inadequately protected and susceptible to breach.

226.   Section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised."  As noted above, Experian failed to provide adequate security to the PII it was entrusted to secure for the purposes of conducting credit background checks.

227.   A written pre-suit demand under Cal. Civ. Code § 1782(a) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015. Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

228.   Plaintiffs, individually and on behalf of the California Subclass, seek damages, an order enjoining the acts and practices described above, and attorneys' fees and costs under the CLRA.

**iv.      Colorado**

## COUNT 10

**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**

**Colo. Rev. Stat. § 6-1-101, *et. seq.***

**(On Behalf of the Colorado Subclass)**

229.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

230.   Experian, while operating in Colorado, engaged in deceptive practices in the course of its business, vocation, and occupation, in violation of C.R.S. §6-1-105. This includes, but is not limited to the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Colorado Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard Colorado Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, in violation of Colo. Rev. Stat. §6-1-105(e), (g) and (u);

d.   Experian knowingly and fraudulently misrepresented that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Colorado Subclass members' PII, in violation of Colo. Rev. Stat. §6-1-105(e), (g) and (u);

e.   Experian knowingly omitted, suppressed, and concealed the inadequacy of the privacy and security protections for Colorado Class members' PII, in violation of Colo. Rev. Stat. §6-1-105(1)(e), (g) and (u); and

f.   Experian failed to maintain the privacy and security of Plaintiffs' and the Colorado Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*, which was a direct and proximate cause of the Data Breach.

g.   Experian failed to disclose the Data Breach to the Colorado Subclass members in a timely and accurate manner, in violation of the duties imposed by Colo. Rev. Stat. Ann § 6-1-716(2).

231.    As a direct and proximate result of Defendants' practices, the Colorado Subclass members suffered injuries to legally protected interests, as described above, including their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

232.    The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

233.    Experian knew or should have known that data security practices and infrastructure were inadequate to safeguard the PII of members of the Colorado Subclass, and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Colorado Subclass members.

234.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs, individually and on behalf of the Colorado Subclass, seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and each Colorado Subclass member.

235.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado Consumer Protection Act, Colo. Rev. Stat § 6-1-101, *et seq.*

/ / /

/ / /

CONSOLIDATED CLASS ACTION COMPLAINT

# COUNT 11

## VIOLATION OF THE COLORADO SECURITY BREACH NOTIFICATION ACT

### Colo. Rev. Stat. Ann. § 6-1-716, *et. seq.*

### (On Behalf of the Colorado Subclass)

236.    Plaintiffs incorporate by reference all paragraphs above as though fully set forth herein.

237.    Under Colo. Rev. Stat. Ann. § 6-1-716(2)(a), "a commercial entity that conducts business in Colorado and that owns or licenses computerized data that includes personal information about a resident of Colorado shall, when it becomes aware of a breach of the security of the system, conduct in good faith a prompt investigation to determine the likelihood that personal information has been or will be misused … [and] give notice as soon as possible to the affected Colorado resident  … ."

238.    Under Colo. Rev. Stat. Ann. § 6-1-716(2)(b), "a commercial entity that maintains computerized data that includes personal information that the individual or the commercial entity does not own or license shall give notice to and cooperate with the owner or licensee of the information of any breach of the security the system immediately following discovery of a breach … ."

239.    The Experian Defendants are businesses that own or license computerized data that includes personal information as defined by Colo. Rev. Stat. Ann. § 6-1-716.

240.    In the alternative, the Experian Defendants maintain computerized data that includes personal information that the Experian Defendants do not own as defined by Colo. Rev. Stat. Ann. § 6-1-716.

241.    Plaintiffs and the Colorado Subclass members' PII (*e.g.*, Social Security numbers) includes personal information covered by Colo. Rev. Stat. Ann. § 6-1-716(1).

242.    Because Experian was aware of a breach in its security system, it had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Colo. Rev. Stat. Ann. § 6-1-716 (2).

243.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Colo. Rev. Stat. Ann. § 6-1-716 (2).

244.   As a direct and proximate result of Experian's violations of Colo. Rev. Stat. Ann. § 6-1-716(2), Plaintiffs and the Colorado Subclass members suffered the damages alleged herein.

245.   Plaintiffs and the Colorado Subclass members seek relief under Colo. Rev. Stat. Ann. § 6-1-716(4), including, but not limited to, actual damages (to be proven at trial) and equitable relief.

**v.     Delaware**

## COUNT 12

## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT

### 6 Del. Code § 2513, *et seq.*

### (On Behalf of the Delaware Subclass)

246.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

247.   Experian, while operating in Delaware, used and employed deception, fraud, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of services, in violation of 6 Del. Code § 2513(a). This includes but is not limited the following:

a.     Experian failed to enact adequate privacy and security measures to protect the Delaware Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard the

Delaware Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

        d.    Experian knowingly omitted, suppressed, and concealed the inadequacy of its privacy and security protections for the Delaware Subclass members' PII;

        e.    Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Delaware Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

        f.    Experian failed to maintain the privacy and security of the Delaware Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

        g.    Experian failed to disclose the Data Breach to the Delaware Subclass members in a timely and accurate manner, in violation of 6 Del. Code § 12B-102(a).

248.   As a direct and proximate result of Experian's practices, the Delaware Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

249.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Delaware Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

250.   Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard the Delaware Subclass members' PII and that the risk of a data breach or theft was highly likely. Experian's actions were

negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Delaware Subclass members.

251.   Plaintiffs and the Delaware Subclass Members seek damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of Defendants' unlawful conduct, in an amount to be proven at trial. *See also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). Plaintiffs and Delaware Subclass members also seek an order enjoining Experian's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees (pursuant to 6 Del. Code § 2526) , and any other just and proper relief available under the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq*.

## COUNT 13

**VIOLATION OF THE DELAWARE COMPUTER SECURITY BREACH ACT**

**6 Del. Code § 12B-102, *et seq.***

**(On Behalf of the Delaware Subclass)**

252.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

253.   Under Del. Code Ann. Tit. 6 § 12b-102(a), "a commercial entity that conducts business in Delaware and that owns or licenses computerized data that includes personal information about a resident of Delaware shall, when it becomes aware of a breach of the security of the system … give notice as soon as possible to the affected Delaware resident. Notice must be made in the most expedient time possible and without unreasonable delay."

254.   Under Del. Code Ann. Tit. 6 § 12b-102(b), "a commercial entity that maintains computerized data that includes personal information that the individual or the commercial entity does not own or license shall give notice to and cooperate with the owner or licensee of the information of any breach of the security of the system immediately following discovery of a breach … ."

CONSOLIDATED CLASS ACTION COMPLAINT

255.   Each of the Experian Defendants are businesses that own or license computerized data that includes personal information as defined by 6 Del. Code Ann. § 12B-101, *et seq*.

256.   In the alternative, the Experian Defendants maintain computerized data that includes personal information that the Experian Defendants do not own as defined by 6 Del. Code Ann. § 12B-101, *et seq*.

257.   Plaintiffs and the Delaware Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information covered under 6 Del. Code Ann. § 12B-101(4).

258.   Because Experian was aware of a breach of its security system that was reasonably likely to result in a misuse Delaware residents' personal information, Experian had an obligation to disclose the Data Breach in a timely and accurate fashion pursuant to 6 Del. Code Ann. § 12B-102.

259.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated 6 Del. Code Ann. § 12B-102.

260.   As a direct and proximate result of Experian's violations of 6 Del. Code Ann. § 12B-102(a), Plaintiffs and the Delaware Subclass members suffered the damages alleged herein.

261.   Plaintiffs and the Delaware Subclass members seek relief under 6 Del. Code Ann. § 12B-104, including, but not limited to, actual damages and broad equitable relief.

/ / /

/ / /

/ / /

77

CONSOLIDATED CLASS ACTION COMPLAINT

vi. **District of Columbia**

**COUNT 14**

**VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT,**

**D.C. Code § 28-3904, *et seq.***

**(On Behalf of the District of Columbia Subclass)**

262. Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

263. As defined by D.C. Code § 28-3901, D.C. Subclass members are "consumers" who did or would have purchased or received consumer goods or services, and who otherwise provide economic demand for Experian's services.

264. Experian, while operating in the District of Columbia, used and employed deception, fraud, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of services, in violation of D.C. Code § 28-3904. This includes but is not limited the following:

a. Experian failed to enact adequate privacy and security measures to protect the D.C. Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b. Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard the D.C. Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d. Experian knowingly omitted, suppressed, and concealed the inadequacy of its privacy and security protections for the D.C. Subclass members' PII;

78

CONSOLIDATED CLASS ACTION COMPLAINT

e.     Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the D.C. Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.     Experian failed to maintain the privacy and security of the D.C. Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

g.     Experian failed to disclose the Data Breach to D.C. Subclass members in a timely and accurate manner, in violation of D.C. Code § 28-3852(a)

265.   As a direct and proximate result of Experian's practices, the D.C. Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

266.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the D.C. Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

267.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard D.C. Class members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the D.C. Class.

268.   Plaintiffs and D.C. Subclass members seek relief under D.C. Code § 28-3905(k), including, but not limited to, restitution, injunctive relief, punitive damages, attorneys' fees and costs, and treble damages or $1,500 per violation, whichever is greater.

CONSOLIDATED CLASS ACTION COMPLAINT

# COUNT 15

## VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER SECURITY BREACH NOTIFICATION ACT,

### D.C. Code § 28-3851, *et. seq.*

### (On Behalf of the District of Columbia Subclass)

269.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

270.    Experian is required to accurately notify Plaintiffs and D.C. Subclass members if it becomes aware of a breach of their data security system in the most expedient time possible and without unreasonable delay under D.C. Code § 28-3852(a).

271.    Experian owns or licenses computerized data that includes personal information as defined by D.C. Code § 28-3852(a).

272.    Plaintiffs and D.C. Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information as covered under D.C. Code § 28-3851(3).

273.    Because Experian was aware of a breach of its security system that was reasonably likely to result in a misuse D.C. residents' personal information, Experian had an obligation to disclose the Data Breach in a timely and accurate fashion under D.C. Code § 28-3852(a).

274.    By failing to disclose the Data Breach in the most expedient time possible and without unreasonable delay, Experian violated D.C. Code § 28-3852(a).

275.    As a direct and proximate result of Experian's violations of D.C. Code § 28-3852, Plaintiffs and the D.C. Subclass members suffered the damages alleged herein.

276.    Plaintiffs and the D.C. Subclass members seek relief under D.C. Code § 28-3853(a), including, but not limited to, actual damages and broad equitable relief.

CONSOLIDATED CLASS ACTION COMPLAINT

**vii.      Florida**

**COUNT 16**

**VIOLATION OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

**Fla. Stat. § 501.201, *et seq.***

**(On Behalf of the Florida Subclass)**

277.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

278.   Experian, while operating in Florida, engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1). This includes but is not limited the following:

a.      Experian failed to enact adequate privacy and security measures to protect the Florida Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard the Florida Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian knowingly omitted, suppressed, and concealed the inadequacy of  its privacy and security protections for the Florida Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Florida Subclass members' PII, including but not limited to duties

imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, and Fla. Stat. § 501.171(2);

        f.    Experian failed to maintain the privacy and security of the Florida Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

        g.    Experian failed to disclose the Data Breach to the Florida Subclass members in a timely and accurate manner, in violation of Fla. Stat. § 501.171(4).

279.   As a direct and proximate result of Experian's practices, the Florida Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

280.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Florida Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

281.   Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard the Florida Subclass members' PII and that the risk of a data breach or theft was highly likely. Experian's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Florida Subclass members.

282.   Plaintiffs and the Florida Subclass seek actual damages under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat. § 501.2105(1), to be proven at trial.

283.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, and any other just and proper relief available under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

**viii.     Georgia**

## COUNT 17

## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

### Ga. Code Ann. § 10-1-390, *et seq.*

### (On Behalf of the Georgia Subclass)

284.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

285.   Experian, while operating in Georgia, engaged in unfair and deceptive consumer acts in the conduct of trade and commerce, in violation of Ga. Code Ann. § 10-1-390(a), and (b). This includes but is not limited the following:

a.     Experian failed to enact adequate privacy and security measures to protect the Georgia Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard the Georgia Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian knowingly omitted, suppressed, and concealed the inadequacy of  its privacy and security protections for the Georgia Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Georgia Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

83

CONSOLIDATED CLASS ACTION COMPLAINT

f.      Experian failed to maintain the privacy and security of the Georgia Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

g.      Experian failed to disclose the Data Breach to the Georgia Subclass members in a timely and accurate manner, in violation of § Ga. Code Ann 10-1-912.

286.   As a direct and proximate result of Experian's practices, the Georgia Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

287.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Georgia Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

288.   Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard the Georgia Subclass members' PII and that the risk of a data breach or theft was highly likely. Experian's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Georgia Subclass members.

289.   A written pre-suit demand under Ga. Code Ann. § 10-1-399(b) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015.  Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

290.   Plaintiffs and the Georgia Subclass seek damages and treble damages (for intentional violations), to be proven at trial, under Ga. Code. Ann. § 10-1-399(a) and (c).

291.   Plaintiffs also seek an order enjoining Experian's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ga. Code. Ann. § 10-1-399.

## COUNT 18

## VIOLATION OF THE GEORGIA SECURITY BREACH NOTIFICATION ACT
### Ga. Code Ann. § 10-1-912, *et seq.*
### (On Behalf of the Georgia Subclass)

292.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

293.   Under Ga. Code Ann. § 10-1-912(a), "[a]ny information broker … that maintains computerized data that includes personal information of individuals shall give notice of any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of this state whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The notice shall be made in the most expedient time possible and without unreasonable delay … ."

294.   Under Ga. Code Ann. § 10-1-912(b), "[a]ny person or business that maintains computerized data on behalf of an information broker … that includes personal information of individuals that the person or business does not own shall notify the information broker … of any breach of the security of the system within 24 hours following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

295.   The Experian Defendants are information brokers that own or license computerized data that includes personal information, as defined by Ga. Code Ann. § 10-1-911.

CONSOLIDATED CLASS ACTION COMPLAINT

296.   In the alternative, the Experian Defendants maintain computerized data on behalf of an information broker that includes personal information that the Experian Defendants do not own, as defined by Ga. Code Ann. § 10-1-911.

297.   Plaintiffs and the Georgia Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information covered under Ga. Code Ann. § 10-1-911(6).

298.   Because Experian was aware of a breach of its security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class members' PII), Experian had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Ga. Code Ann. § 10-1-912(a).

299.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Ga. Code Ann. § 10-1-912(a).

300.   As a direct and proximate result of Experian's violations of Ga. Code Ann. § 10-1-912(a), Plaintiffs and Georgia Subclass members suffered the damages alleged herein.

301.   Plaintiffs and the Georgia Subclass members seek relief under Ga. Code Ann. § 10-1-912 including, but not limited to, actual damages and injunctive relief.

**ix.      Hawaii**

**COUNT 19**

**VIOLATION OF THE HAWAII UNFAIR PRACTICES AND UNFAIR COMPETITION STATUTE**

**Haw. Rev. Stat. § 480-1, *et seq.***

**(On Behalf of the Hawaii Subclass)**

302.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

303.   The Hawaii Subclass members are "consumers" under Haw. Rev. Stat. § 480-1.

304.   Experian, while operating in Hawaii, engaged in unfair and deceptive acts or practices, in violation of Haw. Rev. Stat. § 480- 2(a). This includes but is not limited the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Hawaii Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that they would maintain adequate data privacy and security practices and procedures to safeguard the Hawaii Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.   Experian knowingly omitted, suppressed, and concealed the inadequacy of its privacy and security protections for Hawaii Subclass members' PII;

e.   Experian knowingly and fraudulently misrepresented that they would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Hawaii Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, and Hawaii's Privacy of Consumer Financial Information statute, Haw. Rev. Stat. § 431:3A-101, *et seq.*;

f.   Experian failed to maintain the privacy and security of the Hawaii Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, which was a direct and proximate cause of the Data Breach; and

g.   Experian failed to disclose the Data Breach to the Hawaii Subclass members in a timely and accurate manner, in violation of Haw. Rev. Stat. § 487N-2(a).

CONSOLIDATED CLASS ACTION COMPLAINT

305. As a direct and proximate result of Experian's practices, the Hawaii Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

306. The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Hawaii Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

307. Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard the Hawaii Subclass members' PII and that the risk of a data breach or theft was highly likely. Experian's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Hawaii Subclass members.

308. Plaintiffs and the Hawaii Subclass members seek relief under Haw. Rev. Stat. § 480-13, including, but not limited to, damages (to be proven at trial), injunctive relief, attorneys' fees and costs, and treble damages.

### COUNT 20

### VIOLATION OF THE HAWAII SECURITY BREACH NOTIFICATION ACT

### Haw. Rev. Stat. § 487N-1, *et seq.*

### (On Behalf of the Hawaii Subclass)

309. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

310. Under Haw. Rev. Stat. § 487N-2(a), "[a]ny business that owns or licenses personal information of residents of Hawaii, [or] any business that conducts business in Hawaii that owns or licenses personal information in any form (whether computerized, paper, or otherwise), … shall provide notice to the affected person that there has been a

CONSOLIDATED CLASS ACTION COMPLAINT

security breach following discovery or notification of the breach.  The disclosure notification shall be made without unreasonable delay . . . ."

311.   Under Haw. Rev. Stat. § 487N-2(b), "[a]ny business located in Hawaii or any business that conducts business in Hawaii that maintains or possesses records or data containing personal information of residents of Hawaii that the business does not own or license … shall notify the owner or licensee of the information of any security breach immediately following discovery of the breach . . . ."

312.   The Experian Defendants are businesses that conduct business in Hawaii and own or license computerized data of Hawaii residents that includes personal information, as defined by Haw. Rev. Stat. § 487N-2(a).

313.   In the alternative, the Experian Defendants are business that conduct business in Hawaii and maintain or possess records or data containing personal information of residents of Hawaii that the Experian Defendants do not own, as defined by Haw. Rev. Stat. § 487N-2 (b).

314.   Plaintiffs and the Hawaii Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information covered under Haw. Rev. Stat. § 487N-1.

315.   Because Experian was aware of a breach of its security system, Experian had an obligation to disclose the Data Breach in a timely and accurate fashion under Haw. Rev. Stat. § 487N-2.

316.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Haw. Rev. Stat. § 487N-2.

317.   As a direct and proximate result Experian's violations of Haw. Rev. Stat. § 487N-2, Plaintiffs and the Hawaii Subclass members suffered the damages alleged herein.

318.   Plaintiffs and the Hawaii Subclass members seek relief under Haw. Rev. Stat. § 487N-3(b), including, but not limited to, actual damages.

x.    **Illinois**

**COUNT 21**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**

**815 Ill. Comp. Stat. 505/1, *et seq*.**

**(On Behalf of the Illinois Subclass)**

319.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

320.    Experian, while operating in Illinois, employed unfair and deceptive acts and practices, including deception and misrepresentation, in the conduct of trade or commerce, in violation of 815 Ill. Comp. Stat. 505/2.  This includes but is not limited to the following:

a.    Experian failed to enact adequate privacy and security measures to protect the Illinois Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.    Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard Illinois Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.    Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for Illinois Subclass members' PII;

e.    Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Illinois Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq*., Illinois laws regulating the use and disclosure of Social Security Numbers (815 Ill. Comp. Stat.

CONSOLIDATED CLASS ACTION COMPLAINT

505/2RR), and the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/2(a));

f.    Experian failed to maintain the privacy and security of Illinois Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.    Experian failed to disclose the Data Breach to Illinois Subclass members in a timely and accurate manner, in violation of the duties imposed by 815 Ill. Comp. Stat. § 530/10(a).

321.   As a direct and proximate result of Experian's practices, the Illinois Subclass members suffered injuries to legally protected interests, as described above, including their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

322.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that the Illinois Subclass members could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

323.   Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Illinois Subclass members' PII and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-described unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Illinois Subclass.

324.   Plaintiffs and the Illinois Subclass members seek relief under 815 Ill. Comp. Stat. 505/10a, including but not limited to damages, restitution  and punitive damages (to be proven at trial), injunctive relief, and/or attorneys' fees and costs.

# COUNT 22

## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### 815 Ill. Comp. Stat. § 510/2, *et seq.*

### (On Behalf of the Illinois Subclass)

325.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

326.   Experian, while operating in Illinois, engaged in deceptive trade practices in the course of its business and vocation, in violation of 815 Ill. Comp. Stat. § 510/2(a), including representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised. This includes but is not limited to the following:

a.     Experian failed to enact adequate privacy and security measures to protect the Illinois Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard Illinois Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of  its privacy and security protections for Illinois Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Illinois Subclass members' PII, including but not limited to duties

CONSOLIDATED CLASS ACTION COMPLAINT

imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat. 505/2RR, and the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/1 *et seq.*;

f. Experian failed to maintain the privacy and security of Illinois Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g. Experian failed to disclose the Data Breach to Illinois Subclass members in a timely and accurate manner, in violation of the duties imposed by 815 Ill. Comp. Stat. § 530/10(a).

327. Experian knew or should have known that its computer systems and data security practices were inadequate and engaged in negligent, knowing, and/or willful acts of deception.

328. Illinois Subclass members were likely to be damaged by the Defendants' deceptive trade practices, which Experian knew or should have known.

329. Plaintiffs and the Illinois Subclass members seek relief under 815 Ill. Comp. Stat. 510, including, but not limited to, injunctive relief and attorney's fees.

**xi. Indiana**

**COUNT 23**

**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**

**Ind. Code § 24-5-0.5-3, *et seq.***

**(On Behalf of the Indiana Subclass)**

330. Plaintiffs incorporate by reference all paragraphs above as if fully set forth here.

331. Experian, while operating in Indiana, engaged in unfair, abusive, or deceptive acts, omissions, or practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3. This includes but is not limited to the following:

CONSOLIDATED CLASS ACTION COMPLAINT

a.     Experian failed to enact adequate privacy and security measures to protect the Indiana Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Indiana Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Indiana Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Indiana Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.     Experian failed to maintain the privacy and security of the Indiana Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach; and

g.     Experian failed to disclose the Data Breach to the Indiana Subclass members in a timely and accurate manner, in violation of the duties imposed by Ind. Code § 24-4.9-3.3.

332.   As a direct and proximate result of Experian's practices, the Indiana Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

CONSOLIDATED CLASS ACTION COMPLAINT

333.    The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Indiana Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

334.    Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Indiana Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Indiana Subclass.

335.    A written pre-suit demand under Ind. Code § 24-5-0.5-5(a) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015. Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

336.    Plaintiffs and Indiana Subclass members seek relief under Ind. Code §24-5-0.5-4, including but not limited to, treble damages or $1,000 per violation, whichever is greater.  Plaintiffs and Indiana Subclass members also seek injunctive relief and attorneys' fees and costs.

/ / /

/ / /

/ / /

CONSOLIDATED CLASS ACTION COMPLAINT

**xii.    Kentucky**

## COUNT 24

## VIOLATION OF THE KENTUCKY COMPUTER SECURITY BREACH NOTIFICATION ACT

### Ky. Rev. Stat. Ann. § 365.732, *et seq.*

### (On Behalf of the Kentucky Subclass)

337.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

338.    Experian is required to accurately notify Plaintiffs and Kentucky Subclass members if Experian becomes aware of a breach of its data security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Class members' PII) in the most expedient time possible and without unreasonable delay under Ky. Rev. Stat. Ann. § 365.732(2).

339.    Experian is a business that holds computerized data that includes personal information as defined by Ky. Rev. Stat. Ann. § 365.732(2).

340.    Plaintiffs' and Kentucky Subclass members' PII (e.g., Social Security numbers) includes personal information as covered under Ky. Rev. Stat. Ann. § 365.732(2).

341.    Because Experian was aware of a breach of its security system (was reasonably likely to have caused unauthorized persons to acquire Plaintiffs and Kentucky Subclass members' PII), Experian had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Ky. Rev. Stat. Ann. § 365.732(2).

342.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, Experian violated Ky. Rev. Stat. Ann. § 365.732(2).

343.    As a direct and proximate result of Experian's violations of Ky. Rev. Stat. Ann. § 365.732(2), Plaintiffs and Kentucky Subclass members suffered damages, as described above.

344.   Plaintiffs and Kentucky Subclass members seek relief under Ky. Rev. Stat. Ann. § 446.070, including, but not limited to actual damages.

**xiii.   Massachusetts**

### COUNT 25

### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*

### (On Behalf of the Massachusetts Subclass)

345.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

346.   Experian operates in "trade or commerce," as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.

347.   Experian , while operating in Massachusetts, engaged in deceptive and unfair acts and practices in the conduct of trade or commerce in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a). This includes but is not limited to the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Massachusetts Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Massachusetts Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.   Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for Massachusetts Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Massachusetts Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, the Massachusetts Right of Privacy statute, Mass. Gen. Laws Ann. ch. 214, § 1B, and the Massachusetts data breach statute, Mass. Gen. Laws Ann. ch. 93H §§ 2(a), 3(a);

f.     Experian failed to maintain the privacy and security of the Massachusetts Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.     Experian failed to disclose the Data Breach to the Massachusetts Subclass members in a timely and accurate manner, in violation of the duties imposed by Mass. Gen. Laws Ann. ch. 93H, § 3(a).

348.   As a direct and proximate result of these practices, the Massachusetts Subclass members suffered injuries to legally protected interests, as described above, including but not limited to their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

349.   The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Massachusetts Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition. These acts were within the penumbra of common law, statutory, or other established concepts of unfairness.

350.   Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Massachusetts Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in

engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Massachusetts Subclass members.

351.   A written pre-suit demand under Mass. Gen. Laws Ann. Ch. 93A § 9(3) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015.  Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

352.   Plaintiffs, individually and on behalf of Massachusetts Subclass members, seek relief under Mass. Gen. Laws Ann. ch. 93A, § 9, including, but not limited to, actual damages, double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

**xiv.       Michigan**

## COUNT 26

## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

### Mich. Comp. Laws § 445.903, *et seq.*

### (On Behalf of the Michigan Subclass)

353.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

354.   Experian, while operating in Michigan, engaged in unfair, unconscionable, and deceptive methods, acts and practices in the conduct of trade and commerce, including representing that its services had characteristics that they did not, representing that its services were of a particular standard when they were not, and advertising its services with intent not to dispose of them as advertised, in violation of Mich. Comp. Laws § 445.903(1). This includes but is not limited to the following:

a.      Experian failed to enact adequate privacy and security measures to protect the Michigan Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Michigan Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of  its privacy and security protections for Michigan Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Michigan Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.      Experian failed to maintain the privacy and security of the Michigan Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.      Experian failed to disclose the Data Breach to the Michigan Subclass members in a timely and accurate manner, in violation of the duties imposed by Mich. Comp. Laws Ann. § 445.72(1).

355.    As a direct and proximate result of these practices, the Michigan Subclass members suffered injuries to legally protected interests, as described above, including but not limited to their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent

CONSOLIDATED CLASS ACTION COMPLAINT

activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

356. The above unfair and deceptive practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Michigan Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition. These acts were within the penumbra of common law, statutory, or other established concepts of unfairness.

357. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Michigan Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Michigan Subclass members.

358. Plaintiffs and the Michigan Subclass members seek injunctive relief to enjoin Experian from continuing its unfair and deceptive acts; monetary relief against Experian measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

## COUNT 27

## VIOLATION OF THE MICHIGAN IDENTITY THEFT PROTECTION ACT

### Mich Comp. Laws § 445.72, *et seq.*

### (On Behalf of the Michigan Subclass)

359. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

360. Under Mich. Comp. Laws Ann. § 445.72(1), "a person or agency that owns or licenses data that are included in a database that discovers a security breach … shall provide a notice of the security breach to each resident of this state" whose

101

"unencrypted and unredacted personal information was accessed and acquired by an unauthorized person," or whose "personal information was accessed and acquired in encrypted form by a person with unauthorized access to the encryption key."

361.   Under Mich. Comp. Laws Ann. § 445.72(2), "a person or agency that maintains a database that includes data that the person or agency does not own or license that discovers a breach of the security of the database shall provide a notice to the owner or licensor of the information of the security breach."

362.   Under Mich. Comp. Laws Ann. § 445.72 (4), "[a] person or agency shall provide any notice required under this section without unreasonable delay."

363.   The Experian Defendants are persons that own or license data that includes personal information as defined by Mich. Comp. Laws Ann. §§ 445.63(p), 445.72, *et seq*.

364.   In the alternative, the Experian Defendants are persons that maintain a database that includes data that they do not own or license as defined by Mich. Comp. Laws Ann. §§ 445.63(p), 445.72, *et seq*.

365.   Plaintiffs and the Michigan Subclass members' PII (including but not limited to names, addresses, and Social Security numbers) includes personal information covered under Mich. Comp. Laws Ann. § 445.63(q).

366.   Because Experian discovered and had notice of a security breach where unencrypted and unredacted personal information was accessed or acquired by unauthorized persons, it had an obligation to disclose the Data Breach in a timely and accurate fashion under Mich. Comp. Laws Ann. § 445.72(4).

367.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Mich. Comp. Laws Ann. § 445.72(4).

368.   As a direct and proximate result of Experian's violations of Mich. Comp. Laws Ann. § 445.72(1)-(4), Plaintiffs and the Michigan Subclass members suffered the damages alleged herein.

CONSOLIDATED CLASS ACTION COMPLAINT

369.    Plaintiffs and Michigan Subclass members seek relief under Mich. Comp.
Laws Ann. § 445.72(13), including, but not limited to actual damages (to be proven at
trial), and a civil fine.

**xv.        Minnesota**

**COUNT 28**

**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD
ACT**

**Minn. Stat. §§ 325F.68 & 8.31, *et. seq.***

**(On Behalf of the Minnesota Subclass)**

370.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth
herein.

371.    Experian, while operating in Minnesota, employed misrepresentation,
misleading statements, and deceptive practices, with intent that others rely thereon, in
connection with the sale of services, in violation of Minn. Stat. Ann. § 325F.69.  This
includes, but is not limited to the following:

    a.    Experian failed to enact adequate privacy and security measures to
protect the Minnesota Subclass members' PII from unauthorized disclosure, release,
data breaches, and theft, which was a direct and proximate cause of the Data Breach;

    b.    Experian failed to take proper action following known security risks
and prior cybersecurity incidents, which was a direct and proximate cause of the Data
Breach;

    c.    Experian knowingly and fraudulently misrepresented that it would
maintain adequate data privacy and security practices and procedures to safeguard the
Minnesota Subclass members' PII from unauthorized disclosure, release, data breaches,
and theft;

    d.    Experian omitted, suppressed, and concealed the material fact of the
inadequacy of  its privacy and security protections for the Minnesota Subclass
members' PII;

103

CONSOLIDATED CLASS ACTION COMPLAINT

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Minnesota Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.      Experian failed to maintain the privacy and security of the Minnesota Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.      Experian failed to disclose the Data Breach to the Minnesota Subclass members in a timely and accurate manner, in violation of the duties imposed by Minn. Stat. Ann. § 325E.61(1)(a).

372.   As a direct and proximate result of Experian's unlawful practices, the Minnesota Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

373.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Minnesota Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

374.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the Minnesota Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named u practices and deceptive acts were negligent, knowing and willful.

375.   Plaintiffs and the Minnesota Subclass members seek relief under Minn. Stat. Ann. § 8.31, including, but not limited to, damages (to be proven at trial), injunctive and/or other equitable relief, and attorneys' fees and costs.

376.   The relief sought will provide a substantial benefit to the public.  In addition to seeking the recovery of damages for out-of-pocket expenses incurred as result of the Data Breach, Plaintiffs seek injunctive and/or equitable relief that will protect Plaintiffs' and Minnesota Subclass members' personal information and identities, timely notify them of unlawful uses of their personal information, and ensure that Experian implements adequate security procedures.

## COUNT 29

## VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### Minn. Stat. § 325D.43, *et seq.*

### (On Behalf of the Minnesota Subclass)

377.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

378.   Experian, while operating in Minnesota, engaged in deceptive trade practices in the course of its business and vocation, in violation of Minn. Stat. § 325D.44, including representing that services had characteristics that they did not have, representing that services were of a particular standard or quality when they were not, and advertising services with intent not to sell them as advertised.  This  includes, but is not limited to, the following:

    a.   Experian failed to enact adequate privacy and security measures to protect the Minnesota Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

    b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.   Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the

Minnesota Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Minnesota Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Minnesota Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.      Experian failed to maintain the privacy and security of the Minnesota Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.      Experian failed to disclose the Data Breach to the Minnesota Subclass members in a timely and accurate manner, in violation of the duties imposed by Minn. Stat. Ann. § 325E.61(1)(a).

379.   As a direct and proximate result of Defendants' unlawful practices, Minnesota Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

380.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Minnesota Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

381.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Minnesota Subclass members' PII and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in

the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Minnesota Subclass members.

382. Minnesota Subclass members seek relief under Minn. Stat. § 325D.45, including, but not limited to, injunctive relief and attorneys' fees and costs, and also seek relief under Minn. Stat. Ann. § 8.31, including, but not limited to, damages, to be proven at trial.

**xvi.    Missouri**

**COUNT 30**

**VIOLATION OF THE MISSOURI MERCHANDISE PRACTICING ACT**

**Mo. Stat. § 407.010,** *et seq.*

**(On Behalf of the Missouri Subclass)**

383. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

384. Experian, while operating in Missouri, employed deception, misrepresentation, unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of services in violation of Mo. Stat. § 407.020(1). This includes, but is not limited to:

a.    Experian failed to enact adequate privacy and security measures to protect the Missouri Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.    Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Missouri Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

107

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of  its privacy and security protections for the Missouri Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Missouri Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, the Missouri Unfair Trade Practice Act, Mo. Stat. § 375.936(4) and (6)(a), and Missouri Statute § 354-525;

f.      Experian failed to maintain the privacy and security of the Missouri Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.      Experian failed to disclose the Data Breach to the Missouri Subclass members in a timely and accurate manner, in violation of the duties imposed by Mo. Rev. Stat. § 407.1500(2)(1)(a).

385.   As a direct and proximate result of Experian's practices, the Missouri Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

386.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Missouri Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

387.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Missouri Subclass members' PII and

that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

388.   Plaintiffs and the Missouri Subclass members seek relief under Mo. Ann. Stat. § 407.025, including, but not limited to, injunctive relief, actual damages, punitive damages, and attorneys' fees and costs.

**xvii.      Nevada**

**COUNT 31**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**Nev. Rev. Stat. Ann. § 598.0915, *et seq.***

**(On Behalf of the Nevada Subclass)**

389.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

390.   Experian's violations of federal law, alleged above, constitute "deceptive trade practices" as defined under Nevada law, including under Nev. Rev. Stat. § 598.0923.

391.   Furthermore, while operating in Nevada, Experian engaged in deceptive trade practices in the course of its business and occupation, including by representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised, in violation of Nev. Rev. Stat. § 598.0915. This includes but is not limited to the following:

a.      Experian failed to enact adequate privacy and security measures to protect the Nevada Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

109

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Nevada Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Nevada Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Nevada Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*; and

f.     Experian failed to maintain the privacy and security of the Nevada Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach.

392.   As a direct and proximate result of Experian's practices, the Nevada Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

393.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Nevada Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

394.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the Nevada Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

395.   Plaintiffs and the Nevada Subclass seek all available relief under Nev. Rev. Stat. Ann. § 41.600, including but not limited to injunctive relief, other equitable relief, actual damages, and attorneys' fees and costs.

**xviii.      New Jersey**

### COUNT 32

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

### N.J. Stat. Ann. § 56:8-1, *et seq.*

### (On Behalf of the New Jersey Subclass)

396.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

397.   Experian, while operating in New Jersey, engaged, in unconscionable commercial practices, deception, misrepresentation, and the knowing concealment, suppression, and omission of material facts with intent that others rely on such concealment, suppression, and omission, in connection with the sale and advertisement of services, in violation of N.J. Stat. Ann. § 56:8-2. This includes, but is not limited to the following:

a.      Experian failed to enact adequate privacy and security measures to protect the New Jersey Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the New Jersey Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the New Jersey Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the New Jersey Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.     Experian failed to maintain the privacy and security of the New Jersey Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.     Experian failed to disclose the Data Breach to the New Jersey Subclass members in a timely and accurate manner, in violation of the duties imposed by N.J. Stat. Ann. § 56:8-163(a).

398.   As a direct and proximate result of Experian's practices, the New Jersey Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

399.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the New Jersey Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

400.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the New Jersey Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging

in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

401.   Plaintiffs and the New Jersey Subclass members seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable actual damages (to be proven at trial), treble damages, and attorneys' fees and costs.

## COUNT 33

## VIOLATION OF THE NEW JERSEY CUSTOMER SECURITY BREACH DISCLOSURE ACT

### N.J. Stat. Ann. §§ 56:8-163, *et seq.*

### (On Behalf of the New Jersey Subclass)

402.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

403.   Under N.J.S.A. § 56:8-163(b), "[a]ny business … that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers … of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person."

404.   The Experian Defendants are businesses that compile or maintain computerized records that include personal information on behalf of another business under N.J.S.A. § 56:8-163(b).

405.   Plaintiffs and the New Jersey Subclass members' PII (including but not limited to names, addresses, and social security numbers) includes personal information covered under N.J.S.A. §§ 56:8-163, *et seq*.

406.   Because Experian discovered a breach of its security system in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured, Experian had an

obligation to disclose the Data Breach in a timely and accurate fashion as mandated under N.J.S.A. §§ 56:8-163, *et seq.*

407.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated N.J.S.A. § 56:8-163(b).

408.   As a direct and proximate result of Experian's violations of N.J.S.A. § 56:8-163(b), Plaintiffs and the New Jersey Subclass members suffered the damages described above.

409.   Plaintiffs and the New Jersey Subclass members seek relief under N.J.S.A. 56:8-19, including but not limited to treble damages (to be proven at trial), attorneys' fees and costs, and injunctive relief.

**xix.      New Mexico**

**COUNT 34**

**VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT**

**N.M. Stat. Ann. § 57-12-2, *et seq.***

**(On Behalf of the New Mexico Subclass)**

410.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

411.   Experian, while operating in New Mexico, engaged in deceptive trade practices in connection with the sale and advertisement of services, in violation of N.M. Stat. Ann. § 57-12-2, including by representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised.  This includes but is not limited to the following:

a.      Experian failed to enact adequate privacy and security measures to protect the New Mexico Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

CONSOLIDATED CLASS ACTION COMPLAINT

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the New Mexico Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the New Mexico Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the New Mexico Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*; and

f.      Experian failed to maintain the privacy and security of the New Mexico Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach.

412.   Experian further engaged in "unconscionable trade practices" as defined by N.M. Stat. Ann. § 57-12-2, because the PII it mishandled was gathered and used for the sale, or offering for sale, of services and/or for the extension of credit to Plaintiffs and New Mexico Subclass members, and took advantage of Plaintiffs' and New Mexico Subclass members' lack of knowledge, ability, experience, or capacity to prevent the harm caused by the Data Breach, to a grossly unfair degree.

413.   As a direct and proximate result of Experian's practices, the New Mexico Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of their legally protected interest in the

confidentiality and privacy of their PII, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

414.   The above unlawful and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the New Mexico Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

415.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the New Mexico Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair, unconscionable, and deceptive acts and practices were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of members of the New Mexico Subclass.

416.   Plaintiffs and the New Mexico Subclass members seek all available relief under N.M. Stat. Ann. § 57-12-10, including, but not limited to, injunctive relief, actual damages, and attorneys' fees and costs, as well as treble damages or $300, whichever is greater, to the Plaintiffs.

**xx.      New York**

### COUNT 35

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW

### N.Y. Gen. Bus. Law § 349

### (On Behalf of the New York Subclass)

417.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

418.   Experian, while operating in New York, engaged in deceptive acts and practices in the conduct of business, trade and commerce, and the furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a). This includes but is not limited to the following:

116

CONSOLIDATED CLASS ACTION COMPLAINT

a.      Experian failed to enact adequate privacy and security measures to protect the New York Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the New York Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of  its privacy and security protections for the New York Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the New York Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.      Experian failed to maintain the privacy and security of the New York Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.      Experian failed to disclose the Data Breach to the New York Subclass members in a timely and accurate manner, in violation of the duties imposed by N.Y. Gen Bus. Law § 899-aa(2).

419.   As a direct and proximate result of Experian's practices, the New York Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

420.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the New York Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

421.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the New York Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

422.   Plaintiffs and the New York Subclass members seek relief under N.Y. Gen. Bus. Law § 349(h), including but not limited to actual damages (to be proven at trial), treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**xxi.      North Carolina**

## COUNT 36

## VIOLATION OF THE NORTH CAROLINA UNFAIR TRADE PRACTICES ACT

### N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*

### (On Behalf of the North Carolina Subclass)

423.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

424.   Experian, while operating in North Carolina, engaged in unfair or deceptive acts and practices affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1. This includes but is not limited to the following:

a.      Experian failed to enact adequate privacy and security measures to protect North Carolina Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

118

CONSOLIDATED CLASS ACTION COMPLAINT

b.      Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the North Carolina Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.      Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for North Carolina Subclass members' PII;

e.      Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of North Carolina Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, the GLBA, 15 U.S.C. § 6801 *et seq.*, and the North Carolina Consumer and Customer Information Privacy Act, N.C. Gen. Stat. § 58-39-1, *et seq.*;

f.      Experian failed to maintain the privacy and security of North Carolina Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach; and

g.      Experian failed to disclose the Data Breach to North Carolina Subclass members in a timely and accurate manner, in violation of duties imposed by N.C. Gen. Stat. Ann. § 75-65.

425.   As a direct and proximate result of Experian's practices, North Carolina Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

---

119

CONSOLIDATED CLASS ACTION COMPLAINT

426.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to North Carolina Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

427.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard North Carolina Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing, willful, and/or wanton and reckless.

428.   Plaintiffs and the North Carolina Subclass seek all available relief under N.C. Gen. Stat. §§ 75-16 and 75-16.1 including but not limited to injunctive relief, actual damages, treble damages, and attorneys' fees and costs.

**xxii.     Ohio**

**COUNT 37**

**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**

**Ohio Rev. Code § 1345.01, *et seq*.**

**(On Behalf of the Ohio Subclass)**

429.  Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

430.  Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

431.  Experian, while operating in Ohio, engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code § 1345.01(A) and (B). This includes but is not limited to the following:

a.     Experian failed to enact adequate privacy and security measures to protect the Ohio Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

120

CONSOLIDATED CLASS ACTION COMPLAINT

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Ohio Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Ohio Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Ohio Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.     Experian failed to maintain the privacy and security of the Ohio Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.     Experian failed to disclose the Data Breach to the Ohio Subclass members in a timely and accurate manner, in violation of the duties imposed by Ohio Rev. Code § 1349.19(B).

432.   As a direct and proximate result of Experian's practices, the Ohio Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

433.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Ohio Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

434.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the Ohio Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

435.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio Subclass members seek an order enjoining Experian's unfair and/or deceptive acts or practices actual damages – trebled (to be proven at the time of trial), and attorneys' fees, costs, and any other just and proper relief, to the extent available under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*

## COUNT 38

## VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT

### Ohio Rev. Code § 4165.01, *et seq.*

### (On Behalf of the Ohio Subclass)

436.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

437.   Experian, while operating in Ohio, engaged in deceptive trade practices in the course of its business and vocation, including representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised. in violation of Ohio Rev. Code § 4165.02(A). This includes but is not limited to the following:

    a.   Experian failed to enact adequate privacy and security measures to protect the Ohio Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

    b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

1         c.     Experian knowingly and fraudulently misrepresented that it would

2   maintain adequate data privacy and security practices and procedures to safeguard the

3   Ohio Subclass members' PII from unauthorized disclosure, release, data breaches, and

4   theft;

5         d.     Experian omitted, suppressed, and concealed the material fact of the

6   inadequacy of  its privacy and security protections for the Ohio Subclass members' PII;

7         e.     Experian knowingly and fraudulently misrepresented that it would

8   comply with the requirements of relevant federal and state laws pertaining to the privacy

9   and security of the Ohio Subclass members' PII, including but not limited to duties

10  imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

11        f.     Experian failed to maintain the privacy and security of the Ohio

12  Subclass members' PII, in violation of duties imposed by applicable federal and state

13  laws, including but not limited to those mentioned in the aforementioned paragraph,

14  directly and proximately causing the Data Breach;

15        g.     Experian failed to disclose the Data Breach to the Ohio Subclass

16  members in a timely and accurate manner, in violation of the duties imposed by Ohio

17  Rev. Code § 1349.19(B).

18      438.   As a direct and proximate result of Experian's practices, the Ohio Subclass

19  members suffered injury and/or damages, including but not limited to time and expenses

20  related to monitoring their financial accounts for fraudulent activity, an increased,

21  imminent risk of fraud and identity theft, and loss of value of their PII.

22      439.   The above unfair and deceptive acts and practices and acts by Experian

23  were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial

24  injury to the Ohio Subclass members that they could not reasonably avoid; this

25  substantial injury outweighed any benefits to consumers or to competition.

26      440.   Experian knew or should have known that its computer systems and data

27  security practices were inadequate to safeguard the Ohio Subclass members' PII and

28  that risk of a data breach or theft was highly likely. Experian's actions in engaging in

the above-named unfair practices and deceptive acts were negligent, knowing and willful.

441.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio Subclass members seek an order enjoining Experian's unfair and/or deceptive acts or practices actual damages – trebled (to be proven at the time of trial), and attorneys' fees, costs, and any other just and proper relief, to the extent available under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*

**xxiii.       Oregon**

## COUNT 39

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

**Or. Rev. Stat. § 646.608, *et seq.***

**(On Behalf of the Oregon Subclass)**

442.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

443.   While operating in Oregon, Experian engaged in deceptive trade practices in the course of its business and occupation, including by representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, advertising its services with intent not to sell them as advertised, and engaging in other unfair and deceptive conduct in trade or commerce, in violation of Or. Rev. Stat. § 646.608(1)(e), (g), and (u). This includes but is not limited to the following:

a.     Experian failed to enact adequate privacy and security measures to protect the Oregon Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

124

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Oregon Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Oregon Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Oregon Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.     Experian failed to maintain the privacy and security of the Oregon Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach; and

g.     Experian violated the Oregon Consumer Identity Theft Protection Act, Or. Rev. Stat. Ann. § 646A.600, *et seq.*, as alleged in more detail below.

444.   As a direct and proximate result of Experian's practices, the Oregon Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII**.**

445.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Oregon Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

446.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the Oregon Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in

1   the above-named unfair practices and deceptive acts were negligent, knowing and
2   willful.

3        447.   Plaintiffs and the Oregon Subclass seek all remedies available under Or.
4   Rev. Stat. § 646.638, including equitable relief, actual damages, statutory damages of
5   $200 per violation, and/or punitive damages.

6        448.   Plaintiffs and the Oregon Subclass also seek reasonable attorneys' fees and
7   costs under Or. Rev. Stat. § 646.638(3).

8   **COUNT 40**

9   **VIOLATION OF THE OREGON CONSUMER IDENTITY THEFT**
10   **PROTECTION ACT**

11   **Or. Rev. Stat. § 646A.600, *et seq.***

12   **(On Behalf of the Oregon Subclass)**

13        449.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth
14   herein.

15        450.   Under Or. Rev. Stat. Ann. § 646A.622(1), a business "that maintains
16   records which contain personal information" of a Oregon resident "shall implement and
17   maintain reasonable security measures to protect those records from unauthorized
18   access, acquisition, destruction, use, modification or disclosure."

19        451.   Experian is a business that maintains records which contain personal
20   information, within the meaning of Or. Rev. Stat. Ann. § 646A.622(1), about Plaintiffs
21   and Oregon Subclass members.

22        452.   Experian violated Or. Rev. Stat. Ann. § 646A.622(1) by failing to
23   implement reasonable measures to protect Plaintiffs' and Oregon Subclass members'
24   PII.

25        453.   Experian is required to accurately notify Plaintiffs and Oregon Subclass
26   members if Experian becomes aware of a breach of their data security system in the
27   most expeditious time possible and without unreasonable delay under Or. Rev. Stat.
28   Ann. § 646A.604(1).

454.   Experian is a business that owns, maintains, or otherwise possesses data that includes consumers personal information as defined by Or. Rev. Stat. Ann. § 646A.604(1).

455.   Plaintiffs' and Oregon Subclass members' PII (e.g., Social Security numbers) includes personal information as covered under Or. Rev. Stat. Ann. § 646A.604(1).

456.   Because Experian discovered a breach of their security system, Experian had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Or. Rev. Stat. Ann. § 646A.604(1).

457.   As a direct and proximate result of Experian's violations of Or. Rev. Stat. Ann. §§ 646A.604(1) and 646A.622(1), Plaintiffs and Oregon Subclass members suffered damages, as described above.

458.   Experian's failure to implement reasonable security measures, to promptly notify Plaintiff and other Oregon Subclass members, and otherwise to comply with Or. Rev. Stat. § 646A.600 *et seq.* constitutes unlawful, unfair, and deceptive practices under § 646.607(9).

459.   Plaintiffs and Oregon Subclass members seek compensation for affected consumers under Or. Rev. Stat. § 646A.624(3), because enforcement of the rights of the consumers through this private civil action is feasible, and not so burdensome or expensive as to be impractical.

460.   Plaintiffs and Oregon Subclass members seek relief under Or. Rev. Stat. § 646A.624(3), including, but not limited to, actual damages and injunctive relief.

/ / /

/ / /

/ / /

CONSOLIDATED CLASS ACTION COMPLAINT

**xxiv.        Pennsylvania**

**COUNT 41**

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**73 Pa. Stat. §§ 201-2 & 201-3, *et seq.***

**(On Behalf of the Pennsylvania Subclass)**

461.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

462.    The Pennsylvania Class members provided their PII to Experian pursuant to transactions for cellular services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2, for personal, family, and/or household purposes.

463.    This Count is brought for Experian's deceptive conduct, including unlawful and unfair acts and practices, which created a likelihood of confusion or of misunderstanding for Pennsylvania Class members.

464.    Experian engaged in unlawful, unfair, and deceptive acts and practices with respect to the sale and advertisement of the services purchased by the Pennsylvania Class in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including but not limited to the following:

        a.    Experian failed to enact adequate privacy and security measures to protect the Pennsylvania Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

        b.    Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

        c.    Experian negligently represented that it would maintain adequate data privacy and security practices and procedures to safeguard the Pennsylvania Subclass members' PII from unauthorized disclosure, release, data breaches, and theft was deceptive given the inadequacy of its privacy and security protections;

128

CONSOLIDATED CLASS ACTION COMPLAINT

d.    Experian's negligence in failing to disclose the material fact of the inadequacy of its privacy and security protections for the Pennsylvania Subclass members' PII was deceptive;

e.    Experian negligently represented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Pennsylvania Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.* was deceptive given the inadequacy of its privacy and security protections;

f.    Experian failed to maintain the privacy and security of the Pennsylvania Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

465.   The above unlawful, unfair, and deceptive acts and practices by Experian were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

466.   Experian knew or should have known that their computer systems and data security practices were inadequate to safeguard Pennsylvania Subclass members' PII and that risk of a data breach or theft was highly likely.  Experian's actions in engaging in the above-named deceptive acts and practices were negligent, knowing and reckless with respect to the rights of members of the Pennsylvania Class.

467.   Pennsylvania Subclass members seek relief under 73 Pa. Cons. Stat. § 201-9.2, including, but not limited to, injunctive relief, actual damages or $100 per Pennsylvania Subclass member, whichever is greater, treble damages, and attorneys' fees and costs.

/ / /

xxv.       **South Carolina**

## COUNT 42

**VIOLATION OF THE SOUTH CAROLINA DATA BREACH SECURITY ACT**

**S.C. Code Ann. § 39-1-90,** *et seq.*

**(On Behalf of the South Carolina Subclass)**

468.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

469.   Experian is required to accurately notify Plaintiffs and South Carolina Subclass members following discovery or notification of a breach of its data security system (if personal information that was not rendered unusable through encryption, redaction, or other methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm) in the most expedient time possible and without unreasonable delay under S.C. Code Ann. § 39-1-90(A).

470.   Experian is a business that owns or licenses computerized data or other data that includes personal identifying information as defined by S.C. Code Ann. § 39-1-90(A).

471.   Plaintiffs' and South Carolina Subclass members' PII (e.g., Social Security numbers) includes personal identifying information as covered under S.C. Code Ann. § 39-1-90(D)(3).

472.   Because Experian discovered a breach of its data security system (in which personal information that was not rendered unusable through encryption, redaction, or other methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm), Experian had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by S.C. Code Ann. § 39-1-90(A).

473.   As a direct and proximate result of Experian's violations of S.C. Code Ann. § 39-1-90(A), Plaintiffs and South Carolina Subclass members suffered damages, as described above.

130

474.   Plaintiffs and South Carolina Subclass members seek relief under S.C. Code Ann. § 39-1-90(G), including, but not limited to, actual damages and injunctive relief.

**xxvi.      Tennessee**

**COUNT 43**

**VIOLATION OF THE TENNESSEE PERSONAL CONSUMER INFORMATION RELEASE ACT**

**Tenn. Code Ann. § 47-18-2107, *et seq.***

**(On Behalf of the Tennessee Subclass)**

475.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

476.   Experian is required to accurately notify Plaintiffs and Tennessee Subclass members following discovery or notification of a breach of its data security system (in which unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person) in the most expedient time possible and without unreasonable delay under Tenn. Code Ann. § 47-18-2107(b).

477.   Experian is a business that owns or licenses computerized data that includes personal information as defined by Tenn. Code Ann. § 47-18-2107(a)(2).

478.   Plaintiffs' and Tennessee Subclass members' PII (e.g., Social Security numbers) includes personal information as covered under Tenn. Code Ann. § 47-18-2107(a)(3)(A).

479.   Because Experian discovered a breach of its security system (in which unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person), Experian had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

480.   As a direct and proximate result of Experian's violations of Tenn. Code Ann. § 47-18-2107(b), Plaintiffs and Tennessee Subclass members suffered damages, as described above.

131

CONSOLIDATED CLASS ACTION COMPLAINT

481.    Plaintiffs and Tennessee Subclass members seek relief under Tenn. Code Ann. §§ 47-18-2107(h), 47-18-2104(d), 47-18-2104(f), including, but not limited to, actual damages, injunctive relief and treble damages.

**xxvii.      Texas**

**COUNT 44**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**

**Tex. Bus. & Com. Code § 17.46, *et seq.***

**(On Behalf of the Tennessee Subclass)**

482.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

483.    By the actions and omission detailed herein, Experian has violated the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq*. (the "TDTPA").

484.    Plaintiffs and members of the Texas Subclass are individuals and, thus, "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4).

485.    Experian performed "services," as defined by Tex. Bus. & Com. Code § 17.45(2), with respect to its compilation, maintenance, use, and furnishing of Plaintiffs' and Texas Subclass members' PII that was compromised in the Data Breach.

486.    Experian engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by providing its services to T-Mobile as alleged above, directly or indirectly affecting Texas citizens through that trade and commerce.

487.    Furthermore, while operating in Texas, Experian engaged in deceptive trade practices in the course of its business and occupation, including by representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised, in violation of Tex. Bus. & Com. Code §17.46(a) and (b). This includes but is not limited to the following:

132

a.     Experian failed to enact adequate privacy and security measures to protect the Texas Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.     Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.     Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Texas Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.     Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Texas Subclass members' PII;

e.     Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Texas Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*; and

f.     Experian failed to maintain the privacy and security of Texas Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach.

488.   As a direct and proximate result of Experian's practices, Texas Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

489.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Texas Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

490.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Texas Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

491.   Experian engaged in affirmative false and misleading statements, omissions of material fact and deceptive acts, as described in detail herein, upon which Plaintiffs and the Texas Subclass relied upon to their detriment.

492.   The acts of Experian were a producing cause of the damages suffered by Plaintiffs and the Texas Subclass.

493.   Specifically, by the facts set forth previously, Experian failed to disclose the inadequate security of its computer systems used to store Plaintiffs' and Texas Subclass members' PII which it knew or should have known were inadequate at the time of the transaction, and Plaintiffs and Texas Subclass members would not have provided their PII to Experian had they known of this information in violation of Tex. Bus. & Com. Code §17.46(b)(24).

494.   Also specifically, by the facts set forth previously, Experian has made identical, written, false affirmative representations of fact to Plaintiffs and the Texas Subclass as to the adequacy of their privacy protections in violation of Tex. Bus. & Com. Code §17.46(a), (b)(5) and (b)(7), when in fact Experian's systems were inadequate.

495.   A written pre-suit demand under Tex. Bus. & Com. Code § 17.505(a) is unnecessary and unwarranted because Experian has long had notice of Plaintiffs' allegations, claims and demands, including from the filing of numerous underlying actions against it arising from the Data Breach, the first of which were filed on or about October 2, 2015.  Further, Experian is the party with the most knowledge of the underlying facts giving rise to Plaintiffs' allegations, so that any pre-suit notice would not put Experian in a better position to evaluate those claims.

496.    Plaintiffs, individually and on behalf of Texas Subclass members, seek relief under the TDTPA including, but not limited to:

a.      the amount of economic damages found by the trier of fact as to each Subclass member;

b.      because Experian committed these violations knowingly and/or intentionally as alleged above, Plaintiffs seek, individually and on behalf of the Texas Subclass, three times the amount of their economic damages under Tex. Bus. & Com. Code §17.50(b)(1);

c.      an order enjoining such acts or failure to act, any orders necessary to restore to any party to the suit any money or property acquired in violation of this subchapter;

d.      an award of statutory attorneys' fees and costs; and

e.      any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in Texas if the judgment has not been satisfied within three months of the date of the final judgment.

**xxviii.      Virginia**

## COUNT 45

### VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT

### Va. Code Ann. § 59.1-196, *et seq.*

### (On Behalf of the Virginia Subclass)

497.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

498.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  Va. Code Ann. § 59.1-200(14).

135

499.   Experian compiled, maintained, used, and furnished Plaintiffs' and Virginia Subclass members' PII in connection with consumer transactions, as defined under Va. Code Ann. § 59.1-198, including for example T-Mobile credit assessments.

500.   While operating in Virginia, Experian engaged in deceptive trade practices in connection with consumer transactions, including by representing that its services had characteristics that they did not have, representing that its services were of a particular standard or quality when they were not, and advertising its services with intent not to sell them as advertised, in violation of Va. Code Ann. § 59.1-200. This includes but is not limited to the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Virginia Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Virginia Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.   Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Virginia Subclass members' PII;

e.   Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Virginia Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*; and

f.   Experian failed to maintain the privacy and security of Virginia Subclass members' PII, in violation of duties imposed by applicable federal and state

laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach.

501.   As a direct and proximate result of Experian's practices, Virginia Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

502.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Virginia Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

503.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard Virginia Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful.

504.   Plaintiffs and Virginia Subclass members seek all available relief under Va. Code Ann. § 59.1-204, including, but not limited to, actual damages; statutory damages and/or penalties in the amount of $1,000 per violation or, in the alternative, $500 per violation; restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

**COUNT 46**

**VIOLATION OF THE VIRGINIA PERSONAL INFORMATION BREACH NOTIFICATION ACT**

**Va. Code Ann. § 18.2-186.6, *et seq.***

**(On Behalf of the Virginia Subclass)**

505.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

506.   Experian is required to accurately notify Plaintiffs and Virginia Subclass members following discovery or notification of a breach of its data security system (if unencrypted or unredacted personal information was or is reasonably believed to have

137

CONSOLIDATED CLASS ACTION COMPLAINT

been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identify theft or another fraud) without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

507.   Experian is an entity that owns or licenses computerized data that includes personal information as defined by Va. Code Ann. § 18.2-186.6(B).

508.   Plaintiffs' and Virginia Subclass members' PII (e.g., Social Security numbers) includes personal information as covered under Va. Code Ann. § 18.2-186.6(A).

509.   Because Experian discovered a breach of their security system (in which unencrypted or unredacted personal information was or is reasonably believed to have been accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identify theft or another fraud), Experian had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

510.   As a direct and proximate result of Experian's violations of Va. Code Ann. § 18.2-186.6(B), Plaintiffs and Virginia Subclass members suffered damages, as described above.

511.   Plaintiffs and Virginia Subclass members seek relief under Va. Code Ann. § 18.2-186.6(I), including, but not limited to, actual damages.

**xxix.**      **Washington**

**COUNT 47**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**

**Wash. Rev. Code Ann. § 19.86.020,** *et seq.*

**(On Behalf of the Washington Subclass)**

512.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

513.   Experian, while operating in Washington, engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Wash. Rev. Code §19.86.020. This includes but is not limited to the following:

a.   Experian failed to enact adequate privacy and security measures to protect the Washington Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.   Experian failed to take proper action following known security risks and prior cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Experian knowingly and fraudulently misrepresented that it would maintain adequate data privacy and security practices and procedures to safeguard the Washington Subclass members' PII from unauthorized disclosure, release, data breaches, and theft;

d.   Experian omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for the Washington Subclass members' PII;

e.   Experian knowingly and fraudulently misrepresented that it would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the Washington Subclass members' PII, including but not limited to duties imposed by the FCRA, 15. U.S.C.§ 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*;

f.   Experian failed to maintain the privacy and security of the Washington Subclass members' PII, in violation of duties imposed by applicable federal and state laws, including but not limited to those mentioned in the aforementioned paragraph, directly and proximately causing the Data Breach;

g.   Experian failed to disclose the Data Breach to the Washington Subclass members in a timely and accurate manner, in violation of the duties imposed by Wash. Rev. Code Ann. § 19.255.010(1).

514.   As a direct and proximate result of Experian's practices, the Washington Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII.

515.   The above unfair and deceptive acts and practices and acts by Experian were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Washington Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

516.   Experian knew or should have known that its computer systems and data security practices were inadequate to safeguard the Washington Subclass members' PII and that risk of a data breach or theft was highly likely. Experian's actions in engaging in the above-described unfair practices and deceptive acts were negligent, knowing and willful.

517.   Plaintiffs and the Washington Subclass members seek relief Wash. Rev. Code § 19.86.090, including but not limited to actual damages (to be proven at trial), treble damages, injunctive relief, and attorneys' fees and costs.

### COUNT 48

### VIOLATION OF THE WASHINGTON DATA BREACH NOTICE ACT

### Wash. Rev. Code Ann. § 19.255.010, *et seq.*

### (On Behalf of the Washington Subclass)

518.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

519.   Under Wash. Rev. Code Ann. § 19.255.010(1), "[a]ny person or business that conducts business in this state and that owns or licenses data that includes personal information shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of this state whose personal information was, or is reasonably believed to have been, acquired by an unauthorized person … ."

520.   Under Wash. Rev. Code Ann. § 19.255.010(2), "[a]ny person or business that maintains data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

521.   Under Wash. Rev. Code Ann. § 19.255.010 (16), "[n]otification to affected consumers … under this section must be made in the most expedient time possible and without unreasonable delay, no more than forty-five calendar days after the breach was discovered."

522.   The Experian Defendants are businesses that conduct business in Washington that own or license computerized data that includes personal information, as defined by Wash. Rev. Code Ann. § 19.255.010.

523.   Plaintiffs and the Washington Subclass members' PII (including but not limited to names, addresses, and social security numbers) includes personal information covered under Wash. Rev. Code Ann. § 19.255.010(5).

524.   Because Experian discovered a breach of its security system in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured, Experian had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated under Wash. Rev. Code Ann. § 19.255.010(16).

525.   By failing to disclose the Data Breach in a timely and accurate manner, Experian violated Wash. Rev. Code Ann. § 19.255.010(16).

526.   As a direct and proximate result of Experian's violations of Wash. Rev. Code Ann. § 19.255.010(16), Plaintiffs and the Washington Subclass members suffered the damages described above.

527.   Plaintiffs and the Washington Subclass members seek relief under Wash. Rev. Code Ann. §§ 19.255.010(13)(a), (b) including but not limited to actual damages (to be proven at trial) and injunctive relief.

## RELIEF REQUESTED

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Experian as follows:

A.   An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Nationwide Class and Statewide Subclasses as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiffs are proper representatives of the Nationwide Class and Statewide Subclasses requested herein;

B.   Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain PII to comply with the FCRA and GLBA, the applicable state laws alleged herein (including but not limited to the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C.   An order requiring Defendants to pay all costs associated with Class notice and administration of Class-wide relief;

D.   An award to Plaintiffs and all Class (and Subclass) Members of compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E.   An award to Plaintiffs and all Class (and Subclass) Members of additional credit monitoring and identity theft protection services beyond the two-year package Experian is currently offering;

F.   An award of attorneys' fees, costs, and expenses, as provided by law or equity;

CONSOLIDATED CLASS ACTION COMPLAINT

G.     An order Requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

F.     Such other or further relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues in this action so triable of right.

Dated: April 15, 2016                        Respectfully submitted,

**AHDOOT & WOLFSON, PC**

 /s/ Tina Wolfson
Tina Wolfson
*twolfson@ahdootwolfson.com*
1016 Palm Avenue
West Hollywood, CA 90069
Telephone: 310-474-911
Fax: 310-474-8585

Daniel S. Robinson
*drobinson@rcrsd.com*
**ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone:  (949) 720-1288

*Plaintiffs' Interim Co-Lead Counsel*

**BERGER & MONTAGUE, P.C.**
Sherrie Savett
Shanon Carson
Jon Lambiras
1622 Locust St.
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
ssavett@bm.net
scarson@bm.net
jlambiras@bm.net

Daniel C. Girard (State Bar No. 114826)

143

CONSOLIDATED CLASS ACTION COMPLAINT

Scott M. Grzenczyk (State Bar No. 279309)
Linh G. Vuong (State Bar No. 286837)
**Girard Gibbs LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Tel:    (415) 981-4800
Fax:    (415) 981-4846
dcg@girardgibbs.com
smg@girardgibbs.com
lgv@girardgibbs.com

Cari Campen Laufenberg, *admitted pro hac vice*
claufenberg@kellerrohrback.com
Gretchen Freeman Cappio, *pro hac vice forthcoming*
gcappio@kellerrohrback.com
Amy N. L. Hanson, *admitted pro hac vice*
ahanson@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384

Matthew J. Preusch, CA Bar No. 298144
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, California  93101
Telephone: (805) 456-1496
Fax: (805) 456-1497

Christopher P. Ridout, (CA Bar No. 143931)
**ZIMMERMAN REED, LLP**
2381 Rosecrans Avenue, Suite 328
Manhattan Beach, CA  90245
Telephone: (877) 500-8780
Facsimile: (888) 490-7750
christopher.ridout@zimmreed.com

David M. Cialkowski, (MN Bar No. 306526)
Brian C. Gudmundson (MN Bar No. 336695)
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400

144

Facsimile: (612) 341-0844
david.cialkowski@zimmreed.com
brian.gudmundson@zimmreed.com

Michael A. Galpern (*pro hac vice*)
Andrew P. Bell (*pro hac vice*)
James A. Barry (*pro hac vice*)
**LOCKS LAW FIRM, LLC**
801 N. Kings Highway
Cherry Hill, NJ 08034
Tel: (856) 663-8200
Fax: (856) 661-8400

Joseph N. Kravec, Jr.
JKravec@fdpklaw.com
**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
1-412-281-8400
1-412-281-1007 (FAX)

*Plaintiffs' Steering Committee*

CONSOLIDATED CLASS ACTION COMPLAINT