1  Richard J. Grabowski (State Bar No. 125666)
2  rgrabowski@JonesDay.com
   John A. Vogt (State Bar No. 198677)
3  javogt@jonesday.com
4  Edward S. Chang (State Bar No. 241682)
   echang@jonesday.com
5  JONES DAY
6  3161 Michelson Drive
   Suite 800
7  Irvine, CA 92612.4408
   Telephone:  +1.949.851.3939
8  Facsimile:   +1.949.553.7539
9
   Attorneys for Defendants
10 EXPERIAN INFORMATION
   SOLUTIONS, INC. & EXPERIAN
11 HOLDINGS, INC.
12
13              UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15
   **IN RE EXPERIAN DATA BREACH**     Case No. 8:15-cv-01592 AG (DFMx)
16 **LITIGATION**
                                      Hon. Andrew J. Guilford
17
                                      **EXPERIAN HOLDINGS, INC.**
18                                    **AND EXPERIAN**
                                      **INFORMATION SOLUTIONS,**
19                                    **INC.'S MEMORANDUM OF**
                                      **POINTS AND AUTHORITIES IN**
20                                    **OPPOSITION TO PLAINTIFFS'**
                                      **MOTION TO COMPEL**
21
22
23
24
25
26
27
28
                                      EXPERIAN OPP. TO MOTION TO COMPEL
                                      CASE NO.  8:15-CV-01592 AG (DFMX)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................2

I.  The Data Breach and Jones Day's Retention of Mandiant...................2

II.  The Timing and Function of Mandiant's Expert Report .....................4

III.  Experian Notifies T-Mobile and The Public of the Breach.................5

IV.  Plaintiffs' Demand for Production of the Mandiant Expert Report ......................................................................................................6

LEGAL ARGUMENT........................................................................................7

I.  The Expert Report is Protected by the Work-Product Doctrine ...........8

A.  Experian Reasonably Anticipated Litigation at the Time Jones Day Engaged Mandiant .......................................................9

B  The Report was Created "Because of" Litigation. ...................10

C.  Plaintiffs Have No Substantial Need for the Report ...............14

D.  There Was No Waiver of Work-Product Protections...............16

II.  Mandiant's Report, and Lawyer-Client Communications Involving The Report, Are Protected by the Attorney-Client Privilege .........................................................................................17

A.  Mandiant's Investigation and Expert Report Was For One Purpose:  Providing Legal Advice............................................17

B.  Experian Did Not Waive The Attorney-Client Privilege .........21

C.  Experian's Privilege Log Is Sufficiently Detailed to Support Its Privilege Claims....................................................23

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*,
  881 F.2d 1486 (9th Cir. 1989) ........................................................... 14

*Applied Med. Res. Corp. v. Ethicon, Inc.*,
  No. SACV 03-1329-JVS, 2005 WL 6567355 (C.D. Cal. May 23,
  2005) ...................................................................................................... 19

*Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.*,
  No. 2:13-CV-1378 WBS AC, 2015 WL 1469286 (E.D. Cal. Mar.
  30, 2015) ................................................................................................ 10

*Cottage Health Sys., et al. v. Admiral Ins. Co., et al.*,
  No. CV 15-2198-PSG (AGR), 2015 WL 12806480 (C.D. Cal. Dec.
  22, 2015) ................................................................................................ 16

*Dole v. Milonas*,
  889 F.2d 885 (9th Cir. 1989) ....................................................... 23, 24

*Ekeh v. Hartford Fire Ins. Co.*,
  39 F. Supp. 2d 1216 (N.D. Cal. 1999) ................................................ 19

*Fletcher v. Union Pac. R.R. Co.*,
  194 F.R.D. 666 (S.D. Cal. 2000) .................................................... 8, 15

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ............................................................. 8

*Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*,
  No. 08cv1559 BTM, 2009 WL 3857425 (S.D. Cal. Nov. 16, 2009) .................. 24

*In re: Bard Inc Filters Products Liab. Litig.*,
  No. 2641, 2016 WL 537587 (D. Ariz. Feb. 11, 2016) ................ 13, 14, 15

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Grand Jury Investigation*,
    974 F.2d 1068 (9th Cir. 1992) ................................................................ 23

*In re Grand Jury Subpoena (Mark Torf/Torf Env'l Mgmt.)*,
    357 F.3d 900 (9th Cir. 2004) ........................................................... passim

*In re Pacific Pictures Corp.*,
    679 F.3d 1121 (9th Cir. 2012) ............................................................... 22

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) ...................................................... 9

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015) ........................................................ 9

*Lewis v. Wells Fargo & Co.*,
    266 F.R.D. 433 (N.D. Cal. 2010) ........................................................... 11

*Liew v. Breen*,
    640 F.2d 1046 (9th Cir. 1981) ............................................................... 19

*Martin v. Bally's Park Place Hotel & Casino*,
    983 F.2d 1252 (3d Cir. 1993) ................................................................ 10

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    No. CV 04-9049 DOC, 2010 WL 3705907 (C.D. Cal. Sept. 20,
    2010) .................................................................................................... 24

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) ........................................................... 21

*Pecover v. Elec. Arts Inc.*,
    No. C08-2820 CW BZ, 2011 WL 6020412 (N.D. Cal. Dec. 2,
    2011) .................................................................................................... 16

*Phillips v. C.R. Bard, Inc.*,
    290 F.R.D. 615 (D. Nev. 2013) ............................................................. 14

- iii -

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Richmond v. Mission Bank,*
  No. 1:14-CV-0184-JLT, 2015 WL 1637835 (E.D. Cal. Apr. 13,
  2015) ............................................................................................................ 14

*U.S. Inspection Services, Inc. v. NL Engineered Solutions,*
  LLC, 268 F.R.D. 614 (N.D. Cal. 2010) ................................................... 11

*United States v. AT&T Co.,*
  642 F.2d 1285 (9th Cir. 1980) ................................................................. 16

*United States v. Austin,*
  416 F.3d 1016 (9th Cir. 2005) ............................................................ 21, 22

*United States v. Bauer,*
  132 F.3d 504 (9th Cir. 1997) ................................................................... 17

*United States v. Chen,*
  99 F.3d 1495 (9th Cir. 1996) ............................................................. 18, 19

*United States v. Gonzalez,*
  669 F.3d 974 (9th Cir. 2012) ................................................................... 21

*United States v. Henke,*
  222 F.3d 633 (9th Cir. 2000) ................................................................... 22

*United States v. Judson,*
  322 F.2d 460 (9th Cir. 1963) .............................................................. 17, 18

*United States v. Richey,*
  632 F.3d 559 (9th Cir. 2011) ........................................................ 17, 18, 19, 20

*Ward v. Equilon Enters., LLC,*
  No. 9-4565, 2011 WL 2746645 (N.D. Cal. July 13, 2011) ..................... 20

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

Fed. R. Civ. P. 26 .................................................................................................. 23

Fed. R. Civ. P. 26(b) ............................................................................................. 23

Fed. R. Civ. P. 26(b)(3) ...................................................................................... 8, 14

Fed. R. Civ. P. 26(b)(5) ......................................................................................... 23

Fed. R. Civ. P. 26(b)(5)(A)(ii) .............................................................................. 24

# **INTRODUCTION**

When Experian discovered that one of its systems was breached by an unauthorized third party in September 2015, it immediately retained Jones Day, its outside litigation counsel, for legal advice in connection with the attack.  To assist in the preparation of a defense of inevitable class and regulatory litigation, Jones Day retained an undisclosed forensic consultant (Mandiant) to conduct an expert analysis of the attack for Jones Day.  At every stage, Jones Day lawyers participated in the preparation of Mandiant's report, which currently is being used by Jones Day to defend Experian in this very litigation.  To conduct its investigation, Mandiant reviewed *only* server images—*all* of which have been preserved for discovery in this case—and prepared an expert report based upon that evidence.  The report that Jones Day hired Mandiant to prepare was not used for "business" or remediation purposes.  Instead, the report was, and currently is, used for one purpose: providing legal advice to Experian.

Plaintiffs' motion seeks compulsion of an undisclosed expert report of their adversary, and the legal communications that counsel for their adversary sent to their client.  In making this remarkable request, Plaintiffs assert that Experian seeks to shield "basic *facts*" and evidence from discovery.  Nothing could be further from the truth.  Every bit of evidence that Mandiant reviewed to prepare its expert report for Jones Day has been preserved and is available to Plaintiffs in discovery.  Not some of it, *all* of it.  Plaintiffs can hire their own expert to do *exactly* what Mandiant did based upon the exact same materials that Mandiant reviewed.  The law forbids Plaintiffs from eviscerating Experian's attorney-client privilege, and Jones Day's work product protections, merely because it may be more expedient (and less expensive) for Plaintiffs to get their hands on their adversary's undisclosed expert report rather than hiring their own expert.

Plaintiffs incorrectly argue that: (1) the report and related communications are not privileged (they are); (2) the report is discoverable under the "substantial

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

need" exception to the work-product doctrine (it's not); and (3) Experian waived any privilege by sharing the report with T-Mobile (it didn't).  In advancing these arguments, Plaintiffs principally rely upon speculation and unsupported assumptions of their expert, Matthew Strebe.  According to Mr. Strebe, Experian relied on Mandiant—and only Mandiant—to investigate, analyze and remediate the breach.  Mr. Strebe also claims that the report is the only possible source of "facts" regarding that breach.  Mr. Strebe is wrong on both fronts.  Experian conducted its own investigation of the attack, and *every* "fact" that Mandiant reviewed to prepare its expert report for Jones Day will be produced in discovery.  Plaintiffs are entitled to (and will) discover those facts.  They are not, however, entitled to discover an undisclosed expert report of a party-opponent.

For the reasons that follow, the Court should uphold Experian's and Jones Day's privileges, and deny Plaintiffs' motion in all respects.

## BACKGROUND

### I.   The Data Breach And Jones Day's Retention Of Mandiant

On September 15, 2015, Experian discovered that an unauthorized party had accessed a network server in Experian's facility in McKinney, Texas.  That server, which effectively operated as a "warehouse" of information, stored various bits of data from T-Mobile USA, one of Experian's clients.  (*See* Declaration of Richard Cannon ("Cannon Decl.") ¶ 4; Declaration of Edward Chang ("Chang Decl."), Ex. E at 40:6-8; Declaration of Daniel McLoon ("McLoon Decl."), at ¶ 8.)  Within hours of discovering the breach, Experian's internal team determined that the attacker potentially exfiltrated consumers' personally identifiable information. (Cannon Decl., at ¶ 5.)  Given this discovery, Experian's legal department, in anticipation of litigation and regulatory scrutiny, retained Jones Day to provide legal advice on these matters.  (McLoon Decl., at ¶ 6.)

Jones Day agreed that litigation and government investigations were inevitable, particularly given the nature of the attack, the recent enactment of scores

of "data breach notification" laws, and the legion of cases that have been filed in the last decade arising out of similar types of data breaches. (McLoon Decl., at ¶8.) Jones Day further determined that, to provide sound legal advice and counseling regarding the defense of those lawsuits and government investigations, Jones Day needed an expert to investigate the breach, including the investigation of specific issues identified as important to the defense of litigation and regulatory matters. (*Id*., at ¶10.)  Accordingly, on September 21, 2015—just six days after the breach—Jones Day hired Mandiant, an undisclosed expert, to conduct a forensic investigation of the breach, and provide Jones Day with an expert report reflecting its analysis of the evidence.  (*Id*., at ¶ 11.)

At the same time, Experian continued to investigate the attack internally. (Chang Decl., Ex. E at 255:20-256:3; Cannon Decl., at ¶ 6.) That investigation identified the affected servers, along with the commands used, and files potentially acquired, in the attack.  (Chang Decl., Ex. E at 251-252; Cannon Decl., at ¶ 6.) In the course of that investigation, Experian made "server images" of the affected servers, and several related servers.  These "server images" are effectively identical copies of the servers at the time of the discovery of the attack.  Experian provided these server images—and *only* these server images—to Mandiant to conduct its forensic analysis and create the report.  (Chang Decl., Ex. E at 251-252; Cannon Decl., at ¶¶ 7-8; Declaration of Gerasimos Stellatos ("Mandiant Decl."), at ¶¶ 7-8.)

Jones Day instructed Mandiant that the scope of its expert report and analysis of the affected server images was to be limited; the expert report was not meant to be a fulsome investigation and analysis of the breach for purposes of remediation or "fact" gathering.  (McLoon Decl., at ¶18-19; Mandiant Decl., at ¶ 13-15.)  Instead, the expert report was to be used by Jones Day to provide legal advice in anticipation of the forthcoming litigation and regulatory matters, which followed less than 24 hours after the breach was announced to the public. (McLoon Decl., at ¶ 29; Mandiant Decl., at ¶ 4.)  The report that Mandiant prepared continues to be

1    used by Jones Day to guide its strategy and legal advice.  (McLoon Decl., at ¶ 29.)

2    **II.    The Timing And Function Of Mandiant's Expert Report**

3           Mandiant completed its investigation of the server images in October 2015.

4    (Mandiant Decl., at ¶ 18.)  On a rolling basis, Mandiant provided drafts of its expert

5    report to Jones Day for comment and discussion regarding the legal issues facing

6    Experian.  (McLoon Decl., at ¶ 22-23.)  Jones Day reviewed drafts of the expert

7    report and instructed Mandiant on further issues that needed to be vetted, and

8    provided feedback and edits to the drafts of the report directly to Mandiant.

9    (Mandiant Decl., at ¶ 17; McLoon Decl., at ¶ 23.)   Jones Day attorneys and

10   Experian's in-house counsel also discussed and reviewed the drafts over the course

11   of two weeks, during which time they further exchanged comments, revisions and

12   recommendations with Mandiant.  (Mandiant Decl., at ¶ 17; McLoon Decl., at ¶¶

13   26-27.)  Importantly, given Jones Day's instructions to Mandiant, the report would

14   not have been prepared in substantially the same form, or with the same content,

15   but for the anticipated litigation and regulatory investigations.  (McLoon Decl., at

16   ¶22, 23, 24; Cannon Decl. at ¶14.)  Additionally, based upon discussions with Jones

17   Day, Experian's in-house counsel directed certain critical members of Experian's

18   Incident Response Team to review portions of the draft report to confirm certain

19   facts Mandiant uncovered on the server images.  (Chang Decl., Ex. E at 57:23-58:8,

20   59:6-8; Mandiant Decl., at ¶ 17; Cannon Decl., at ¶ 13; McLoon Decl., at ¶ 25.)

21          Mandiant provided its final expert report to Jones Day on October 31, 2015,

22   who then provided it to Experian's in-house counsel.  (Mandiant Decl., at ¶ 18;

23   McLoon Decl., at ¶ 26.)  The report consists of several components, including an

24   individual sub-report for each server image that Mandiant investigated.  (Mandiant

25   Decl., at ¶ 18.)   Jones Day and Experian's in-house counsel used the expert

26   report—and continue to use the expert report—to develop their legal strategy in

27   defense of this litigation and on-going state and federal government regulatory

28   matters.  (McLoon Decl., at ¶ 29.)

- 4 -

Experian's in-house counsel also presented the report to Experian's Board of Directors as part of its November 2015 presentation to the Board regarding the breach. (Declaration of John Migliarini ("Migliarini Decl."), at ¶ 11.) During that presentation, Experian's in-house counsel provided the Board with legal advice regarding the numerous putative class actions and government investigations pending against Experian and T-Mobile. (*Id.*) Dissemination of the final report was closely controlled by Jones Day and Experian's in-house legal department; it was never provided to the full Incident Response Team, nor was it provided to the personnel working on remediation of the systems involved in the attack. (Chang Decl., Ex. E at 58:25-59:5; Cannon Decl., at ¶ 14; McLoon Decl., at ¶ 25.)

## III. <u>Experian Notifies T-Mobile And The Public Of The Breach</u>

Just before Jones Day retained Mandiant, Experian notified its client, T-Mobile, of the attack. (Migliarini Decl., at ¶ 3). Experian and T-Mobile recognized that they both faced significant risk of litigation and regulatory scrutiny arising out of the breach; and so, through their internal legal departments, entered into a joint defense agreement (the "JDA") to facilitate attorney-client communications and the sharing of work product. By working together under the JDA, Experian and T-Mobile identified the consumers whose personal information potentially was acquired. (Migliarini Decl., at ¶ 5; Chang Decl., Ex. E at 64:16-66:19; McLoon Decl., at ¶15.) Experian's in-house counsel provided T-Mobile's counsel with the report, subject to the JDA, in redacted form. (Migliarini Decl., at ¶ 10).

On October 1, 2015, Experian publicly announced that it had suffered a data breach potentially affecting an estimated 15 million consumers who had submitted personal information to T-Mobile. Shortly thereafter, it began notifying potentially affected consumers individually by mail. (McLoon Decl., at ¶ 20.) Less than twenty-four hours later, on October 2, 2017, a class action plaintiff (the lead plaintiff Bhuta in this consolidated action) filed the first of more than forty putative nationwide class actions and individual consumer complaints. (*Id*, at ¶ 21.) Nearly

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO. 8:15-CV-01592 AG (DFMX)

1   all of the putative class actions and individual cases brought claims for negligence
2   and violations of numerous other federal and state law claims.  (McLoon Decl., at ¶
3   21.)   At least ten of those cases against Experian also named T-Mobile as a co-
4   defendant.  (*Id.*)

5   **IV.   <u>Plaintiffs' Demand For Production Of The Mandiant Expert Report</u>**

6           This consolidated case stems from a complaint (*Bhuta*) filed on
7   October 2, 2015, one day after Experian publicly announced that it had suffered a
8   data breach.   That complaint was consolidated with over forty other consumer
9   complaints in the *In re Experian Data Breach* litigation.   After consolidation,
10  Plaintiffs informally requested that Experian produce to Plaintiffs the report
11  prepared by its undisclosed expert/consultant.  (Chang Decl., at ¶ 2.)   Experian
12  objected to producing the report on the basis that the report is privileged work
13  product, and informed Plaintiffs that every bit of data that Mandiant analyzed
14  would be made available to them in discovery.  (*Id.*)  After Plaintiffs disclosed to
15  the Court that it had informally demanded that Experian produce its undisclosed
16  expert's report, the Court ordered Experian to provide a narrow privilege log
17  regarding transmission of the report, including "the number of pages, the number of
18  exhibits, and how may recipients" received the report.  (*See* Dkt. No. 146 Hr'g
19  Minutes, Mar. 31, 2016 (Ex. A); Dkt. No. 147 Hr'g Tr., Mar. 31, 2016, at 20:16-20
20  (same).)

21          On April 8, 2016, Experian produced an initial privilege log that went far
22  beyond the requirements of the Court's Order.  (Chang Decl. at ¶ 4 and Ex. B
23  (Experian's April 8, 2016 privilege log).)  The entries in the initial log included the
24  date and time of each communication listed, along with the sender, author, and
25  every recipient of each communication and document withheld relating to the
26  report.   Additionally, Experian included not only the general subject matter in its
27  descriptions, but also included specific information about each document and
28  communication in question (for example, "summary of undisclosed expert's

- 6 -

analysis of breach incident"; "confidential email … re: undisclosed experts' investigation of breach," "investigation of breach and revision of report," and so forth). (Chang Decl., Ex. B.) After receiving the initial log, Plaintiffs sent a letter purporting to identify areas that the log was deficient. (*Id.* at ¶ 5.) In response, Experian provided a supplemental privilege log on June 10, 2016, again going above and beyond what the Court required. (*Id.* at ¶ 5 and Ex. C.)

Plaintiffs then noticed a 30(b)(6) deposition to test Experian's privilege claims regarding the report and related communications. (*Id.* at ¶ 6.) In advance of the deposition, Plaintiffs stressed that the deposition would be limited solely to the topics contained in the notice, and that Plaintiffs would not veer into the facts regarding the breach (so as not to run afoul of the Rules or the parties' stipulations reached during meet and confer discussions). Given the privileged nature of the report, the information sought through Plaintiffs' deposition notice, and the parties' meet and confer discussions, Experian objected to the deposition topics and document requests, and cautioned that the deponent would be prepared solely on the limited issues of privilege—and not the facts underlying the report. (*Id.*) In the spirit of cooperation, Experian identified a non-attorney witness, Mr. Cannon, who could speak to the non-privileged topics in Plaintiffs' deposition notice. (*Id.* at ¶ 7.) Experian also provided several documents in response to Plaintiffs' deposition notice, including redacted versions of all documents identified on Experian's privilege log. (*Id.*) After extended meet and confer, Plaintiffs took Mr. Cannon's deposition on February 9, 2017. (*Id.* at ¶¶ 8-9.) This motion followed.

## LEGAL ARGUMENT

Plaintiffs contend that an undisclosed expert report of their adversary, as well as their adversary's communications with its lawyers about the undisclosed expert report, are not protected by the work product doctrine, are not covered by attorney-client privilege, and that Experian waived whatever protection that did apply by sharing the report with T-Mobile. Plaintiffs are wrong on every level. The report

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO. 8:15-CV-01592 AG (DFMX)

of an undisclosed expert, including all preliminary drafts, is classic work product, prepared by and for Jones Day to assist in defending Experian in this litigation and regulatory matters. Jones Day's communications with its client regarding an undisclosed expert's report are squarely protected by attorney-client privilege. And because Experian and T-Mobile shared a common interest—particularly inasmuch as they were both parties to the class actions when the report was shared—and entered into the JDA with respect to the breach, Experian did not undermine any applicable privilege or protection by sharing the contents of the report with T-Mobile's counsel. The report is, and remains, privileged.

## I.    The Expert Report Is Protected By The Work-Product Doctrine

"The work product doctrine is a qualified privilege that protects certain materials prepared by an attorney acting for his client in anticipation of litigation." *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010) (internal quotations omitted). The doctrine, "outlined in rule 26(b)(3) of the Federal Rules of Civil Procedure, provides that a party may not discover documents prepared in anticipation of litigation by an opposing party's counsel." *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 670 (S.D. Cal. 2000); Fed. R. Civ. P. 26(b)(3). The privilege extends to "documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Env'l Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)).

To come within the doctrine's protection, a document need not be prepared *exclusively* for use in litigation. Instead the Ninth Circuit applies a "because-of" test to determine whether the document was prepared in anticipation of litigation: A dual-purpose document (i.e., a document prepared for business and litigation) is prepared "in anticipation of litigation," and thus subject to work-product protection, if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO. 8:15-CV-01592 AG (DFMX)

the prospect of litigation." *Torf*, 357 F.3d at 907 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (2d ed. 1994)).

The report, prepared at the direction, and under the supervision, of Jones Day, was created for the purpose of assisting Jones Day and Experian's in-house counsel in preparing for the defense of litigation and regulatory investigations.  The report indisputably is protected work product.

### A.   Experian Reasonably Anticipated Litigation At The Time Jones Day Engaged Mandiant

Plaintiffs insist that Experian, upon discovering that it had been the victim of a data breach potentially involving millions of consumers personal information, could not have reasonably anticipated litigation.  (Mot. 11 ("Mandiant did not investigate and create its report in anticipation of litigation.").)  This argument is meritless—particularly coming from Plaintiffs' experienced class counsel, who are aware of the many nationwide consumer class cases filed as a result of data breaches, and who filed the lead case against Experian within 24 hours of Experian's public disclosure of the breach.  *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949 (D. Nev. 2015); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014).  Moreover, Plaintiffs' claim that Experian could not have (and did not) reasonably anticipate litigation is contrary to the facts of this case and controlling Ninth Circuit precedent.

As previously explained, Experian retained Jones Day as a direct result of the breach to provide legal advice regarding the anticipated litigation and government investigations.  Jones Day hired Mandiant to conduct an investigation using preserved server images, and prepare an expert report regarding the breach, to assist Jones Day in the assessing Experian's potential liabilities, and to aid Jones Day in preparing for impending litigation.  Jones Day sought Mandiant's expertise to prepare for litigation and comprehend complex, highly technical issues involving

the breach.  These facts closely track those in *Torf*—the case in which a company under EPA investigation for violating waste-management laws retained an expert to assist in (among other things) preparation of legal defenses.  *Torf*, 357 F.3d at 904.

Jones Day, soon after learning of the breach and being retained by Experian, commissioned Mandiant to review Experian's server images and prepare a report. Just as the EPA's investigation in *Torf* required legal counsel even before the formal initiation of legal proceedings, the breach of Experian's servers required immediate representation given the looming and all-but-certain threats of litigation and regulatory inquiries.  And as in *Torf*, Jones Day needed an expert's input to formulate legal defenses.  So, just as in *Torf*, the expert report in this case is covered by the work-product doctrine.

It matters not that litigation had yet to commence at the time Jones Day retained Mandiant.  For one thing, litigation need not be initiated for documents to receive work product protection.  *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993).  For another, multiple suits were almost certain to occur—and did occur—shortly after public disclosure of the breach.  *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.*, No. 2:13-CV-1378 WBS AC, 2015 WL 1469286, at *5 (E.D. Cal. Mar. 30, 2015) (holding three post-incident, pre-litigation reports prepared by an investigator retained by a fire insurer in preparation for potential litigation with insureds were protected work product and not prepared in the "ordinary course of business").  In light of these dispositive facts, there is no support for Plaintiffs' position that the undisclosed expert report was not prepared in anticipation of litigation.

### B.   The Report Was Created "Because of" Litigation

The record is clear that Jones Day commissioned an undisclosed expert report in order to provide legal advice and counseling to Experian's in-house legal department in anticipation of litigation and regulatory matters.  But even were that not the case, the report still would be covered by the work product doctrine.  The

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

1    doctrine extends to materials prepared for *both* litigation and business purposes.

2    *See Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) ("the work

3    product doctrine can reach documents prepared because of litigation even if they

4    were prepared in connection with a business transaction or also served a business

5    purpose"); *Torf*, 357 F.3d 909–10 (finding certain "dual purpose" documents to

6    qualify for work product protection).   Accordingly, while Jones Day indisputably

7    retained undisclosed expert to prepare a report solely for legal purposes, any

8    argument that the report served a "dual purpose" is of no moment.

9        Under the Ninth Circuit's "because-of" test, whether a document is protected

10   by the work product doctrine does not depend on whether anticipation of litigation

11   was the "primary or secondary motive behind [its] creation."  *Id.* at 908 (internal

12   quotation marks and citations omitted).   Instead, the "because of" test considers

13   whether, under a "totality of the circumstances," a document "would not have been

14   created in substantially similar form but for the prospect of litigation."  *Id.* (quoting

15   *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).   When considering

16   whether documents prepared by a consultant are created "because of" litigation,

17   courts weigh "factors such as the timing of retention of the non-testifying expert in

18   relation to the litigation at issue and the existence of evidence including supporting

19   affidavits and engagement letters." *U.S. Inspection Services, Inc. v. NL Engineered*

20   *Solutions*, LLC, 268 F.R.D. 614, 619 (N.D. Cal. 2010).

21       The Ninth Circuit's opinion in *Torf* is instructive.   There, the attorney

22   retained a consultant for two related purposes:  (1) to help the attorney prepare a

23   legal defense for the company, and (2) to act as an environmental consultant for the

24   company's cleanup efforts.   *Id.*   The Court held that work product doctrine

25   extended to "dual purpose" documents that the consultant had created in

26   furtherance of both purposes.  *Id.* at 907.  It rejected the EPA's argument that these

27   dual-purpose documents were not protected because they "would have been created

28   in substantially similar form in any event to comply with the [EPA's] Information

- 11 -

Request." *Id.* at 908.  Instead, the court held that at least part of the reason the consultant had prepared the cleanup documents was to advise, defend, and avoid litigation with the government.  *Id.* at 909.  "Thus, the withheld documents [fell] within the broad category of documents that were prepared for the overall purpose of anticipated litigation." *Id.*

None of Plaintiffs' arguments to the contrary are sufficient to compel production of their adversary's undisclosed expert's report.  Plaintiffs insist that the report is the only investigation of the breach that Experian conducted.  Even if true, and it is not, this would make no difference:  Regardless of whether the report records the only investigation performed, it indisputably was commissioned by Jones Day by the need to provide legal advice, just like the report in *Torf*, and is thus protected.  Indeed, Mandiant specifically was instructed by Jones Day to investigate issues that Jones Day believed were important for Experian's defense of litigation and regulatory matters—issues that would not have been investigated in a report prepared solely for business purposes.  The report would not have been created in the same format but for litigation.  This is further supported by the fact that full report was never provided to the Incident Response Team, as much of its content was relevant to the defense of litigation, not to Experian's internal investigation or remediation efforts.

Regardless, Plaintiffs' foundationless assertion the report is the "only" source of facts (or investigation) relating to the breach is incorrect. (Mot. at 12.) Uncontradicted testimony establishes that:  (1) Experian identified and imaged the affected systems *before* Mandiant began its investigation; (2) Experian and T-Mobile investigated the files accessed by the attackers; and (3) Experian remediated the breach independent of Mandiant's investigation. (Chang Decl., Ex. E at 251-252; Cannon Decl., at ¶¶ 7, 10, 12; McLoon Decl., at ¶ 12, 17, 19.) Experian already had identified the affected servers before providing images of those servers to Mandiant, and while Mandiant identified the specific files involved

in the breach, Jones Day and Experian instructed Mandiant not to analyze the contents of those files.[1]  (Chang Decl., Ex. E at 251-252; Cannon Decl., at ¶ 10; McLoon Decl., at ¶ 16.)   In discovery, Plaintiffs will receive the same server images that Mandiant reviewed, which underpin its expert report.

Plaintiffs' other arguments fare no better.  Plaintiffs invent external statutory reporting requirements they say Experian is subject to, and insist that Experian commissioned the expert report to satisfy these requirements.   (Mot. at 10). The undisclosed expert report that Jones Day hired Mandiant to prepare has nothing to do with any reporting requirements, and was not used to satisfy any such requirements.  Even were that not the case, the report that Mandiant prepared for Jones Day still would be protected, as it would not have been prepared in substantially the same form but for the litigation.   Indeed, the report includes analysis of legal issues identified by Jones Day as important to Experian's defense of this very litigation, divorced from any so-called reporting requirements. Unsurprisingly, courts have rejected similar arguments that external reporting requirements nullify the work product doctrine.  *In re: Bard Inc Filters Products Liab. Litig.*, No. 2641, 2016 WL 537587, at *3 (D. Ariz. Feb. 11, 2016) (holding that the use of data and conclusions from a report prepared for the defense of litigation for a separate document intended to satisfy reporting requirements did not deprive the privileged report of work product protection).

Plaintiffs also attempt to make much of the fact that Mandiant had provided services to Experian previously. (Mot. at 11, 14.)  Of course, a consultant who has *previously* served as a business advisor can later be retained to prepare information relevant to a legal defense.  When that happens, the information prepared is subject to work product protections.  That is precisely what happened in *In re Bard*, 2016

---

[1] Plaintiffs cite testimony of Mr. Cannon that "it was Mandiant who determined the breach at issue 'was limited to the T-Mobile customers.'" (Mot. at 12, citing 46:19-21).  That testimony relates to a separate breach incident in 2013, not the breach that occurred in September 2015, which is at issue in this case.

WL 537587.  There, the district court held that the work product doctrine applied to a report prepared by a medical expert who had been retained by, acted at the direction of, and reported to, a company's in-house counsel.  *Id.* at *3, *6.  And it so held notwithstanding the expert's previously having worked for the company as a business and regulatory consultant.  *Id.*  As the two assignments were separate, the expert's previous work did not alter the protected status of the report he prepared in anticipation of litigation.  *See also Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 649 (D. Nev. 2013) (analyzing the same report and reaching the same conclusions).  The same is true here.

In sum, Plaintiffs' argument that the report that Mandiant prepared for Jones Day fulfilled only a business function is false.  Experian's own investigation, undertaken immediately after the breach, performed the business function of identifying the breach so that Experian could take appropriate steps to remediate the vulnerability and alert consumers.  Even if a secondary purpose of Mandiant's investigation was to confirm Experian's findings—which it was not—such secondary purpose does not deprive the report of work product protection.  *Torf*, 357 F.3d at 907–08.  Plaintiffs' contrary arguments must be rejected.

## C.    Plaintiffs Have No Substantial Need For The Report

Plaintiffs correctly note that documents protected by the work product doctrine may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).  But courts must not "lightly" require production under this exception. *Richmond v. Mission Bank*, No. 1:14-CV-0184-JLT, 2015 WL 1637835, at *7 (E.D. Cal. Apr. 13, 2015). "The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest similar effort in discovery." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).

Here, there is no need at all—never mind a "substantial one"—for Plaintiffs to access the report that Mandiant prepared for Jones Day. Put simply, Mandiant's *entire* investigation and analysis was conducted on images of servers that Experian's own investigation identified as having been affected by the breach. Those server images were preserved in full; remain in Experian's custody and control; and are available to Plaintiffs in discovery. Notwithstanding the contrary speculation by Plaintiffs and their expert, (*see* Strebe Decl. at ¶25), the **exact same** raw materials and information Mandiant reviewed for its expert work are available to Plaintiffs and any forensic expert they engage in this action. Plaintiffs can hire their own expert to do exactly what Mandiant did. These server images contain extremely sensitive information, but Experian is prepared to provide them to Plaintiffs in a secure environment, in order for Plaintiffs' own forensic experts to analyze the images.[2]

Plaintiffs appear unwilling to retain their own expert to analyze the very same server images that Mandiant reviewed. But that is plaintiffs' decision, and it hardly makes Mandiant's privileged report discoverable. That is, Plaintiffs' refusal to expend cost and effort to prosecute this action is not sufficient to demonstrate a substantial need for the report itself. *See Fletcher v. Union Pac. R.R. Co.,* 194 F.R.D. 666, 671 (S.D. Cal. 2000) (holding that "expense or inconvenience" are insufficient to constitute undue hardship for the party seeking discovery); *In re: Bard* 2016 WL 537587, at *7 (same). Moreover, Plaintiffs have other options to discover the underlying facts and information contained in Mandiant's report.

---

[2] These server images are highly confidential, and include consumer and client information unaffected by the breach, as well as confidential and proprietary information belonging to clients of Experian other than T-Mobile. Additionally, the server images cannot be simply produced like electronic documents can; rather the images would have to be mounted onto a system for use by Plaintiffs' forensic experts. Plaintiffs have not engaged Experian on this topic, though Experian has raised it to Plaintiffs choosing instead to file a motion in an attempt to access Mandiant's privileged report.

For example, Plaintiffs can simply take the depositions of the personnel who discovered the breach, the Incident Response Team that investigated and responded to the breach, and Experian's testifying expert (when disclosed)—all of whom have analyzed the same server images. Plaintiffs additionally have access to non-privileged documents regarding the breach, which are being produced by Experian in ongoing discovery.[3] Yet Plaintiffs have not made any overtures to seek the above. In short, Plaintiffs have not demonstrated any need, much less a substantial need, to eviscerate Jones Day's work product protection over an undisclosed expert's report.

### D.   There Was No Waiver Of Work-Product Protections

Plaintiffs claim that Jones Day's work product protections were waived when a redacted copy of the report Mandiant prepared was shared with counsel for T-Mobile pursuant to the JDA. (Mot. at 19). Not so. Disclosure to a third party is not sufficient to establish waiver of work product. To the contrary, parties are free to disclose documents while preparing for litigation without waiving work product protections, provided such disclosure is consistent with maintaining secrecy against opponents. *See United States v. AT&T Co.*, 642 F.2d 1285, 1299 (9th Cir. 1980); *see also Cottage Health Sys., et al. v. Admiral Ins. Co., et al.,* No. CV 15-2198-PSG (AGR), 2015 WL 12806480, at *1 (C.D. Cal. Dec. 22, 2015). Here, Experian disclosed a redacted version of the report to T-Mobile under a JDA. Experian and T-Mobile faced, and continue to face, joint litigation against common opponents. It is manifestly reasonable to expect that a report disclosed in these circumstances would be kept secret. Thus, the limited disclosure to T-Mobile did not waive Jones Day's work product privilege. *Pecover v. Elec. Arts Inc*., No. C08-2820 CW BZ,

---

[3] Experian continues to produce documents from its ongoing review of nearly six million documents and 1 terabyte of data. That process continues on a rolling basis. Plaintiffs cannot reasonably claim that they are unable to determine the facts of the breach without Mandiant's privileged report until they have examined all of the relevant documents that are made available to them.

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

1  2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011).

2  **II.      Mandiant's Report, And Lawyer-Client Communications Involving**
3  **The Report, Are Protected By The Attorney-Client Privilege**

4         In addition to being privileged work product, the report that Mandiant
5  prepared at the behest of Jones Day, as well as Jones Day's communications about
6  the report with its client, Experian, are squarely protected by the attorney-client
7  privilege. "The attorney-client privilege protects confidential communications
8  between attorneys and clients, which are made for the purpose of giving legal
9  advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The privilege
10 "is a two-way street": it "protects confidential disclosures made by a client to an
11 attorney in order to obtain legal advice, … as well as an attorney's advice in
12 response to such disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.
13 1997) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996))
14 (emphasis omitted). The privilege further extends to third-party reports "prepared
15 at the attorney's request, in the course of an attorney-client relationship, for the
16 purpose of advising and defending his clients." *United States v. Judson*, 322 F.2d
17 460, 462 (9th Cir. 1963).

18        Plaintiffs make two arguments against applying attorney-client privilege to
19 the report and related communications. First, they say the report neither was
20 commissioned nor provided for the purpose of giving legal advice. Second, they
21 say Experian waived any privilege by sharing the report with T-Mobile.
22 Both arguments are meritless.

23        **A.      Mandiant's Investigation And Expert Report Was For One**
24        **Purpose:  Providing Legal Advice**

25        The attorney-client privilege attaches to Mandiant's report and all related
26 communications between Jones Day, Experian, and Mandiant. Experian retained
27 Jones Day to provide it with legal advice regarding the many different aspects of its
28 data breach response. Experian sought Jones Day's advice regarding: (1) its

- 17 -

statutory obligations to notify both attorneys general and individual consumers of the breach; (2) its obligations under its contract with T-Mobile; (3) responses to investigations by regulatory bodies; and (4) how best to defend itself from inevitable breach-related litigation.  Jones Day determined that, in order to provide legal advice to Experian on these issues, it needed to retain an expert that could evaluate server images and provide expert analysis to Jones Day and Experian's in-house lawyers regarding the cyber attack.  No amount of obfuscation can change the immutable fact that Mandiant's report was "prepared at [Jones Day's] request, in the course of an attorney-client relationship, for the purpose of advising and defending [Jones Day's] client[]." *Judson*, 322 F.2d at 462.  Everything in the report is thus part and parcel of the confidential communications between Experian and its attorneys for the purpose of giving and receiving legal advice.

Communications between lawyer and client regarding the report also are squarely protected by the attorney-client privilege, which covers those attorney-client communications made "for the purpose of giving legal advice." *Richey*, 632 F.3d at 566.  The report that Mandiant prepared for Jones Day—which is used by Jones Day to defend Experian in this very litigation—and all related communications about the report, were made and prepared for precisely that purpose.

Plaintiffs ask the Court to require production or in camera review of multiple communications between Jones Day and its client, Experian.[4]  An *in camera* review of documents designated as privileged is an extraordinary request, appropriate only when a party has a factual basis to support a good faith belief that the attorney-

---

[4] As an example, they cite a communication from Jones Day that the privilege log describes as a "[c]onfidential memorandum providing legal advice and prepared in anticipation of litigation re: summary of undisclosed experts' analysis and investigation of breach, attached to privileged email chain." (Mot.  17.)  In other words, they want a memorandum prepared by Jones Day explaining to Experian the legal consequences of Mandiant's findings.  A more obvious example of attorney-client privilege is difficult to imagine.  *See Chen*, 99 F.3d at 1501.

1   client privilege does not apply to documents withheld.  *See Applied Med. Res.*
2   *Corp. v. Ethicon, Inc.*, No. SACV 03-1329-JVS, 2005 WL 6567355, at \*2 (C.D.
3   Cal. May 23, 2005).  Here, Plaintiffs' request is based purely on speculation and
4   Plaintiffs lack a good faith factual basis to support their request.  *See Ekeh v.*
5   *Hartford Fire Ins. Co.*, 39 F. Supp. 2d 1216, 1219 (N.D. Cal. 1999) (finding
6   speculations and legal conclusions inadequate to establish a good faith, factual basis
7   justifying in camera review).

8       Plaintiffs insinuate that, because Jones Day may have provided advice as to
9   technical aspects of Experian's breach response, its communications with Experian
10  and with Mandiant cannot be privileged.  That contradicts binding precedent.
11  *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (internal quotations
12  omitted).  "What matters is whether the lawyer was employed with or without
13  reference to his knowledge and discretion in the law, [] to give the advice."  *Id.*
14  And in *Chen*—a case cited by Plaintiffs themselves—the Ninth Circuit ruled that
15  because the attorneys in question "were employed for their legal knowledge, to
16  bring their clients into compliance with the law in the least burdensome way
17  possible (so far as the lawyers knew)," their communications were privileged.  *Id.*

18      The cases Plaintiffs cite are all distinguishable or inapposite.  For example, in
19  *Liew v. Breen*, 640 F.2d 1046 (9th Cir. 1981), the Ninth Circuit refused to apply the
20  privilege to communications between an attorney and individuals with whom he
21  spoke about a business opportunity (investment in litigation financing).  *Id*.  at
22  1050.  That is hardly surprising: The attorney-client privilege does not protect
23  discussions unrelated to legal advice that happen to involve an attorney.  *Id*.  But
24  *Liew* is irrelevant here: Experian retained Jones Day for its "legal knowledge, to
25  bring [its] clients into compliance with the law" and to assist Experian with its
26  defense of this litigation and regulatory investigations.  *Chen*, 99 F.3d at 1502.
27  The report, and communications giving legal advice based on the report, were
28  obviously "made for the purpose of giving legal advice." *Richey*, 632 F.3d at 566.

- 19 -

Similarly irrelevant is *Ward v. Equilon Enters., LLC,* No. 9-4565, 2011 WL 2746645 (N.D. Cal. July 13, 2011).  That unreported case rejected a privilege claim over an investigation and report produced by an attorney to satisfy Cal-OSHA obligations and the company's own internal injury prevention program.  No. 9-4565, 2011 WL 2746645 (N.D. Cal. July 13, 2011).  But the district court's decision to do so had nothing to do with the question whether the attorney's communications were made "for the purpose of giving legal advice." Rather, *Ward* found the communications non-privileged because they were made in front of third parties, thus destroying the communications' confidentiality.  *Id*. at *2.

*United States v. Richey*, 632 F.3d 559 (9th Cir. 2011) (cited at Mot. 8,9,14,15,17), is also distinguishable.  There, clients retained an attorney to "provide legal advice … concerning the granting" of a "conservation easement." *Id*. at 562.  In the course of his representations, the attorney advised his clients that they could obtain a charitable deduction for granting such an easement, but that they would have to obtain an appraisal conforming with IRS regulations.  *Id*. at 562–53.  In furtherance of that advice, the attorney retained an appraiser to provide an appraisal for his clients.  *Id*.  When the IRS came looking for information from the appraiser, the appraiser claimed that his communications with the attorney were shielded by the attorney-client privilege.  The Court rejected that argument, holding that "any communication related to the preparation and drafting of the appraisal for submission to the IRS was not made for the purpose of providing legal advice, but, instead, for the purpose of determining the value of the Easement." *Id*. at 567.  Here, the report, which was prepared so that Jones Day could obtain the information needed to provide legal advice in the first place.

Plaintiffs' legal and factual arguments are unavailing.  In insisting that the report is unrelated to Jones Day's legal advice, Plaintiffs repeat their incorrect accusation that the report was "Experian's initial response to the breach." (Mot. at 15).  As already explained, that is factually inaccurate.  Nor is it accurate that

1   Jones Day received a finished report that it simply forwarded directly to Experian's

2   business personnel, with no involvement from any attorneys other than an exchange

3   of invoices.  To the contrary, the report was reviewed by Jones Day—and revised in

4   response to Jones Day's review—in order to ensure that the final report provided

5   Jones Day the analysis needed to prepare Experian for litigation.  The legal analysis

6   inherent in the report, and the legal analysis communicated to Experian relating to

7   the report, is the definition of privilege.

8   ### B.  Experian Did Not Waive The Attorney-Client Privilege

9       Plaintiffs next argue that Experian waived the attorney-client privilege as it

10  pertains to the report and related communications.  That waiver occurred, Plaintiffs

11  say, when Experian shared a redacted version of the report with T-Mobile.

12  Plaintiffs are mistaken.   The "joint defense privilege" "protects not only the

13  confidentiality of communications passing from a party to his or her attorney but

14  also 'from one party to the attorney for another party where a joint defense effort or

15  strategy has been decided upon and undertaken by the parties and their respective

16  counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting

17  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).  "The privilege is

18  also referred to as the 'common interest' privilege or doctrine, because it has not

19  been limited to criminal defense situations or even situations in which litigation has

20  commenced." *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012); *see*

21  *also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)

22  (holding that the common interest privilege applies where the parties reasonably

23  anticipate being involved in joint litigation).

24      Here, Experian and T-Mobile reasonably anticipated being involved in joint

25  litigation when they shared the report.  Indeed, T-Mobile was named as a co-

26  defendant in nearly a dozen complaints filed after the breach was made public,

27  including litigation filed *prior* to Experian's sharing the report with T-Mobile.

28  Further, Experian and T-Mobile entered into a JDA.  That is critical: "A joint

- 21 -

1    defense agreement establishes an implied attorney-client relationship with the co-
2    defendant." *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000).  The JDA
3    serves as further recognition of the fact that Experian and T-Mobile could and did
4    reasonably anticipate being involved in joint litigation.  And their common interest
5    in a "joint defense effort or strategy" means that sharing the report did not waive
6    the attorney-client privilege.  *Austin*, 416 F.3d at 1021.

7         Plaintiffs' primary argument against the doctrine's application is their
8    assertion that a joint defense agreement "does not automatically satisfy Experian's
9    burden of establishing" that its communications with T-Mobile remain privileged.
10   But Plaintiffs only support for this argument is *In re Pacific Pictures Corp.*, 679
11   F.3d 1121 (9th Cir. 2012)—a case that does not even address the joint defense
12   privilege.  In any event, Experian is not relying solely on the existence of a joint
13   defense agreement.  Rather, it cited the JDA as one of many factors—along with
14   the shared risk of liability and the pending related cases—illustrating its shared
15   interests with T-Mobile.

16        Plaintiffs also speculate that Experian's press release, issued on
17   October 1, 2015—weeks before the report was first provided to Experian's
18   counsel—was somehow dependent upon that report, and thus constitutes a waiver
19   of the contents of the report.  But as Mr. Cannon testified, certain facts in that
20   release, determined by Experian, were independently confirmed by Mandiant
21   during its investigation.  (Chang Decl, Ex. E at 255:20-256:3.)  The report was not
22   simply a recitation of the same facts appearing in Experian's press release, nor did
23   the press release disclose a substantial amount of information contained within the
24   report.  Plaintiffs' assertion that the press release somehow waived the privilege
25   which applies to a report that did not even exist at the time of the press release is
26   nonsensical.

27

28

EXPERIAN OPP. TO MOTION TO COMPEL
CASE NO.  8:15-CV-01592 AG (DFMX)

**C.** **Experian's Privilege Log Is Sufficiently Detailed to Support Its Privilege Claims**

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party withholding documents to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The advisory committee notes to Rule 26 suggest that privilege logs should include the "time, persons, [and] general subject matter" of the documents withheld.  Fed. R. Civ. P. 26(b), advisory committee notes (1993). Consistent with this rule, the Ninth Circuit has held that privilege logs are sufficient when they disclose the nature of the correspondence, the date of sending, the sender and recipients, and a brief statement describing the subject of the document or communication.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1069 (9th Cir. 1992).   Indeed, the Ninth Circuit in *Grand Jury* noted that a privileged log "*went beyond*" the requisite standards when it provided "information on the subject matter of each document."  *Id.* at 1071 (emphasis added) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989)).

Importantly, Rule 26(b)(5) "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection." Fed. R. Civ. Proc. 26, advisory committee notes (1993).  Thus, courts may tailor the appropriate amount of information parties must include in privilege logs in light of the facts and circumstances of each case.  *See id.*; *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989).  In *Dole*, for example, the Ninth Circuit recognized that the district court could choose between any "number of options" available to determine whether documents are privileged, and that the "district court is in a better position than this court to choose from among them after hearing from the parties."  *Id.* (noting the broad range of options, including ordering a "narrower, less extensive description of the documents sought" or "summaries of

unprivileged information"). Here, after balancing these factors, the Court narrowed the scope of information Experian was to provide in its privilege log to include only "the number of pages, the number of exhibits, and how many recipients" received the report. Dkt No. 146; Dkt No. 147 at 20:16-20 (same). Thus, the court did not require information about the *substance or nature* of the report or exhibits, but only the *number* of pages and exhibits. *See id.*

Experian's privilege log entries nevertheless went beyond the requirements under the Court's Order, Ninth Circuit precedent, and the Federal Rules of Civil Procedure. (*See* Chang Decl., Exs. B & C.) Moreover, plaintiffs cannot legitimately complain that they do not have enough "factual evidence" supporting Experian's privilege assertions. To divulge more information than Experian has provided would "reveal[] information itself privileged or protected." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also Mattel, Inc. v. MGA Entertainment, Inc.*, No. CV 04-9049 DOC (RNBx), 2010 WL 3705907, at *6 (C.D. Cal. Sept. 20, 2010) ("A privilege log traditionally identifies the nature of documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, enables other parties to assess the claim of privilege or work product." (internal quotations, alterations and ellipsis omitted)); *see also Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08cv1559 BTM (WMc), 2009 WL 3857425, at *4 (S.D. Cal. Nov. 16, 2009) (party claiming privilege is not to reveal the privileged information in support of its claim). Experian's Privilege Log undoubtedly specifies the nature of each document over which a privilege is claimed—and Plaintiffs do not argue otherwise. Experian's Privilege Log is therefore more than adequate to establish privilege for the documents in question.[5]

---

[5] Plaintiffs cite to Mr. Cannon's lack of knowledge of the preparation of Experian's privilege log in support of their argument that the log is insufficient. As Experian's outside counsel prepared the privilege log, Mr. Cannon could not reasonably have been expected to testify as to its preparation or every single line

- 24 -

## CONCLUSION

The report of an undisclosed expert, prepared at the behest of litigation counsel in anticipation of litigation, and communications about that report between lawyer, client and expert, are manifestly privileged and protected.  The record establishes that defense counsel was involved in the preparation of the report, and that it is being used in defense of this very case.  The record further establishes that the report was not used for any business or remediation purposes.  Instead, the report had a singular mission:  Assisting Jones Day in the provision of legal advice to its client, Experian, in defense of this litigation and regulatory matters.

Plaintiffs will suffer no burden, let alone substantial burden, in failing to get their hands on their adversary's undisclosed expert report.  All Plaintiffs need do is retain their own expert to review the exact same materials that their adversary's expert reviewed, all of which have been preserved for discovery in this case.  Finally, sharing a redacted version of an undisclosed expert's report with a party that clearly has a common interest in the shared defense of anticipated and actual litigation hardly is a waiver of the attorney-client privilege or attorney work product doctrine.  For these reasons, the Court should deny Plaintiffs' motion in its entirety.

Dated:  April 21, 2017

JONES DAY

By: */s/ Richard J. Grabowski*
Richard J. Grabowski

Counsel for Defendants
EXPERIAN INFORMATION
SOLUTIONS, INC. & EXPERIAN
HOLDINGS, INC.

(continued…)

entry in the log(s), and indeed Experian objected to this topic in Plaintiffs' deposition notice on these grounds.

- 25 -