1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| **IN RE EXPERIAN DATA BREACH LITIGATION** | Case No. 8:15-cv-01592 AG (DFMx) |
|---|---|
| | Hon. Andrew J. Guilford |
| | **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

2   This Class Action Settlement Agreement and Release, dated November 9,
3   2018, is made and entered into by and among the Class Representatives,[1] for
4   themselves individually and on behalf of the Settlement Class, and Defendants
5   Experian Information Solutions, Inc. and Experian Holdings, Inc. This Agreement
6   is intended by the Parties to fully, finally, and forever resolve, discharge, and settle
7   all of Plaintiffs' Released Claims, upon and subject to the terms and conditions
8   hereof, and subject to the Court's approval.

9   **I.    BACKGROUND**

10  WHEREAS, on or about October 1, 2015, Defendants announced that in
11  September 2015, an unauthorized user acquired the names, addresses, Social Security
12  numbers, dates of birth, identification numbers (*e.g.* driver's license numbers,
13  military ID numbers or passport numbers), and other personally identifiable
14  information (collectively, "PII") of over 15 million T-Mobile customers and
15  applicants who applied for services or device financing through September 16, 2015
16  ("Data Breach").

17  WHEREAS, following Defendants' announcement, over 40 individual and
18  class action complaints related to the Data Breach were filed against Defendants, and
19  after the commencement of United States Judicial Panel on Multi District Litigation
20  proceedings (*In Re: Experian / T-Mobile Customer Data Security Breach Litigation*,
21  MDL No. 2676), were voluntarily transferred and consolidated before the Honorable
22  Andrew J. Guilford of the United States District Court for the Central District of
23  California, Southern Division, pursuant to the Court's December 16, 2015
24  consolidation order. (Dkt. 60.) On February 10, 2016, Judge Guilford appointed
25  Tina Wolfson of Ahdoot & Wolfson, PC and Daniel S. Robinson of Robinson

26

27

28  [1]Except as otherwise specified, capitalized words and terms herein shall have the meanings ascribed in Paragraph IV.A. herein entitled "Definitions."

Calcagnie, Inc. as interim co-lead class counsel and appointed a Plaintiffs' Steering Committee consisting of attorneys from several other law firms.  (Dkt. 130.)

WHEREAS, on April 15, 2016, Plaintiffs filed a Consolidated Class Action Complaint, alleging Defendants breached their duties under numerous state and federal laws.  (Dkt. 151.)

WHEREAS, on December 29, 2016, the Court granted in part and denied in part Experian's motion to dismiss the Complaint (Dkt. 213), and Defendants subsequently filed their Answer to the Complaint on February 13, 2017.  (Dkt. 215.) Prior to and since that time, Plaintiffs and Defendants engaged in substantial written and oral discovery, document production, and extensive negotiations regarding the scope of discovery, requiring Plaintiffs and Defendants to meet and confer numerous times and brief several issues before the Court.

WHEREAS, the Parties for months engaged in extensive arm's length settlement negotiations, including unsuccessful private mediations with the Honorable Margaret A. Nagle (Ret.) on March 15, 2017 and with the Honorable Carl J. West (Ret.) on July 28, 2017.  On January 26, 2018, the Parties participated in a Settlement Conference before the Honorable Jay C. Gandhi (Ret.) that resulted in an agreement in principle to resolve the Action.

WHEREAS, pursuant to the terms set forth below, this Agreement resolves all Claims, actions, and proceedings asserted, or that could be asserted, against Defendants arising out of or related to the Data Breach, by or on behalf of members of the Settlement Class herein defined, but excluding the rights of Class Members who opt out from the Settlement Class after receiving notice of this Settlement.

## II.   PLAINTIFFS' CLAIMS AND BENEFITS OF THE SETTLEMENT

WHEREAS, Plaintiffs and Class Counsel have conducted a thorough examination of the law and facts relating to the matters at issue in the Action regarding Plaintiffs' claims and Defendants' potential defenses, including conducting significant discovery, as well as an assessment of the merits of Plaintiffs' expected

arguments in a motion for class certification.  Based on an analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden and expense of such continued litigation, including the risks and uncertainties associated with class certification, a protracted trial and appeal(s), as well as the fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits and protections as expediently as possible.  Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.

WHEREAS, Plaintiffs and Class Counsel believe that the terms set forth in this Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Class.

WHEREAS, Defendants have similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

## III.    FOR SETTLEMENT PURPOSES ONLY

WHEREAS, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only and Defendants specifically deny any and all wrongdoing.  The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by Defendants of (i) the validity of any claim, defense or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, and Defendants that, subject to Court approval, the Action and Plaintiffs' Released Claims shall be finally and fully compromised, settled, and released, and a Judgment and Final Approval Order shall be entered subject to the following terms and conditions of this Settlement Agreement.

### A.    Definitions

As used herein, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

1.    "*Action*" means the consolidated class action captioned *In re Experian Data Breach Litigation*, Case No. 8:15-cv-01592, now pending before the Honorable Andrew J. Guilford in the United States District Court for the Central District of California, Southern Division.

2.    "*Administrative Expenses*" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all Notice Expenses, locating Settlement Class Members, determining the eligibility of any person to be a Settlement Class Member, administrating and processing Settlement Class Member claims and Claim Forms, and administering, calculating, and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

3.    "*Agreement*," "*Settlement Agreement*," and/or "*Settlement*" mean this Class Action Settlement Agreement and Release (including all exhibits and attachments hereto).

4.    "*Approved Claim*" means a claim as evidenced by a Claim Form submitted by a Settlement Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement;

(b) is physically signed or electronically verified by the Settlement Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

5. "*Claimant*" means a Settlement Class Member who submits a Claim Form for a Settlement Payment.

6. "*Claim Form*" means the form attached hereto as **Exhibit A**, as approved by the Court.  The Claim Form must be submitted physically (*via* U.S. Mail) or electronically (*via* the Settlement Website) by Settlement Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website.  The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Settlement Class Member who so requests.

7. "*Claims Deadline*" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date 90 days after the Notice Date.  The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

8. "*Claims Period*" means the period of time during which Settlement Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date 90 days thereafter.

9. "*Class Counsel*" means attorneys Tina Wolfson of Ahdoot & Wolfson, PC and Daniel S. Robinson of Robinson Calcagnie, Inc.

10. "*Class Representatives*" and "*Plaintiffs*" mean Stephen Allen, Richard Parks, Ryan Hamre, Joshua Gonzales, Gwendolyn Crump, Elleen Brazzle, Melissa Merry, Francisco Ojeda, Nora Bohannon, Gregary Johnson, Kashia Johnson, David Ciano, Bradford Daghita, Alison Cochran, Alice Dunscomb, Samantha Manganaris, Veronica Gillotte, David Brown, Stuart Zimmelman, Chris Shearer,

Christiaan Mealey, Gregory Hertik, Allan Sommercorn, Kamil Kuklinski, Charles Yoo, Sergey Barbashov, Kathleen Alcorn, Mary Roberts, Tony George, Ryan Heitz, Gerardus Jansen, Lorenzo Jackson, Eban Liebig, Angelia Fennern, Charles Sallade, Cregan Smith, Giovanni Williams, Dipak Bhuta, Joseph Zubrzycki, Lucio Hernandez, Shivan Bassaw, Jennifer Looney, Darius Clark, Hunter Graham, Philip Popiel, John Reiser, Jennifer Brandabur, Perry Heath, David Lumb, Martha Cebrian-Vega, Mark Hodson, Daisy Hodson, Amjed Ababseh, Martha Schroeder, Jason Shafer, Nathanial Apan, and Jeffrey Gutschmidt.

11.   "***Complaint***" means the Consolidated Class Action Complaint filed in the Action on April 15, 2016 as Docket Number 151.

12.   "***Court***" means the United States District Court for the Central District of California, Southern Division, the Honorable Andrew J. Guilford (or any judge sitting in his stead or to whom the Action may be transferred) presiding.

13.   "***Credit Monitoring and Insurance Services***" means the services to be provided to Participating Settlement Class Members by Identity Guard referred to as the "Individual Total Plan" (*see* www.identityguard.com/plans/total), as further set forth in Paragraph IV.E.75. of this Agreement.

14.   "***Data Breach***" refers to the data breach that is the subject of this Action, announced by Defendants in October 2015, whereby in or around September 2015 Defendants learned that an unauthorized user had accessed the names, addresses, Social Security numbers, dates of birth, identification numbers (*e.g.* driver's license numbers, military ID numbers or passport numbers), and other personally identifiable information of 15,922,099 T-Mobile customers and applicants who applied for T-Mobile USA services or device financing through September 16, 2015.

15.   "***Default Time***" refers to time actually spent by a Settlement Class Member for attempting to remedy or remedying issues fairly traceable to the Data Breach (including time spent on any identity fraud, theft, fraud, bank fees, card

cancellations, credit card fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, credit-related costs related to purchasing credit reports, credit monitoring or identity theft protection, placing a freeze or alert on credit reports, and replacing a driver's license, state identification card, or social security number).

16.    "*Defendants*" means, collectively, Experian Information Solutions, Inc. and Experian Holdings, Inc.

17.    "*Defendants' Counsel*" means attorneys Richard J. Grabowski, John A. Vogt, and Edward S. Chang of Jones Day on behalf of Experian Information Solutions, Inc. and Experian Holdings, Inc.

18.    "*Documented Time*" refers to time actually spent by a Settlement Class Member supported by Reasonable Documentation for attempting to remedy or remedying issues fairly traceable to the Data Breach (including time spent on any identity fraud, theft, fraud, bank fees, card cancellations, credit card fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, credit-related costs related to purchasing credit reports, credit monitoring or identity theft protection, placing a freeze or alert on credit reports, and replacing a driver's license, state identification card, or social security number).

19.    "*Effective Date*" means one business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Judgment; (ii) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on

certiorari with respect to the Judgment.

20.    "***Fee Award and Costs***" means the amount of attorneys' fees and reimbursement of Litigation Costs awarded by the Court to Class Counsel.

21.    "***Final Approval Order and Judgment***" means an order and judgment that the Court enters after the Final Fairness Hearing, which finally approves the Settlement Agreement and dismisses the Action with prejudice and without material change to the Parties' agreed-upon proposed final approval order and judgment attached hereto as **Exhibit B**.

22.    "***Final Fairness Hearing***" or "***Fairness Hearing***" mean the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. §1715(d).

23.    "***Litigation Costs***" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, and settling the Action.

24.    "***Long Form Notice***" means the long form notice of settlement, substantially in the form attached hereto as **Exhibit C**.

25.    "***Net Settlement Fund***" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Taxes, (iii) the expenses associated with procuring Credit Monitoring and Insurance Services on behalf of the Participating Settlement Class Members, (iv) any Service Awards approved by the Court, and (v) any Fee Award and Costs approved by the Court.

26.    "***Non-Profit Residual Recipient***" means Rose Foundation's Consumer Privacy Rights Fund, a 26 U.S.C. 501(c)(3) non-profit organization.

9

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

27. "***Notice Date***" means the date upon which Settlement Class Notice is first disseminated to the Settlement Class, which shall be within 21 days of the Settlement Administrator receiving the Settlement Class List from Defendants.

28. "***Notice Expenses***" means all reasonable costs and expenses expended in the execution of the Notice Plan, including (i) all costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, hosting on the Internet, and publishing the Settlement Class Notice, identifying members of the Settlement Class, and informing them of the Settlement, and (ii) any other reasonable and necessary Notice and Notice related expenses.

29. "***Notice Plan***" means the plan described in this Agreement for disseminating Notice to the Settlement Class Members of the terms of this Agreement and the Fairness Hearing.

30. "***Objection Deadline***" means the date by which Settlement Class Members must file and postmark all required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and / or motion for (i) the Fee Award and Costs, and/or (ii) the Service Awards, which shall be 75 days following the Notice Date.

31. "***Opt-Out Period***" means the period in which a Settlement Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire 75 days following the Notice Date.  The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

32. "***Out-of-Pocket Costs***" means out-of-pocket costs or expenditures supported by Reasonable Documentation that a Settlement Class Member actually incurred, including, but not limited to, unreimbursed losses and consequential expenses (including late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, credit-related costs related to purchasing credit reports, credit monitoring or identity

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

theft protection, costs to place a freeze or alert on credit reports, costs to replace a driver's license, state identification card, or social security number) that are related to any identity theft and fraud fairly traceable to the Data Breach and incurred on or after September 14, 2015.

33. "*Participating Settlement Class Member*" means a Settlement Class Member who submits a valid Claim approved by the Settlement Administrator for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement.

34. "*Parties*" means, collectively, the Class Representatives, Experian Information Solutions, Inc., and Experian Holdings, Inc.

35. "*Person*" means any individual, corporation, trust, partnership, limited liability company or other legal entity and their respective predecessors, successors or assigns.

36. "*PII*" and "*Personally Identifying Information*" mean the names, addresses, Social Security numbers, dates of birth, driver's license numbers, military ID numbers, passport numbers, and other personally identifiable information of Plaintiffs and the Settlement Class.

37. "*Plaintiffs' Counsel*" means Class Counsel and those law firms appointed to the Plaintiffs' Steering Committee by the Court on February 10, 2016.

38. "*Preliminary Approval Order*" means the Court's Order preliminarily approving the Settlement without material modifications to the proposed order or this Agreement that are unacceptable to the Parties. A Proposed Preliminary Approval Order is attached to this Agreement as **Exhibit D**.

39. "*Reasonable Documentation*" means documentation supporting a claim for Out-of-Pocket Costs and/or Documented Time, including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts. Out-of-Pocket Costs and/or Documented Time cannot be documented solely by a personal certification, declaration or affidavit from the Claimant; a Settlement Class

11

Member must provide supporting documentation.

40. "***Released Claims***" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had or have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that have been or could have been asserted in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including but not limited to any state, local or federal regulatory body), regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action.

41. "***Released Parties***" means Defendants and their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing, as well as Plaintiffs and Class Counsel. Each of the Released Parties may be referred to individually as a "Released Party."

42. "***Releasing Parties***" means Plaintiffs, any Person in the Settlement Class, including those submitting or not submitting a claim for a

Settlement Benefit, and each of their respective spouses, children, heirs, associates, co-owners, attorneys, agents, administrators, executors, devisees, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, employees or affiliates.  Each of the Releasing Parties may be referred to individually as a "Releasing Party."

43.    "*Request for Exclusion*" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class.

44.    "*Service Awards*" means the amount of remuneration to be paid to the Class Representatives in recognition of their efforts on behalf of the Settlement Class, in an amount to be ordered by the Court, as set forth in Section IV.K.

45.    "*Settlement Administrator*" means the qualified third-party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Notice.  The Parties agree to recommend that the Court appoint KCC, LLC as Settlement Administrator to: design, consult on, and implement the Notice and related requirements of this Agreement; implement the Notice, the Settlement Website, the submission and review of Claim Forms, and related requirements of this Agreement, subject to the Court's approval.

46.    "*Settlement Benefits*" means the total value of benefits Settlement Class Members receive pursuant to this Agreement, including non-monetary benefits and relief and Administrative Expenses.

47.    **"Settlement Class"** means and includes the 15,922,099 T-Mobile USA customers or applicants who are identified on the Settlement Class List, including Plaintiffs, whose PII was stored on Experian Information Solutions, Inc.'s and Experian Holdings, Inc.'s server that was accessed by an unauthorized user in the Data Breach.  Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendants, their subsidiaries,

13

parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

48. "*Settlement Class List*" means the list generated by Defendants containing the last known name and mailing address for all persons that fall under the definition of the Settlement Class, which Defendants will provide to the Settlement Administrator within seven (7) days of the Preliminary Approval Order.

49. "*Settlement Class Member*" or "*Class Member*" means a Person who falls within the definition of the Settlement Class and who does not submit a valid Request for Exclusion prior to the expiration of the Opt-Out Period.

50. "*Settlement Class Notice*" or "*Notice*" means the form of Court-approved notice of this Agreement that is disseminated to the Settlement Class. The Settlement Class Notice shall consist of the Summary Notice and the Long Form Notice.

51. "*Settlement Fund*" means the sum of twenty-two million dollars and no cents ($22,000,000.00), to be paid by Defendants as specified in Paragraphs IV.D. of this Agreement, including any interest accrued thereon after payment.

52. "*Settlement Payment*" means any payment to be made to any Participating Settlement Class Member on Approved Claims pursuant to Section IV.E. of this Agreement.

53. "*Settlement Website*" means the Internet website, with the following URL address, to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms:

www.ExpDataBreachSettlement.com.

54.    "*Summary Notice*" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit E**.

55.    "*Taxes*" means (i) any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

56.    "*Unknown Claims*" shall have the meaning set forth in Paragraph IV.C.62. of this Agreement.

**B.    Required Events and Cooperation by Parties**

57.    Preliminary Approval.    Class Counsel shall submit this Agreement to the Court and shall move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit D**.

58.    Cooperation.  The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement.

59.    Certification of the Settlement Class.    For purposes of this Settlement only, Plaintiffs and Defendants stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval

15

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Defendants reserve the right to contest class certification for all other purposes. Plaintiffs and Defendants further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

60. <u>Final Approval</u>. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Fairness Hearing; within a reasonable time after the Claims Deadline, Objection Deadline, and Opt-Out Period; and at least 90 days after Defendants notify the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**C. Releases**

61. <u>The Release</u>. Upon the Effective Date, and in consideration of the Settlement Benefits described herein, each Releasing Party shall be deemed to have released, acquitted, and forever discharged Defendants and each of the Released Parties from any and all Released Claims.

62. <u>Unknown Claims</u>. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiffs, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

63.  <u>Exclusive Remedy</u>.  This Agreement shall be the sole and exclusive remedy of the Releasing Parties against any of the Released Parties relating to any and all Released Claims.  Upon the entry of the Judgment, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim(s) against any of the Released Parties in any court, arbitration, tribunal, forum or proceeding.

64.  <u>Jurisdiction of the Court</u>.  The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the above-captioned Action, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations of this Agreement.

**D.     Settlement Fund**

65.     Deposits.  Defendants agree to make a payment of Twenty-Two Million Dollars and No Cents ($22,000,000.00) and deposit that payment into the Settlement Fund as follows: (i) Defendants shall pay Ten Million Dollars and No Cents ($10,000,000.00) into the Settlement Fund ten (10) Business Days after the Court enters the Preliminary Approval Order to cover reasonable costs associated with the Notice Plan and any other Administrative Expenses incurred prior to entry of the Final Approval Order and Judgment; and (ii) Defendants shall pay an additional Twelve Million Dollars and No Cents ($12,000,000.00) into the Settlement Fund ten (10) Business Days after the Court enters the Final Approval Order and Judgment.  For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendant's liability shall not exceed Twenty-Two Million Dollars and No Cents ($22,000,000.00) absent an express written agreement between the Parties to the contrary.

66.     Custody of Settlement Fund.  The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated or cancelled.

a.     In the event this Settlement Agreement is voided, terminated or cancelled for any reason: (i) the Class Representatives and Class Counsel shall have no obligation to repay any of the Administrative Expenses that have been paid or incurred in accordance with Section IV.F.; (ii) any amounts remaining in the Settlement Fund after payment of Administrative Expenses paid or incurred in accordance with Section IV.F. of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to the Defendants who paid the Settlement Fund in the same proportions as their respective contributions to the Settlement Fund; and (iii) no other person or entity shall have

any further claim whatsoever to such amounts.

67. <u>Non-Reversionary.</u>  This Settlement is not a reversionary settlement.  As of the Effective Date, all rights of Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled or terminated, as described Paragraph IV.D.66 and Section IV.J in this Agreement.  In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Defendants, or each of them.

68. <u>Use of the Settlement Fund.</u>  As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Awards; (iv) any Fee Award and Costs; (v) the cost of the Credit Monitoring and Insurance Services; (vi) any Out-of-Pocket Costs Payments, Documented Time Payments, and Default Time Payments pursuant to the terms and conditions of Paragraph IV.E.75. of this Agreement; and (viii) any other Settlement Benefits.

69. <u>Financial Account.</u>  The Settlement Fund shall be an account established and administered by the Settlement Administrator at a financial institution approved by Class Counsel and Defendants, and, shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq*.

70. <u>Payment/Withdrawal Authorization.</u>  No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court.  Class Counsel may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court.  The Settlement Administrator shall provide Class Counsel and Defendants with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven Business Days prior to making such withdrawal or payment.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

71. <u>Payments to Class Members.</u> The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Settlement Class Members pursuant to this Agreement. The Settlement Administrator and Class Counsel are responsible for communicating with Settlement Class Members regarding the distribution of the Settlement Fund and amounts paid under the Settlement.

72. <u>Treasury Regulations & Fund Investment.</u> The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

73. <u>Taxes.</u> All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their

counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).  The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

74.     <u>Limitation of Liability.</u>

a.     The Defendants and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. Defendants also shall have no obligation to communicate with Class Members and others regarding amounts paid under the Settlement.

b.     The Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination,

administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

            c.    The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## E.    Settlement Benefits

        75.    Each Participating Settlement Class Member may qualify for the following:

            a.    <u>Credit Monitoring and Insurance Services.</u>  Each Participating Settlement Class Member will receive two years of the Credit Monitoring and Insurance Services. The Credit Monitoring and Insurance Services will be provided by Identity Guard and is the "Individual Total Plan" (*see* www.identityguard.com/plans/total). In the event that a Participating Settlement Class Member already maintains a subscription for the Individual Total Plan with Identity Guard, their service will be extended by two years for no additional charge. The Credit Monitoring and Insurance Services will provide certain services to each Participating Settlement Class Member, including: (i) Up to $1 Million Dollars reimbursement insurance from AIG covering losses due to identity theft, stolen

funds, *etc.*; (ii) three bureau credit monitoring providing notice of changes to the Participating Settlement Class Member's credit profile; (iii) real time instant authentication alerts when someone attempts to make a change to the Participating Settlement Class Member's personal account information within Identity Guard's network; (iv) LexisNexis Authentication Alerts utilizing LexisNexis' database of legal, governmental and newsworthy incidents (for example, the system searches payday-loan providers and court records, and also monitors the top ten largest U.S. financial institutions, for attempted or actual fraudulent use of the Participating Settlement Class Member's information); (v) Dark Web Monitoring providing notification if the Participating Settlement Class Member's information such as Social Security number, credit card numbers, financial account numbers, and health insurance number are found on the Dark Web; (vi) threat Alerts powered by IBM "Watson" providing proactive alerts about potential threats relevant to the Participating Settlement Class Member found by IBM Watson's AI, for instance: breaches, phishing scams, and malware vulnerabilities; (vii) customer support and victim assistance provided by Identity Guard; (viii) anti-phishing and safe Apps for iOS & Android Mobile devices; and (ix) safe browsing software for PC & Mac to help protect the Participating Settlement Class Member's computer against malicious content with an add-on for Safari, Chrome, and Firefox web browsers that delivers proactive malware protection by blocking various malware delivery channels including phishing, malvertisements, and Flash (the extension also blocks content and tracking cookies to help protect personal information).

    b. <u>Out-of-Pocket Costs Payment</u>.  In addition to the Credit Monitoring and Insurance Services, each Participating Settlement Class Member may submit a claim for up to $10,000.00 for reimbursement of Out-of-Pocket Costs ("Out-of-Pocket Costs Payment").  To receive an Out-of-Pocket Costs Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to

receive the Out-of-Pocket Costs Payment benefit; (ii) an attestation regarding any actual and unreimbursed Out-of-Pocket Costs; and (iii) Reasonable Documentation that demonstrates the Out-of-Pocket Costs to be reimbursed.

        c.    <u>Documented Time Payment</u>.  In addition to the Credit Monitoring and Insurance Services and Out-of-Pocket Costs Payment, each Participating Settlement Class Member may submit a claim for up to seven hours of Documented Time at $20 per hour ("Documented Time Payment"). To receive a Documented Time Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Time Payment benefit; (ii) an attestation regarding the Documented Time; and (iii) Reasonable Documentation that demonstrates their Documented Time.   In the event a Participating Settlement Class Member's claim for Documented Time is rejected by the Settlement Administrator, the Participating Settlement Class Member will be entitled to receive a Default Time Payment (defined in and pursuant to the terms and condition of Paragraph IV.E.75. of this Agreement).

        d.    <u>Default Time Payment</u>.  In addition to Credit Monitoring and Insurance Services and Out-of-Pocket Costs Payment, each Participating Settlement Class Member may submit a claim for two hours of Default Time at $20 per hour ("Default Time Payment").   To receive a Default Time Payment, a Settlement Class Member must submit a valid Claim Form to the Settlement Administrator.  Class Members will be notified in the Long Form Notice that the act of submitting a Claim Form to the Settlement Administrator (via U.S. Mail or through the Settlement Website), constitutes a representation by the Participating Settlement Class Member that they expended time in addressing, attempting to remedy, or remedying issues fairly traceable to the Data Breach.  A Participating Settlement Class Member may not receive Default Time in addition to Documented Time.  A valid claim for Documented Time rejected by the Settlement Administrator will

24

automatically qualify for a Default Time Payment.

76. _PayPal._ Participating Settlement Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement _via_ PayPal. In the event Participating Settlement Class Members do not exercise this option, they will receive their given Settlement Payment _via_ a physical check sent by U.S. Mail.

77. _Deadline to File Claims._ Claim Forms for Credit Monitoring and Insurance Services, Out-of-Pockets Costs, Documented Time and/or Default Time must be received within 90 days after the Notice Date.

78. _The Settlement Administrator._ The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete, and to what extent a Claim Form electing to receive an Out-of-Pocket Costs Payment and/or Documented Time Payment reflects valid Out-of-Pocket Costs and/or Documented Time. Any Out-of-Pocket Costs or Documented Time shall be deemed fairly traceable to the Data Breach by the Settlement Administrator if the Out-of-Pocket Costs or Documented Time occurred on or after September 14, 2015, and the Settlement Administrator determines the Out-of-Pocket Costs and Documented Time incurred are related to the type of PII disclosed in the Data Breach. To the extent, the Settlement Administrator determines a claim for an Out-of-Pocket Costs Payment and/or Documented Time Payment submitted through a Claim Form is deficient, within ten (10) days of making such a determination, the Settlement Administrator shall notify the Claimant of the deficiencies and that Claimant shall have thirty (30) days to cure the deficiencies and re-submit the claim. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim such that it reflects valid Out-of-Pocket Costs and/or Documented Time that are fairly traceable to the Data Breach. If the Claimant fails to cure the deficiency, the Settlement Administrator shall have no obligation to make the Out-of-Pocket Costs Payment or Documented Time Payment to that Claimant. If

the Claimant fails to cure the deficiency, the Settlement Administrator shall treat the claim for Documented Time as a claim for Default Time.

79. <u>Timing of Settlement Benefits.</u>  Within 90 days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the provisions of Paragraph IV.F.88. of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to Participating Settlement Class Members.  Within 30 days of the Effective Date, the Settlement Administrator shall make best efforts to provide Participating Settlement Class Members with enrollment instructions for the Credit Monitoring and Insurances Services.

80. <u>Order of Distribution of Funds.</u>  The Settlement Administrator must first use the available Net Settlements Funds to make all Out-of-Pocket Costs Payments.  The Settlement Administrator shall then utilize the remaining funds to make all Documented Time Payments and Default Time Payments.  Settlement Class Members with Approved Claims who receive an Out-of-Pocket Costs Payment, a Documented Time Payment, and/or a Default Time Payment, by physical check, shall have 60 days following distribution to deposit or cash their cash benefit check. Participating Settlement Class Members who receive the Credit Monitoring and Insurance Services shall have 60 days following distribution of the enrollment instructions to sign up for the services.

81. <u>Pro-Rata Contingencies</u>.

a. In the event that the aggregate amount of all Out-of-Pocket Costs Payments exceeds the total amount of the Net Settlement Fund, then the value of the Out-of-Pocket Costs Payment to be paid to each Participating Settlement Class Member shall be reduced on a pro rata basis, such that the aggregate value of all Out-of-Pocket Payments does not exceed the Net Settlement Fund.  In such an event, no Net Settlement Funds will be distributed to Approved Claims with Documented Time or Default Time.

b.      In the event that (i) the aggregate amount of all Out-of-Pocket Costs Payments does not exceed the Net Settlement Fund, and (ii) the aggregate amount of all Documented Time Payments and Default Time Payments is greater than the Net Settlement Fund, less the aggregate amount of the Out-of-Pocket Costs Payments, then the value of each Participating Settlement Class Members' Documented Time Payment and Default Time Payment shall be reduced on a pro rata basis, equally, such that the aggregate value of all Out-of-Pocket Costs Payments, Documented Time Payment, and Default Time Payments does not exceed the Net Settlement Fund.  If the Default Time Payment to each Participating Settlement Class Member receiving that benefit were to be less than $3.00, no Default Time Payments will be made and the Net Settlement Funds for Default Time Payments will instead be used to provide additional months of Credit Monitoring and Insurance Services to all Participating Settlement Class Members.

c.      All pro rata determinations required by this Paragraph shall be performed by the Settlement Administrator.

82.    <u>Residual Funds.</u>   To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement Payments to the Participating Settlement Class Members, a subsequent Settlement Payment will be evenly made to all Participating Settlement Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00).  The distribution of this remaining Net Settlement Fund shall continue until the average check amount in a distribution is less than Three Dollars and No Cents ($3.00).  In the event that a subsequent Settlement Payment made to Participating Members would exceed Two Hundred and Fifty Dollars and No Cents ($250.00), then the Parties will seek guidance from the Court on how to disburse the remaining Net Settlement Fund.  If the average check amount in a distribution would be less than Three Dollars and No Cents ($3.00), the remaining Net Settlement Fund will be used

to extend the Credit Monitoring and Insurance Services to Participating Settlement Class Members receiving that benefit for as long as possible. Any amount remaining in the Net Settlement Fund after said extension is accomplished, if any, shall be distributed to the Non-Profit Residual Recipient.

83. <u>Returned Checks.</u> For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Settlement Payment.

84. <u>Residue of Settlement Fund.</u> No portion of the Settlement Fund shall revert or be repaid to Defendants after the Effective Date. Any residual funds remaining in the Net Settlement Fund, after all Administrative Expenses, Taxes, costs associated with the Credit Monitoring and Insurance Services, payment to Approved Claims have been paid (or set aside for such purposes), shall be distributed to Non-Profit Residual Recipient.

85. <u>Additional Settlement Benefits to the Class.</u> The Parties agree, and hereby stipulate, that Plaintiffs and Class Counsel were the catalyst and predominant factor for remedial measures that Defendants will take or have already undertaken, and which Defendants will continue to implement, as described in **Exhibit F** to this Agreement.

86. <u>Total Settlement Value.</u> The actual value of the Settlement Benefits provided to the Class is $33,700,000.00 plus an additional $7,638,786.22 for every one-tenth of one percent (0.1%) of Class Members receiving Credit

Monitoring and Insurance Services,[2] but before excluding the cost of Credit Monitoring and Insurance Services.   The Settlement Value includes the $22,000,000.00 Settlement Fund and the $11,700,000.00 minimum value of remedial efforts listed in Paragraph IV.E.85 and the Credit Monitoring and Insurance Services detailed in Paragraph IV.E.75.

      **F.**    **Settlement Administration**

           87.    <u>Submission of Claims.</u>

               a.    <u>Submission of Electronic and Hard Copy Claims</u>. Settlement Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website, or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator.  Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.   The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and is not required to, but may, provide Claimants the ability to cure defective claims, unless otherwise noted in this Agreement.

               b.    <u>Review of Claim Forms</u>.  The Settlement Administrator will review Claim Forms submitted by Settlement Class Members to determine whether they are eligible for a Settlement Payment.

           88.    <u>Settlement Administrator's Duties.</u>

               a.    <u>Cost Effective Claims Processing</u>.   The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner, and calculate Settlement Payments in accordance with this Agreement.

---

[2] The Credit Monitoring and Insurance Services is valued at $19.99 per month for two years for each Participating Settlement Class Member receiving that benefit. *See* www.identityguard.com/plans/total.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1          b.      <u>Dissemination of Notices</u>.  The Settlement Administrator

2 shall disseminate the Settlement Class Notice as provided for in this Agreement.

3          c.      <u>Maintenance of Records</u>.  The Settlement Administrator

4 shall maintain reasonably detailed records of its activities under this Agreement. The

5 Settlement Administrator shall maintain all such records as required by applicable

6 law in accordance with its business practices and such records will be made available

7 to Class Counsel and Defendants' Counsel upon request.   The Settlement

8 Administrator shall also provide reports and other information to the Court as the

9 Court may require.  Upon request, the Settlement Administrator shall provide Class

10 Counsel and Defendants' Counsel with information concerning Notice,

11 administration, and implementation of the Settlement.   Without limiting the

12 foregoing, the Settlement Administrator shall:

13          i.      Receive Requests for Exclusion from Settlement

14 Class Members and provide Class Counsel and Defendants' Counsel a copy thereof

15 no later than five (5) days following the deadline for submission of the same.  If the

16 Settlement Administrator receives any Requests for Exclusion or other requests from

17 Settlement Class Members after expiration of the Opt-Out Period, the Settlement

18 Administrator shall promptly provide copies thereof to Class Counsel and

19 Defendants' Counsel.

20          ii.     Provide weekly or other periodic reports to Class

21 Counsel and Defendants' Counsel that include, without limitation, reports regarding

22 the number of Claim Forms received, the number of Claim Forms approved by the

23 Settlement Administrator, and the categorization and description of Claim Forms

24 rejected by the Settlement Administrator.  The Settlement Administrator shall also,

25 as requested by Class Counsel or Defendants' Counsel and from time to time, provide

26 the amounts remaining in the Net Settlement Fund.

27          iii.    Make available for inspection by Class Counsel and

28 Defendants' Counsel the Claim Forms and any supporting documentation received

30

by the Settlement Administrator at any time upon reasonable notice.

iv.    Cooperate with any audit by Class Counsel or Defendants' Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

d.    Creation and Maintenance of Settlement Website.    The Settlement Administrator shall create the Settlement Website.    The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative complaint in the Action.    The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.    The Settlement Website shall also allow for submission of Requests of Exclusion electronically through the Settlement Website.

e.    Requests for Additional Information.    In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Participating Settlement Class Member.

f.    Timing of Settlement Benefits.    The Settlement Administrator shall comply with Paragraph 79 herein and shall make all Settlement Payments contemplated in Paragraphs IV.E.75. of this Agreement by either Pay Pal or check and send them to Participating Settlement Class Members within 90 days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the provisions of Paragraph IV.F.89. of this Agreement, whichever date is later.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

### G.     Settlement Class Notice

89.     <u>Direct Notice</u>.  Within seven days after the date of the Preliminary Approval Order, Defendant shall provide the Settlement Class List to the Settlement Administrator.

90.     Because the Settlement Class List will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Defendants, Defense Counsel, and Class Counsel and will ensure that any information provided to it by Settlement Class Members, Class Counsel, Plaintiffs' Counsel, Defense Counsel, or Defendants, including the Class Member Information, will be secure and used solely for the purpose of effecting this Settlement.

91.     Within 21 days after receipt of Settlement Class List, the Settlement Administrator shall disseminate the Summary Notice to the members of the Settlement Class *via* U.S. Mail.  Settlement Class Members may simply mail the Claim Form attached to the Summary Notice, or use the unique class member identifier contained in the Notice to log on the Settlement Website and either download a Claim Form or submit the Claim Form online.   The Settlement Administrator shall use other reasonable fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Settlement Class Members, and (ii) submission of more than one Claim Form per person.  In the event a Claim Form is submitted without a unique class member identifier the Settlement Administrator shall employ reasonable effort to ensure that the Claim is valid.

92.     <u>Email Reminder.</u>  For any Settlement Class Member for whom the Settlement Administrator has an email address, and who has not submitted a valid Claim Form, the Settlement Administrator shall transmit periodic email reminders of the opportunity to file a Claim Form prior to the Claim Deadline.

93.    <u>Settlement Website</u>.  Prior to any dissemination of the Summary Notice, within 21 days after Preliminary Approval of this Agreement, including the form and content of the Settlement Class Notice, and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement.

94.    <u>Contents of the Long Form Notice</u>.  The Long Form Notice shall, *inter alia*, (i) specify the deadline for Settlement Class Members to submit Requests for Exclusion from, object to, or otherwise comment upon the Settlement by day, month, and year, and state that any objection to this Agreement, and any papers submitted in support of said objection, will only be considered by the Court at the Fairness Hearing if, on or before the deadline to opt-out of, object to, or otherwise comment upon the Settlement, the Person making the objection files copies of such papers he or she proposes to submit for consideration at the Fairness Hearing with the Clerk of the Court and delivers copies of the same by mail, hand, or overnight delivery service to both Class Counsel and Defendants' Counsel; (ii) contain instructions on how to submit a Claim Form; (iii) note the deadline for Settlement Class Members to submit Claim Forms; and (iv) note the date, time and location of the Fairness Hearing.  A copy of the Long Form Notice is attached hereto as **Exhibit C** hereto.

### H.    Opt-Out Procedures

95.    Any Settlement Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period.  To be valid, the Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period.  In the event the Settlement Class Members submit a Request for Exclusion to the Settlement Administrator *via* US Mail such Request for Exclusion must be in writing and must identify the case name *In re Experian Data Breach Litigation*, U.S.D.C. Case No. 8:15-cv-01592; state the name, address and

telephone number of the Settlement Class Members seeking exclusion; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *In re Experian Data Breach Litigation*, U.S.D.C. Case No. 8:15-cv-01592." Any Person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement.  No Person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

## I.     Objection and Comment Procedures

96.     Any Settlement Class Member may comment in support of or in opposition to the Settlement and may do so in writing, in person, or through counsel, at his or her own expense, at the Fairness Hearing.  Except as the Court may order otherwise, no objection to the Settlement shall be heard, and no papers, briefs, pleadings, or other documents submitted by any objector shall be received and considered by the Court unless such objector mails to the Court a written objection with the caption *In re Experian Data Breach Litigation*, U.S.D.C. Case No. 8:15-cv-01592, that includes:  (i) the Settlement Class Member's full name, current mailing address,  and telephone number; (ii) a signed statement that he or she believes himself or herself to be a member of the Settlement Class; (iii) the specific grounds for the objection; (iv) all documents or writings that the Settlement Class Member desires the Court to consider; and (v) a statement regarding whether they (or counsel of their choosing) intend to appear at the Fairness Hearing.  All written objections must be postmarked no later than the Objection Deadline. Any objector who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

**J.     Modification or Termination of the Agreement**

97.     The Class Representatives collectively (on behalf of the Settlement Class Members) and Defendants shall have the right to terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") within seven (7) days of: (1) the Court's refusal to grant Preliminary Approval of the Agreement in any material respect; or (2) within 14 days of any of the following: (i) the Court's refusal to enter the Judgment in any material respect, or (ii) the date upon which the Judgment is modified or reversed in any material respect by any appellate or other court.

98.     In addition, the terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

99.     In the event that a party exercises his/her/its option to withdraw from, rescind, revoke, and/or terminate this Agreement pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of Paragraphs IV.D.66. herein) and shall have no legal effect and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of the Action), and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

100.   Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the

Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

**K.     Service Awards**

101.   Class Representatives and Class Counsel may seek Service Awards to be awarded to the Class Representatives.  Any requests for such awards must be filed at least 21 days before the deadline for filing objections to the Settlement.  Defendants agree not to oppose requests for Service Awards to the extent they do not exceed Two Thousand Five Hundred and No Cents ($2,500.00) per Class Representative.

102.   The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund.  Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, five (5) Business Days after the Effective Date.

103.   In the event the Court declines to approve, in whole or in part, the payment of the Service Awards in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of Service Awards shall constitute grounds for cancellation or termination of this Agreement.

**L.     Fee Award and Costs**

104.   Class Counsel may file a motion for an award of the Fee Award and Costs to be paid from the Settlement Fund.  The motion must be filed at least 21 days before the deadline for filings objections to the Settlement.  Defendants agree not to oppose a request for an award of attorneys' fees that does not exceed Ten

Million and Five Hundred Thousand Dollars and No Cents ($10,500,000.00) and Litigation Expenses.  Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to Defendants and the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs shall be paid by the Settlement Administrator, in the amount approved by the Court, 5 Business Days after the Effective Date.

105.   Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' Counsel and any other attorneys for Plaintiffs.  Defendants shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

106.   The Parties negotiated the maximum amount of the attorneys' fees and expenses to be sought by Class Counsel under the supervision of Judge Gandhi (Ret.) and only after reaching an agreement upon the relief provided to the Settlement Class.

107.   The Settlement is not conditioned upon the Court's approval of the Fee Award and Costs or the Service Awards.

**M.   Judgment**

108.   This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment, which will grant final approval of this Agreement and among other things shall:

a.   Dismiss the Action with prejudice and without costs, except as contemplated by this Agreement;

b.   Decree that neither the Judgment nor this Agreement constitutes an admission by the Defendants of any liability or wrongdoing whatsoever;

c.   Bar and enjoin all Releasing Parties from asserting against any of the Released Parties any and all Released Claims;

d. Release each Released Party from any and all Released Claims;

e. Determine that this Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the members of the Settlement Class; and

f. Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants and all Participating Settlement Class Members, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment.

**N. Representations and Warranties**

109. Each signatory to this Agreement represents and warrants (i) that he, she, or it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein, (ii) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (iii) that this Agreement has been duly and validly executed and delivered by each signatory, and constitutes its legal, valid and binding obligation.

110. Defendants have provided to Plaintiffs the Settlement Class List containing the list of persons to whom Defendants provided notice of the Data Breach, and represent and warrant such information is true and correct to the best of Defendants' knowledge.

**O. No Admission of Liability or Wrongdoing**

111. This Agreement, whether or not consummated, and any negotiations, proceedings or agreements relating to this Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

a. Shall not be admissible in any action or proceeding for any

38

reason, other than an action to enforce the terms hereof;

    b. Shall not be described as, construed as, offered or received against the Released Parties as evidence of and/or deemed to be  evidence of any presumption, concession, or admission by any Released Party of the truth of any fact alleged by Plaintiffs; the validity of any claim that has been or could have been asserted in the Action or in any litigation; the deficiency of any defense that has been or could have been asserted in the Action or in any  litigation; or any liability, negligence, fault, or wrongdoing of any of the Released Parties; and

    c. Shall not be described as or construed against the Released Parties, Plaintiffs, or any Settlement Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been awarded to said Plaintiffs or the members of the Settlement Class after trial.

  **P.** **Miscellaneous Provisions**

  112. <u>Entire Agreement</u>.  This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties.  Each of the Parties to this Agreement acknowledges that no other Party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation, or warranty, express or implied, not contained in this Agreement to induce either party to execute this Agreement.  Neither Party is relying on the other Party or their agents or attorneys and rather each Party decided to resolve the dispute in their own independent determination and judgment.  This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval.  The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class

1  Notice to the Settlement Class.

2       113.  <u>Governing Law</u>.  This Agreement shall be construed under and

3  governed by the laws of the State of California, applied without regard to laws

4  applicable to choice of law.

5       114.  <u>Execution by Counterparts</u>.  This Agreement may be executed by

6  the Parties in one or more counterparts, each of which shall be deemed an original

7  but all of which together shall constitute one and the same instrument.  Facsimile

8  signatures or signatures sent via email shall be treated as original signatures and shall

9  be binding.

10       115.  <u>Notices</u>.  Any notice, instruction, application for Court approval

11  or application for Court orders sought in connection with this Agreement or other

12  document to be given by any Party to any other Party shall be in writing and delivered

13  personally or sent by registered or certified mail, postage prepaid, if to Defendants to

14  the attention of Defendants' Counsel, or if to Plaintiffs or the Settlement Class to

15  Class Counsel, or to other recipients as the Court may specify. All notices to the

16  Parties or counsel required by this Agreement shall be made in writing and

17  communicated by mail and email to the following addresses:

| If to Plaintiffs or Class Counsel: | If to Defendants or Defendant's Counsel: |
|---|---|
| Tina Wolfson<br>*twolfson@ahdootwolfson.com*<br>Robert Ahdoot<br>*rahdoot@ahdootwolfson.com*<br>AHDOOT & WOLFSON, PC<br>10728 Lindbrook Drive<br>Los Angeles, CA 90024<br><br>Daniel S. Robinson<br>*drobinson@robinsonfirm.com*<br>ROBINSON CALCAGNIE INC.<br>19 Corporate Plaza Dr.<br>Newport Beach, CA 92660 | Richard J. Grabowski<br>*rgrabowski@JonesDay.com*<br>John A. Vogt<br>*jvogt@JonesDay.com*<br>Edward S. Chang<br>*echang@JonesDay.com*<br>JONES DAY<br>3161 Michelson Drive<br>Suite 800<br>Irvine, CA 92612 |

26       116.  <u>Binding Effect</u>.  This Agreement shall be binding upon and inure

27  to the benefit of the heirs, successors, assigns, executors, and legal representatives of

28  each of the Parties hereto.

117.   <u>Construction</u>.  For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

118.   <u>Severability</u>.  The waiver or breach by one Party of any provision of this Agreement shall not be deemed a waiver or breach of any other provision of this Agreement.

119.   <u>Integration of Exhibits</u>.  The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement and are hereby incorporated and made a part of the Agreement.

120.   <u>Headings</u>.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

121.   <u>Taxability</u>.  Defendants do not make and have not made any representations regarding the taxability of any Settlement Benefit, Fee Award, and/or any other payments made pursuant to this Agreement.  Plaintiffs, Class Representatives, and Class Counsel (on behalf of themselves and the Settlement Class Members) represent that that they have not relied upon any representation of any of the Defendants or their attorneys or the Settlement Administrator on the subject of taxability of any consideration provided under this Agreement.  Plaintiffs, Class Representatives, and Class Counsel (on behalf of themselves and the Settlement Class Members) understand and expressly agree that any income or other tax, including any interest, penalties or other payment obligations ultimately determined to be payable from or with respect to any Settlement Benefit, Fee Award, and/or any other payments made pursuant to this Agreement, as well as any state or federal reporting obligations imposed on them arising therefrom or attributable thereto, shall not be Defendants' responsibility.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

122.  <u>Counterparts.</u> The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

123.  <u>Deadlines.</u> If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

124.  <u>Dollar Amounts.</u> All dollar amounts are in United States dollars, unless otherwise expressly stated.

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below:

Dated: November 9, 2018

JONES DAY

By: _____
Richard J. Grabowski
Richard J. Grabowski
John A. Vogt
Edward S. Chang

*Attorneys for Defendants*
*EXPERIAN HOLDINGS, INC. and*
*EXPERIAN INFORMATION*
*SOLUTIONS, INC.*

1    Dated:  November 9, 2018               ROBINSON CALCAGNIE, INC.

2

3                                           By:
                                               Daniel S. Robinson
4

5    Dated:  November 9, 2018               AHDOOT & WOLFSON, PC

6

7                                           By:
                                               Tina Wolfson
8

9                                           *Interim Co-Lead Counsel for the Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1    Dated:  November 9, 2018              ROBINSON CALCAGNIE, INC.

2

3                                         By:_____
                                              Daniel S. Robinson

4

5    Dated:  November 9, 2018              AHDOOT & WOLFSON, PC

6

7                                         By:_____
                                              Tina Wolfson

8

9                                         *Interim Co-Lead Counsel for the Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**