UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Melissa Kunig | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER REGARDING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 309) AND MOTION FOR ATTORNEY'S FEES (DKT. 296)**

The proposed class action settlement ("Settlement") resolves claims regarding a data breach that Defendants Experian Information Solutions, Inc. and Experian Holdings, Inc. (together, "Experian") announced on October 1, 2015. The motion is unopposed by class counsel, though individual class members filed objections. A Final Fairness Hearing took place on **May 6, 2019** at **10:00 a.m.** The Court GRANTS Plaintiffs' motions for final approval of settlement and attorney's fees. (Dkt. Nos. 309.)

1. **BACKGROUND**

On October 1, 2015, Experian announced that it "experienced an unauthorized acquisition of information from a server" affecting more than 15 million consumers in the United States. (Motion for Final Approval of Settlement ("Mot.") (Dkt. 309), 2.) Over 40 complaints were filed across the country, and eventually all cases were transferred and consolidated in this Court. (Dkt. 60.)

Plaintiffs allege that the data breach compromised their personal information, including names, addresses, Social Security numbers, military ID numbers, and passport numbers. Their suits included claims for failing to implement and maintain adequate data security practices to safeguard personally identifiable information (PII), failing to detect the breach in a timely manner, failing to disclose information to Class Members, and failing to provide adequate and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

timely notice of the breach. (Mot., 4.) These claims were brought under the Fair Credit and Reporting Act (FCRA) and 44 different state statutes. (*Id.*)

The case proceeded through extensive discovery, and Plaintiffs drafted a motion for class certification, which they shared with Defendants' counsel. (Mot,, 5-6.) Arms-length settlement negotiations began during discovery and continued through multiple mediations and conferences. On January 26, 2018, the parties participated in an all-day settlement conference before Magistrate Judge Jay C. Ghandi and reached an agreement in principal. (Wolfson Decl. ¶ 39.) Since then, the parties have exchanged several drafts of the Settlement Agreement and have negotiated many details of settlement, including notice to the class. (Mot., 7.) Class counsel diligently solicited and compared bids from third party administrators and credit monitoring providers to ensure the best deal for the class. (Mot., 8.)

**2. PROPOSED SETTLEMENT**

    **2.1    Settlement Value**

The total value of the Settlement is likely to exceed $170 million, counting Experian's internal remedial measures. (Mot. at 14.) Broken down, the Settlement amount consists of $22 million for the non-reversionary Settlement Fund, $11.7 million for Experian's remedial measures implemented as a result of this lawsuit, and $7,638,738.72 for every 0.1% of Class Members who submit claims to receive Credit Monitoring and Insurance. (Motion for Preliminary Approval (Dkt. 286-1), 20-21.) Based on current claims figures, the Credit Monitoring and Insurance Services will add a value of at least $138.8 million. (Mot., 14.)

The $22 million Settlement Fund provides for the following remedies, among others:

- Two years of an enhanced version of Identity Guard's Individual Total Plan for Class Members who submit claims;
- Cash payments for Class Members' documented out-of-pocket costs and time spent due to the Data Breach;
- $2,500 service awards for each class representative; and
- Attorney's fees and costs as approved by the Court, which class counsel agreed would not exceed $10.5 million.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

(Mot., 9-12.) The Settlement Fund gives cash of about $1.47 to each person, using a class size of 14,931,074 unique Class Members (post-deduplication). (Mot. at 9, 12; Lucchesi Decl. ¶ 2.)

The $11.7 million set aside for remedial and enhanced security measures at Experian would fund, among other things:

- Implementation of a Security First Program;
- Hiring of 60 additional full-time employees; and
- Heightened encryption throughout Experian's network and user database.

*See* S. Thompson Decl. ¶¶ 8-9; Robinson Decl. ¶¶ 6, 40; Wolfson Decl. ¶¶ 7, 41.

### 2.2   Class Definition

Because the Settlement comes before class certification, it also provides a class definition for settlement purposes and names class representatives, class counsel, and a settlement administrator. Plaintiffs propose the following Settlement Class:

> The 14,931,074 T-Mobile USA customers or applicants who are identified on the Settlement Class List, including Plaintiffs, whose PII was stored on Experian Information Solutions, Inc.'s and Experian Holdings, Inc.'s server that was accessed by an unauthorized user in the Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

See Settlement Agreement ¶ 47. This definition differs from the one in prior briefing in that it reflects the reduction in class size from 15,926,817 to 14,931,074 unique Class Members, resulting from de-deduplication. (Lucchesi Decl. ¶ 2.)

### 2.3 Attorney's Fees, Costs, and Service Awards

Attorney's fees were negotiated before Judge Ghandi only after agreement was reached on all material terms of the Settlement. (Wolfson Decl. ¶ 32.) The Settlement stated that class counsel would file a motion for fees and expenses before the Final Fairness Hearing and would seek no more than $10.5 million (about 22% of the minimum anticipated Settlement amount). On March 6, 2019, Class Counsel moved for an award of $10.5 million, plus $152,854.28 in expenses and $2,500 service awards for each Class Representative. (Dkt. 296.)

## 3. LEGAL STANDARD

Courts may only approve a settlement agreement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement generally involves two separate hearings. Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). First the court makes a preliminary fairness evaluation. *Id.* It then holds a final approval hearing, where it "takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

To determine whether a settlement agreement is fair, reasonable, and adequate, courts must consider various factors, including (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). "This is by no means an exhaustive list of relevant considerations." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

circumstances presented by each individual case." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## 4. FINAL APPROVAL IS APPROPRIATE

### 4.1 Class Certification for Settlement Purposes Remains Appropriate

In the Preliminary Approval Order, the Court certified the Class for settlement purposes. (Dkt. 289 at 7.) Finding that the same facts and reasons articulated in that order continue to be present, the Court continues to find that certification for settlement purposes is appropriate.

### 4.2 Ninth Circuit Fairness Factors

Application of the Ninth Circuit's multi-factor test supports approval of this Settlement. *See* Section 2; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). This case involves an enormous class – nearly 15 million members – and major litigation costs. Settlement at this stage prevents litigation regarding class certification and summary judgment and saves the expense of expert reports and further depositions. Also, extensive discovery has been taken in this case, including depositions of Experian employees, document review, and verified responses by Experian. (Mot., 36.)

Regarding the Settlement amount including fees, this case involves a $22 million Settlement Fund, an estimated value of nearly $140 million in credit monitoring and insurance services, and a requested $10.5 million in attorney's fees. It is in line with or superior to other recent data breach settlements. *See, e.g., In re In re Anthem, Inc. Data Breach Litigation*, No. 5:15-MD-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

02617-LHK (N.D. Cal. 2017) ($115 million settlement fund, including $37.95 million in attorney fees (reduced to $31.05 million), for 78.8 million Anthem insureds).

The Settlement also eliminates substantial litigation risks for the Class. Data breach cases present a hurdle of showing cognizable injury tied to Defendants' conduct, and other putative plaintiff classes have been unable to make this showing. *See, e.g., Krottner v. Starbucks Corp.*, 406 F.App'x 129 (9th Cir. 2010) (holding that despite plaintiffs' having established injury-in-fact for standing purposes, they failed adequately to allege damages). And in general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them". *See, e.g., In re Austrian & Ger. Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

The Settlement here not only disposes of such risks, but it provides a fair and substantial remedy without the delay of trial and appeal. The $22 million Settlement Fund results in a $1.47 payout per person, which compares favorably to other approved data breach settlements. *See, e.g., In re Anthem, Inc. Data Breach Litigation*, No. 5:15-MD-02617-LHK (N.D. Cal.) ($1.45), *In re The Home Depot, Inc. Customer Data Security Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga. 2016) ($.51 to $.68), and *In re Target Corp. Customer Data Security Breach Litigation*, No. 0:14- md-02522-PAM (D. Minn. 2015) ($.15). But the value to Class Members here is much higher. The Credit Monitoring and Insurance Services are substantial and well tethered to the injuries suffered. Similar services would be available for purchase at about $19.99 per month. (J. Thompson Decl. ¶ 7.) The Settlement also allows for reimbursement of out-of-pocket costs traceable to the Data Breach, capped at $10,000 per claimant. (Mot., 10.) Claimants' time spent on Data Breach related activities may also be compensated at $20 per hour. (Settlement Agreement (Dkt. 285) ¶ 75(d).) Taken together, these and other benefits of the Settlement support its fairness. The Court also reviewed the Settlement for the types of issues that arise, for example, when a defendant offers class members a coupon, and the Court continues to find the Settlement is adequate.

Both parties endorse this Settlement, which was reached after extensive arms-length negotiations and with the assistance of then Magistrate Judge Ghandi. Counsel on both sides are experienced and have a clear view of the strengths and weaknesses of the case. The counsel involved in this Settlement are thus well positioned to judge its value.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

The Court finds that the Settlement is fair, reasonable, and adequate.

### 4.3   Objections

Nine objections have been received, though not all were timely. Three of these come from Class Members who request exclusion from the Settlement and thus lack standing. *See* Dkt. Nos. 308, 314 (Notices of Objections); *See also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 572, 578-79 (9th Cir. 2004) (one must be a party bound by class settlement to object to it). So the Court turns to the other six.

Objector Joshua Harrell asserts that someone made a fraudulent attempt to open a T-Mobile account in his name. He complains that the extent of injuries caused by the Data Breach are too remote to be discerned. But he doesn't argue the Settlement itself is inadequate. (Dkt. 308-4.) Objector Shang Sun states that she never received notification of the Data Breach before receiving the Settlement Notice. (Dkt. 308-3.) But this objection doesn't implicate the merits of the Settlement. This lawsuit was designed to address Experian's failure to notify consumers about the Data Breach, so the Settlement appears to compensate Sun for the offense underlying her objection. Objector Robin Jacobshagen states that the Settlement should provide Credit Monitoring and Insurance Services for the rest of his life. (Dkt. 308-5.) His objection is not supported by any prior settlements or judgments providing such long-term relief.

Objector Troy Scheffler, represented by attorney Peter Nickitas, asserts several arguments against the Settlement. The Court first notes that Nickitas's application for appearance in this Court *pro hac vice* fails to include requisite information, including the fact that he has been suspended from the practice of law multiple times in other states. (Wolfson Decl. ¶¶ 51-53.) Scheffler's objections to the notice program are unfounded here, where notice reached over 85% of the nearly 15-million-person Class. (Peak Decl. ¶ 8.) And the class size reduction Scheffler complains about is explained by the de-duplication process. Mr. Scheffler's objection to the Credit Monitoring and Insurance Services is also unsupported, since the free alternative he suggests (Credit Karma) doesn't appear to provide such services for Experian credit scores. For these and other reasons, the Court overrules Sheffler's objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

Finally, Daniel McFadden and Tatiana Segovia filed late objections to the Settlement, arguing that it is inadequate to protect their family's safety. McFadden and Segovia don't engage with the fairness factors that ensure balance and equity in settlement, nor do they steer the Court away from its conclusion that the Settlement is a fair outcome on the whole.

As a general matter, the Court notes that the very low number of objections compared to the Class size is a positive sign of the Settlement's fairness. All objections received are overruled.

## 5. ATTORNEY'S FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

Class Counsel move for a $10.5 million award of attorneys' fees. (Fees Motion, Dkt. 296.) They argue that after three years of hard-fought litigation, they delivered an excellent result to Class Members that compensates for their losses and protects against future risks. Based on current claims numbers, they assert the total Settlement value is over $100,000. (Fees Motion, 1, 10-11; Wolfson Decl. ¶¶ 7, 48.) The requested fee award is thus about 10.5% of the current Settlement value and constitutes a multiplier of 1.65 on the collective lodestar of $6.35 million spent by firms that contributed to this litigation. (*Id.*)

District courts may award attorneys' fees and costs to a prevailing plaintiff where "the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 935, 941 (9th Cir. 2011) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 275 (1975)). Where counsel for a class seek fees from a common fund, courts within the Ninth Circuit have discretion to employ either the percentage-of-fund or the lodestar multiplier method to determine whether the fee request is reasonable. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Whether applying the lodestar or percentage method, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

As explained in more detail in Sections 2.1 and 4.2, the Settlement brings great value to Class Members, including a $22 million non-reversionary Settlement Fund, at least $11.7 million in remedial measures, and at least $66.3 million in Credit Monitoring and Insurance Services

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

(which Plaintiffs estimate will end up being closer to $130 million in value, *see* Dkt. 309 at 13). Response to the Settlement by Class Members has been remarkably positive. As of April 8 this year, 478,970 claims had been submitted, with 294,493 claimants electing to receive Credit Monitoring and Insurance Services. (Motion for Final Settlement Approval, 17.) So the value of the Credit Monitoring and Insurance Services is on pace to exceed the estimate in the attorney's fees motion.

The 10.5 percentage and 1.65 lodestar are also appropriate in comparison with other class counsel fee awards. *Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("In recent years multipliers of between 3 and 4.5 have become common") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (holding "modest" multiplier of 4.65 "fair and reasonable"); *Vizcaino*, 290 F.3d at 1048, 1051 (25% of common fund is a "benchmark" award that can be exceeded when justified). Considering (1) the excellent result achieved, (2) the size and complexity of this case, which involved 15 million consumers from every state in the country, and (3) the great amount of legal labor involved (*see* Wolfson Decl. ¶¶ 9-42), these lodestar and percentage numbers are especially appropriate.

Class Counsel also seek $152,854.28 in expenses. Class Counsel may recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). It is appropriate to reimburse Class Counsel for such expenses from the common fund. *See, e.g., Leonard, et al. v. Baumer (In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.)*, No. CV87-3962RN(GX), 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989). The expenses of each participating law firm are well documented and supported in the Wolfson Declaration, and the Court agrees they should be awarded.

Finally, Class Counsel request that the Court approve $2,500 service awards for each of the 57 Class Representatives. Service awards, which are discretionary, "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Class Counsel describes the Class Representatives here as participating actively and effectively, often investigating matters themselves, reviewing documents, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 15-01592 AG (DMFx) | Date | May 10, 2019 |
|---|---|---|---|
| Title | IN RE EXPERIAN DATA BREACH LITIGATION | | |

maintaining communication with counsel. (Wolfson Decl. ¶ 8; Robinson Decl. ¶ 6.) The requested $2,500 is in line with awards in similar class actions and is appropriate here.

The Court GRANTS Plaintiffs' motion for fees, expenses, and class representative service awards. (Dkt. 296.)

## 6. DISPOSITION

The Court GRANTS Plaintiffs' motion for final approval of the class action Settlement and motion for fees, expenses, and service awards. (Dkt. 309, 296).

| | : | 0 |
|---|---|---|
| Initials of Preparer | mku | |